## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation,* | MDL 2103 |
| | Case No. 1:09-cv-7670 |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | Hon. James F. Holderman |

## MASTER CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Christine Doering ("Doering"), James Asanuma ("Asanuma"), Veronica Mora ("Mora"), Kay Ready ("Ready") and Daleen Brown ("Brown"), on behalf of themselves and over 5 million consumers affected by the actions of the defendants in this action, bring this Master Consolidated Class Action Complaint against Defendants Yum! Brands, Inc. ("Yum!"), KFC Corporation ("KFC"), and Does 1-50 (collectively "Does"), to obtain redress for all persons injured by Defendants' conduct in connection with its recent "Kentucky Grilled Chicken" promotion, and to prevent Defendants from continuing to engage in such conduct. The allegations in this Complaint are based upon the personal knowledge of each of the Plaintiffs named herein (collectively, "Plaintiffs") as to themselves and their own acts and experiences, and upon information and belief as to all other matters, including investigation conducted by their attorneys and information discovered to date in this case.

1

## NATURE OF THE CASE

1.     In an on-going effort to promote itself as a healthy option in the highly competitive fast-food market, Defendant KFC, the world's most popular chicken restaurant chain, developed and began to heavily promote a new product line of grilled "chicken," which it dubbed "Kentucky Grilled Chicken." KFC claims that "Kentucky Grilled Chicken" is a "better for you option for health-conscious customers who love KFC's finger-lickin' flavor." Although KFC advertises its new product only as "chicken," it also contains beef – the ingredient list for the product indicates that it contains rendered beef fat and beef powder.

2.     To gain maximum exposure for their new product, KFC and Yum! developed a promotion in which KFC would give a free meal to any consumer who downloaded a coupon for the "Kentucky Grilled Chicken" from its website unthinkfc.com. KFC publicized this promotion with an on-air segment on the highly popular "Oprah" show, hosted by Oprah Winfrey.

3.     The promotion proved to be too much of a good thing for KFC. Faced with high demand for the free meals, KFC stopped honoring the coupons almost immediately and instead told consumers that they must go through a time-consuming and privacy-invading "rain check" application process in order to use the coupons.

4.     In some instances, consumers were denied the ability to use their coupons, only to have KFC employees offer to sell them the same "Kentucky Grilled Chicken" meal that was supposed to have been free with the coupon.

5.     Consumers throughout the country were drawn to KFC's website and to KFC restaurants because of the offer of a free chicken meal, only to have KFC refuse to honor its commitment. These consumers were injured not only in KFC's refusal to honor its offer, but also in the waste of their time, energy and resources in responding to the offer, and in the invasion of

2

their privacy by forcing such consumers to engage in a subsequent "rain check" application where consumers were required to divulge personally-identifying information to KFC and had to prove the validity of the coupons that KFC had made available.

6.     KFC appears indifferent to the inconvenience and injury it has inflicted upon consumers through this promotion, and views the entire episode as "transformational" because the promotion is "bringing in a lot of new customers" despite the fiasco it caused. KFC President Roger Eaton, evincing a Machiavellian delight at the results, bragged to the Associated Press that "the critical thing for us was to get people to eat the chicken, whatever it took."

7.     In order to redress these injuries, Plaintiffs, on behalf of themselves and all similarly-affected consumers, have brought suit against KFC and its corporate parent, Yum!, for breach of contract, for fraud, and for violations of the Michigan Consumer Protection Act ("the Michigan Act"), the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Act"), the California Business and Professions Code § 17500, et seq., ("FAL"), the California Consumer Legal Remedies Act ("CLRA"), and the California Unfair Competition Law, California Business and Professional Code § 17200 (the "UCL").

8.     On behalf of the Nationwide Class and the Subclasses defined below, Plaintiffs seek damages against KFC and Yum! for breach of contract. On behalf of the Subclasses defined below, Plaintiffs seek an injunction requiring Defendant KFC to cease its unlawful conduct, disgorge its profits from the promotion, destroy all personal identifying information about Class and Subclass members, honor all coupons lawfully obtained, and clearly and conspicuously identify the additional animal ingredients in its product, as well as an award of actual damages, punitive damages if warranted, and incidental and consequential damages to the class members, together with costs and reasonable attorneys' fees.

3

## PARTIES

9.     Plaintiff Ready is a resident of the State of Michigan.

10.    Plaintiff Brown is a resident of the State of California.

11.    Plaintiff Doering is a resident of the State of Illinois.

12.    Plaintiff Asanuma is a resident of the State of California.

13.    Plaintiff Mora is a resident of the State of California.

14.    Defendant Yum! is a North Carolina Corporation with its principal place of business in Louisville, Kentucky.

15.    Defendant KFC is a Delaware Corporation with its principal place of business in Louisville, Kentucky.  KFC is a subsidiary of Defendant Yum!

16.    The true names and capacities of Defendants sued as Does 1 through 50 inclusive are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure.  Plaintiffs will seek leave of court to amend this Master Consolidated Class Action Complaint when the true names and capacities of such Defendants have been ascertained.

17.    At all times herein mentioned, each of the Defendants, including the fictitious Doe defendants, were acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, each of these allegations are deemed alternative theories whenever not doing so would result in a contraction with the other allegations.

18.     At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

19.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over those actions originally filed in state courts contained within this District pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action. As to those actions that the Judicial Panel on Multidistrict Litigation ("JPML") transferred to this Court, this Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1332, 1367, and 1407.

21.     As to those actions originally filed in state courts contained within this District, venue properly lies in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District, Defendants transact a substantial amount of business in this District, and Defendants otherwise have sufficient contacts with this District to justify them being fairly brought into court in this District. As to those actions transferred to this District by the JPML, venue properly lies in this District pursuant to 28 U.S.C. §§ 1391 and 1407.

## CONDUCT COMPLAINED OF

22.     KFC, acting in concert with Yum!, introduced "Kentucky Grilled Chicken" on April 14, 2009 and shortly thereafter began a promotion to greatly increase brand recognition of its new product.

23.     In an effort to increase public recognition of its new product and to improve its reputation for healthiness, KFC and Yum! initiated a campaign called "UNThink KFC," a campaign which attempted to re-brand KFC as a healthy fast-food alternative. KFC embarked on a comprehensive marketing campaign that sought, in its marketer's words, to "change consumers' perceptions of what they think they know about KFC through print, digital, mobile, TV and out-of-home executions."

24.     At no point did any of the marketing materials in the campaign disclose the fact that KFC's new "Kentucky Grilled Chicken" product contains beef.

25.     As part of the UNThink KFC campaign, KFC and Yum! developed a television advertising campaign based around a "Kentucky Grilled Chicken" giveaway. After months of effort, KFC convinced Oprah Winfrey, one of the most respected figures in America and the host of a popular eponymously-titled television talk show, to promote KFC's new product on her television show on or about Tuesday, May 5, 2009.

26.     On that show, Ms. Winfrey announced KFC's offer: that any person could download a coupon from her web site, or from KFC's website unthinkfc.com, for a free two-piece "Kentucky Grilled Chicken" meal, with two sides and a biscuit. The coupons were to be redeemable at participating KFC stores until May 19, 2009, with the exception of May 10 (Mother's Day).

27.     The retail price of the two-piece "Kentucky Grilled Chicken" meal that KFC and Yum! promised to give away was $3.99, plus applicable taxes. As of the filing of this Master

Consolidated Class Action Complaint, the price of such meal is at least $5.19, plus applicable taxes.

28.     KFC's promotion, due in large part to the audience delivered by Ms. Winfrey and her personal involvement in the promotion, was very successful, and consumers throughout the United States downloaded the coupons made available on Ms. Winfrey's and KFC's websites.

29.     Despite the promise to honor the coupons, KFC and Yum!, faced with a large number of consumers seeking to avail themselves of the promotion, began almost immediately to refuse to honor the coupons, turning people away in large numbers at its restaurants across the country.

30.     At first, KFC and Yum! attempted to limit the promotion to the first 100 coupons presented at each KFC restaurant, per day, regardless of the supplies of "Kentucky Grilled Chicken" on hand. This plan was ineffective.

31.     Then, KFC and Yum! stopped the promotion altogether on May 7, 2009 – two days after it was announced. On information and belief, KFC and Yum! corporate management instructed franchises to stop honoring the coupons.

32.     KFC redeemed fewer than half of the coupons downloaded in connection with its promotion. According to papers KFC filed in connection with this suit, at least 10.2 million coupons were downloaded from unthinkfc.com between May 5, 2009 and May 7, 2009, yet only 4.5 million coupons were redeemed. According to KFC's own figures, 5.7 million coupons were not redeemed.

33.     On information and belief, many of the KFC locations that refused to redeem the coupons had ample supplies of Kentucky Grilled Chicken on hand, and continued to make those supplies available for purchase – they simply refused to honor the coupons.

34.     Instead of honoring its coupons, KFC and Yum! devised a plan to drastically limit the availability of the promotion: it told consumers that they instead had to apply for a "rain check" for the promotion and relinquish their coupons to KFC so that KFC could verify the coupons' validity.

35.     Unlike the coupon, which did not require consumers to provide identifying personal information, the "rain check" application required a consumer to attach her coupon to a form, which the consumer was required to fill out with her name and address, then mail it to KFC or give the form to a KFC team member. The "rain check" application indicated that KFC would mail to the consumer a coupon for a free meal at a later date, plus a Pepsi product.

## FACTS RELATING TO NAMED PLAINTIFFS

### *Plaintiff Kay Ready*

36.     Plaintiff Kay Ready is a resident of the City of Trenton, County of Wayne, State of Michigan.

37.     Plaintiff Ready downloaded a "Kentucky Grilled Chicken" coupon from oprah.com on or about May 5, 2009.

38.     Shortly thereafter, Plaintiff Ready drove to a nearby KFC restaurant in the City of Woodhaven, County of Wayne, State of Michigan to redeem her coupon.

39.     KFC refused to honor the coupon when Plaintiff Ready presented it. Upon entering the restaurant, Plaintiff Ready was informed that KFC was not honoring the coupons anymore.

40.     Nobody at the KFC restaurant indicated that the restaurant was out of supplies of the "Kentucky Grilled Chicken," only that they would not honor the coupon.

41.     Plaintiff Ready called KFC corporate headquarters to complain and ask about the coupon.  KFC management stated that they were no longer honoring the coupons.  Instead of redeeming the coupon, KFC management told Plaintiff Ready that she could go back to a KFC Restaurant and get a "rain check" application, which she could send in and wait for a rain check in the mail.  KFC management did not offer her any other alternative.

42.     KFC has not honored or redeemed Plaintiff Ready's coupon.

43.     Had KFC not misrepresented:  (a) its willingness to honor its coupons; (b) the limited availability of the free "Kentucky Grilled Chicken" promotion; and (c) its after-the-fact requirement that consumers mail in their coupons to KFC to avail themselves of the offer, Plaintiff Ready would not have taken the time to download the coupon and drive, at her own expense, to KFC to redeem it.

*Plaintiff Brown*

44.     Plaintiff Daleen Brown is a resident of San Mateo, California.

45.     Plaintiff Brown downloaded a "Kentucky Grilled Chicken" coupon from unthinkfc.com on or about May 5, 2009.

46.     Shortly thereafter, Plaintiff Brown drove to the nearest KFC restaurant in San Mateo, California, to redeem her coupon.

47.     KFC refused to honor the coupon when Plaintiff Brown presented it.  Upon entering the restaurant, Plaintiff Brown was informed by the restaurant's management that her coupon would not be honored, because "too many people had run off the coupons."

48.     The KFC restaurant management did not indicate that they were out of supplies of the "Kentucky Grilled Chicken," only that they would not honor the coupon.

49. Instead of redeeming the coupon, the KFC restaurant management told Plaintiff Brown that she would have to apply for a "rain check," and mail her coupon, along with the "rain check" application, to KFC to prove that it was an accurate coupon.

50. KFC has not honored or redeemed Plaintiff Brown's coupon.

51. Had KFC not misrepresented: (a) its willingness to honor its coupons; (b) the limited availability of the free "Kentucky Grilled Chicken" promotion; and (c) its after-the-fact requirement that consumers mail in their coupons to KFC to prove the coupon's legitimacy, Plaintiff Brown would not have taken the time to download the coupon and drive, at her own expense, to KFC to redeem it.

*Plaintiff Doering*

52. Plaintiff Christine Doering is a resident of Rochelle, Ilinois.

53. Plaintiff Doering downloaded a "Kentucky Grilled Chicken" coupon from unthinkfc.com on or about May 5, 2009.

54. Shortly thereafter, Plaintiff Doering drove to the nearest KFC restaurant in DeKalb, Illinois, approximately 45 minutes from her home, to redeem her coupon.

55. KFC refused to honor the coupon when Plaintiff Doering presented it. Upon entering the restaurant, Plaintiff Doering was informed by the restaurant's management that her coupon would not be honored, because of "some error in the coupon" and the overwhelming response to the coupons.

56. The KFC restaurant management did not indicate that they were out of supplies of the "Kentucky Grilled Chicken," only that they would not honor the coupon.

57.     Instead of redeeming the coupon, the KFC restaurant management told Plaintiff Doering that she would have to apply for a "rain check," and mail her coupon, along with the "rain check" application, to KFC to prove that it was an accurate coupon.

58.     KFC has not honored or redeemed Plaintiff Doering's coupon.

59.     Had KFC not misrepresented:  (a) its willingness to honor its coupons; (b) the limited availability of the free "Kentucky Grilled Chicken" promotion; and (c) its after-the-fact requirement that consumers mail in their coupons to KFC to prove the coupon's legitimacy, Plaintiff Doering would not have taken the time to download the coupon and drive, at her own expense, to KFC to redeem it.

*Plaintiff Mora*

60.     On or about May 5, 2009, Plaintiff Mora learned of the "Kentucky Grilled Chicken" promotion and used her printer and paper to print out four coupons from the promotion.  She was required to download and install a separate computer program on her computer in order to download and print the coupons.

61.     On May 5, 2009, Plaintiff Mora decided to take her daughters to a KFC restaurant for dinner, and informed said daughters of the same.  Plaintiff's daughters were excited by the news.

62.     On that same day, Plaintiff Mora drove with her daughters to a KFC restaurant in San Fernando, California to redeem the Coupons.  At the KFC restaurant, Plaintiff Mora was informed by a KFC employee that the store was limited to giving out 100 meals per day, and that the 100 meal limit had been reached, meaning that she could not use her coupons.

63.     Plaintiff then traveled to another KFC restaurant with her daughters, this one in Sylmar, California, where another KFC employee similarly told her that the store was limited to

giving out 100 meals per day, and that the 100 meal limit had been reached, meaning that she could not use her coupons.

64.     Plaintiff Mora informed the KFC employee at the Sylmar KFC restaurant that the Coupons contained no restriction of the type mentioned. The KFC store employee stated that it only provided 100 meals per day for the promotion, and stated that the coupons stated "while supplies last." Plaintiff Mora informed the KFC employee that the store still had supplies of the "Kentucky Grilled Chicken," sides and biscuits, because it continued to sell such items.

65.     The KFC employee refused to honor the coupons, and suggested that Ms. Mora return at 10:00 am the next day. Plaintiff informed the KFC employee that neither she nor her children eat chicken for breakfast, and the employee stated that they would be out of meals by 11:00 am. Neither that employee nor any other agent of KFC or Yum! offered Plaintiff Mora a raincheck.

*Plaintiff Asanuma*

66.     On or about May 5, 2009, Plaintiff Asanuma learned of the "Kentucky Grilled Chicken" promotion and used his color printer and paper to print out four coupons from the promotion. He was required to download and install a separate computer program on his computer in order to download and print the coupons.

67.     On or about May 6, 2009, Plaintiff Asanuma learned that only 100 coupons were being honored at each KFC restaurant and that Coupons had to be presented in the morning to be honored.

68.     Before he attempted to redeem his Coupons, Plaintiff Asanuma saw a statement by KFC that the Coupons would not be honored anymore, and that customers had to apply for a "raincheck" by going, in person, to a KFC restaurant and filling out an application.

69.     Plaintiff Asanuma was unable to redeem his Coupons.

## AMOUNT IN CONTROVERSY

70.     The amount in controversy exceeds the sum of twenty-two million ($22,000,000.00) Dollars in the aggregate, according to removal papers filed by KFC in connection with this action showing that at least 5.7 million of the coupons were not redeemed.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action on behalf of themselves and proposed class and subclasses of consumers, defined as follows:

> a.  A class consisting of all persons nationwide who obtained coupons from unthinkfc.com or oprah.com on May 5-6, 2009 for a free two-piece "Kentucky Grilled Chicken" meal, and were denied the redemption of such coupons by KFC; provided, however, that Defendant KFC and any employee of Defendant KFC are excluded from the Classes; and
>
> b.  A subclass of all persons who obtained coupons from unthinkfc.com or oprah.com on May 5-6, 2009 for a free two-piece "Kentucky Grilled Chicken" meal, and were denied the redemption of such coupons by KFC at a KFC restaurant in Illinois or while the person was a resident of Illinois; provided, however, that Defendant KFC and any employee of Defendant KFC are excluded from the Class and the Subclass;
>
> c.  A subclass of all persons who obtained coupons from unthinkfc.com or oprah.com on May 5-6, 2009 for a free two-piece "Kentucky Grilled Chicken" meal, and were denied the redemption of such coupons by KFC at a KFC restaurant in California or while the person was a resident of California;

provided, however, that Defendant KFC and any employee of Defendant KFC are excluded from the Class and the Subclass;

d. A subclass of all persons who obtained coupons from unthinkfc.com or oprah.com on May 5-6, 2009 for a free two-piece "Kentucky Grilled Chicken" meal, and were denied the redemption of such coupons by KFC at a KFC restaurant in Michigan or while the person was a resident of Michigan; provided, however, that Defendant KFC and any employee of Defendant KFC are excluded from the Class and the Subclass;

72.     Plaintiffs' claims are typical of the claims of all of the other members of the Class and the Subclasses, and the class and subclass are so numerous that joinder of all members is impracticable.

73.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the class and the subclass.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the class and the subclasses, and have the financial resources to do so.  None of the Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

74.     Absent a class action, most members of the class and the subclass would find the cost of litigating their claims to be prohibitive and, therefore, will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

75.     Defendants have acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the class and the subclasses, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the class and the subclass.

76.     The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the class and the subclasses are the same, resulting in injury to the Plaintiffs and to all of the other members of the class and the subclasses. Plaintiffs and the other members of the class and the subclasses have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

77.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the class and the subclass, and those questions predominate over any questions that may affect individual members of the Class or Subclasses. Common questions for the Class include but are not limited to the following:

(a)     Did the Defendants' refusal to accept the "Kentucky Grilled Chicken" coupons constitute a breach of contract with each of the consumers who downloaded such coupons and went to KFC restaurants to redeem them?

(b)     Was the Defendants' refusal to honor its coupons part of a fraudulent bait-and-switch plan to lure consumers to KFC restaurants under the false pretense that the coupons would be honored?

(c)     Is Defendants' conduct governed by the Michigan Consumer Protection Act ("the Michigan Act"), the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Act"), the California Business and Professions Code § 17500, et seq., ("FAL"), the California Consumer

Legal Remedies Act ("CLRA"), the California Business and Professional Code § 17200, and the California Unfair Competition Law (the "CLRA")?

(d)     Was the Defendant's refusal to honor its coupons violative of the various Acts?

(e)     Was the Defendants' failure to inform consumers that the "Kentucky Grilled Chicken" product actually contained beef violative of the Michigan Act?

(f)     Were the Defendants' actions in connection with its "rain check" offer violative of the Act?

<u>**COUNT I**</u>
**Breach of Contract on behalf of the Class and all of the Subclasses**

78.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

79.     KFC and Yum!'s offer of a free two-piece "Kentucky Grilled Chicken" meal to consumers constituted a valid offer.

80.     Plaintiffs and the Class members each accepted that offer by: (a) accessing KFC's website unthinkfc.com and/or Ms. Winfrey's website oprah.com; (b) downloading a coupon from such website; (c) travelling to a participating KFC restaurant; and (d) presenting, or attempting to present, such coupon to KFC.

81.     KFC, acting in concert with Yum!, breached its contract with Plaintiff and the Class members by: (a) refusing to provide a two-piece "Kentucky Grilled Chicken" meal upon presentment of the coupon; (b) by announcing its intention not to honor the coupons already downloaded; and (c) demanding that the Plaintiffs and the Class members relinquish their coupons to KFC as a condition of any future performance by KFC under the contract.

82.     Plaintiffs and the classes have been damaged in an amount to be proven at trial, and seek as an award of actual damages and incidental and consequential damages to the Class members, together with costs and reasonable attorneys' fees.

### COUNT II
### Violation of the Illinois Consumer Fraud and
### Deceptive Business Practices Act (and similar statutes in other states nationwide)
### on behalf of the Nationwide Class and on behalf of the Illinois Subclass

83.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

84.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*, ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

85.     Section 2P of the CFA declares it an "unlawful practice for any person to promote or advertise any business, product, utility service, including but not limited to, the provision of electric, telecommunication, or gas service, or interest in property, by means of offering free prizes, gifts, or gratuities to any consumer, unless all material terms and conditions relating to the offer are clearly and conspicuously disclosed at the outset of the offer so as to leave no reasonable probability that the offering might be misunderstood." 815 ILCS 505/2P.

86.     KFC and Yum! violated, and continue to violate, these proscriptions through their conduct as set forth above.

87.     Such conduct is ongoing and continues to this date.  Plaintiffs and the Class members are therefore entitled to the relief described herein.  On behalf of themselves and the Class and Illinois Subclass, Plaintiffs seek an injunction requiring Defendants KFC and Yum! to cease their unlawful conduct, disgorge their profits from the promotion, destroy all personal identifying information about class members and honor all coupons lawfully obtained, as well as an award of actual damages and incidental and consequential damages to the class members, together with costs and reasonable attorneys' fees.

### COUNT III
**Violation of the Michigan Consumer Protection Act (and similar statutes in other states nationwide) on behalf of the Nationwide Class and on behalf of the Michigan Subclass**

88.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

89.     Section 3 of the Michigan Consumer Protection Act, Mich. Comp. Laws §445.903 (2008) ("the Michigan Act") prohibits the following activities:

(c)     "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have."

(e)     "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

(g)     "Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented."

(h)     "Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity in immediate conjunction with the advertised goods or services."

(q)     "Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided."

(r)     "Representing that a consumer will receive goods or services "free" or "without charge", or using words of similar import in the representation, without clearly and conspicuously disclosing with equal prominence in immediate conjunction

with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised."

(s) "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."

90. KFC, acting in concert with Yum!, violated, and continues to violate, these proscriptions through its conduct as set forth above.

91. The acts alleged above are unlawful, unfair or fraudulent business acts or practices, and constitute unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce under Section 3 of the Michigan Act.

92. Such conduct is ongoing and continues to this date. Plaintiffs and the Class and Michigan Subclass members are therefore entitled to the relief described herein. On behalf of themselves and the Class and Michigan Subclass, Plaintiffs seek an injunction requiring Defendants KFC and Yum! to cease their unlawful conduct, disgorge their profits from the promotion, destroy all personal identifying information about class members, honor all coupons lawfully obtained, and clearly and conspicuously identify the additional animal ingredients in the "Kentucky Grilled Chicken" product, as well as an award of actual damages and incidental and consequential damages to the class members, together with costs and reasonable attorneys' fees.

**COUNT IV**
**False Advertising, Business and Professions Code § 17500, et seq., ("FAL") (and similar statutes in other states nationwide) on behalf of the Nationwide Class and on behalf of the California Subclass**

93. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

94. Beginning at an exact date unknown to Plaintiffs, but within three years preceding the filing of this Complaint, Defendants have made untrue, false, deceptive, and/or misleading

statements in connection with the advertising and marketing of their "Kentucky Grilled Chicken" products and the coupons for those products throughout the United States.

95.    Defendants have made representations and omissions that led reasonable consumers to believe that they would be provided, free of charge, with a free two-piece "Kentucky Grilled Chicken" meal if they downloaded, printed and presented the Coupons within the time period originally designated by Defendants. Defendants, however, deceptively and unfairly changed the terms of, and refused to honor, the Coupons.

96.    Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not incurring the printing and travel costs associated with attempting to use the Coupons.

97.    Defendants' acts and omissions are likely to deceive the general public.

98.    Defendants enaged in these false, misleading and deceptive advertising and marketing practices to increase their revenues and profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by Section 17500, *et seq.*, of the California Business and Professions Code.

99.    The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

100.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, and/or those similarly situated by means of the

false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.

101. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three years preceding the filing of this Complaint.

102. Plaintiffs and those similarly situated are further entitled to, and do seek, both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining defendants from engaging in any such advertising and marketing practices in the future. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continually seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

103. As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial. In particular, had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would not have incurred, without

limitation, (a) the cost of downloading and printing the Coupons, (b) the time and expense of travelling to a KFC restaurant to redeem the Coupon or redeem the Raincheck, (c) the cost of purchasing items from KFC restaurants during the visits made to redeem the Coupons or obtain the Raincheck, and/or (d) the cost of mailing the Raincheck; nor would Plaintiffs have had to provide their personal information to KFC that was required on the Raincheck.

104.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial.

### COUNT V
**Violation of the California Consumer Legal Remedies Act, California Civil Code § 1750, et seq., (and similar statutes in other states nationwide) on behalf of the Nationwide Class and on behalf of the California Subclass**

105.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

106.    This cause of action is brought pursuant to the California Consumers' Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

107.    Defendants' actions, representations and conduct have violated, and continue to violate, the CLRA, because they extend to to transactions that are intended to, or which have resulted in, the sale or lease of goods or services to consumers.

108.    Plaintiffs and other class members are "consumers" as that term is defined in the CLRA, California Civil Code § 1761(d).

109.    The Coupons and the purported "meal" that Plaintiffs and other class members downloaded from Defendants were "goods" within the meaning of California Civil Code § 1761.

110.    By engaging in the actions, representations and conduct set forth in this Complaint, Defendants have violated, and continue to violate, the CLRA.

111.    Specifically, the Defendants' acts and practices led consumers to believe that they would be provided with a meal upon presentment of a Coupon. They were not. Rather, Defendants, without proper notice or disclosure, limited Coupon redemption to 100 Coupons per day, per restaurant, regardless of supplies. Defendants additionally refused to honor any Coupons, but rather forced consumers to (1) visit a participating KFC restaurant for a Raincheck, (2) complete the firm, (3) attach the original Coupon to the form, (4) give the form to the KFC manager or mail it to KFC, by May 19, 2009, (5) provide Defendants with personal information, including name and address of the consumer, (6) wait for a replacement Coupon in the mail, and (7) return to a participating KFC restaurant, between two undisclosed dates, and redeem the replacement Coupon.

112.    Plaintiffs request that this Court enjoin the Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

113.    Plaintiffs and those similarly situated were damaged as a result of Defendants' conduct. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by the Defendants, they would not have incurred, they would not have incurred, without limitation, (a) the cost of downloading and printing the Coupons, (b) the time and expense of travelling to a KFC restaurant to redeem the Coupon or redeem the Raincheck, (c) the cost of purchasing items from KFC restaurants during the visits made to redeem the Coupons or obtain the Raincheck, and/or (d) the cost of mailing the Raincheck; nor would Plaintiffs have had to provide their personal information to KFC that was required on the Raincheck.

114.    CLRA § 1782 NOTICE: Irrespective of any representations to the contrary in this Complaint, Plaintiffs specifically disclaim, at this time, any request for damages under any provision of the CLRA. Plaintiffs, however, hereby provide Defendants with demand that within thirty days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. Defendants' failure to do so will result in Plaintiffs amending this Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated Class members, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices.

115.    Plaintiffs also request that this Court award them their costs and reasonable attorneys' fees pursuant to California Civil Code §1780(d).

### COUNT VI
**Fraud, on behalf of the Nationwide Class and on behalf of the California Subclass**

116.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

117.    Defendants fraudulently and deceptively offered to give a meal in exchange for downloading, printing and presenting the Coupons as stated herein. Defendants knowingly refused to honor the Coupons. Defendants, in fact, never intended to honor the Coupons as represented.

118.    In reliance on Defendants' false, deceptive and misleading representations, Plaintiffs, downloaded and printed, at their own expense, Coupons.

119.    Plaintiffs traveled to KFC stores in an effort to redeem the Coupons.

120.    These misrepresentations and omissions were material at the time that they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to download, print and travel to a KFC restaurant to redeem the Coupons.

121.    Defendants breached their duty to Plaintiffs by not informing them of their intention not to honor the Coupons.  Defendants also gained financially from, and as a result of, their breach.

122.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.

123.    Plaintiffs and those similarly situated justifiably relied to their detriment on Defendants' fraudulent omissions and suffered damages as a result.   In particular, had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently, by, without limitation, (a) not incurring the cost of downloading and printing the Coupons, (b) not incurring the time and expense of travelling to a KFC restaurant to redeem the Coupon or redeem the Raincheck, (c) not incurring the cost of purchasing items from KFC restaurants during the visits made to redeem the Coupons or obtain the Raincheck, and/or (d) not incurring the cost of mailing the Raincheck.  Plaintiffs and those similarly situated would also not have had to provide their personal information to KFC that was required on the Raincheck.

124.    Defendants' conduct as described herein was willful and malicious and was designed to maximize defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**COUNT VII**
**Violation of Cal Business and Professional Code § 17200, et seq.**
**(and similar statutes in other states nationwide) on behalf of the Nationwide Class and on**
**behalf of the California Subclass**

125. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

126. Within four years preceding the filing of this suit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful, and deceptive trade practices by engaging in the unfair, unlawful, and deceptive business practices outlined in this Complaint. In particular, Defendants have engaged, and continue to engage, in unfair, unlawful, and deceptive trade practices by, without limitation, the following:

    a. Failing to honor the Coupons as issued;

    b. Violating the CLRA and similar statutes nationwide;

    c. Violating the FAL, and similar statutes nationwide.

127. Plaintiffs and those similarly situated relied to their detriment on Defendants' unfair, deceptive, and unlawful business practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently, by, without limitation, (a) not incurring the cost of downloading and printing the Coupons, (b) not incurring the time and expense of travelling to a KFC restaurant to redeem the Coupon or redeem the Raincheck, (c) not incurring the cost of purchasing items from KFC restaurants during the visits made to redeem the Coupons or obtain the Raincheck, and/or (d) not incurring the cost of mailing the Raincheck. Plaintiffs and those similarly situated would also not have had to provide their personal information to KFC that was required on the Raincheck.

128. Defendants' acts and omissions are likely to deceive the general public.

129. Defendants engage in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by the UCL, Section 17200, *et seq.*, of the California Business and Professions Code.

130. The aforementioned practices, which Defendants have used, and continue to use, to their financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

131. Plaintiffs seek, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated be means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

132. Plaintiffs also seek an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.

133. Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants from engaging in any such unfair, unlawful and/or fraudulent acts and trade practices in the future. Such misconduct by Defendants, unless ad until enjoined by this Court, will continue to cause injury to the general public and the loss of money and property. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance by Defendants with the California Business and Professionals Code.

134.   As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered and continue to suffer injury, and have lost money and/or property as a result of such deceptive, unfair and/or unlawful competition in an anount which will be proven at trial.

135.   As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class and Subclasses, pray for the following relief:

1.   An order certifying the Class as defined above;

2.   An award of actual damages, punitive damages if appropriate, and incidental and consequential damages in excess of Twenty-Five Million ($25,000,000.00) Dollars to be determined by a trier of fact;

3.   Disgorgement of Defendants' profits from their promotion;

4.   An injunction requiring Defendants to cease their unlawful conduct, destroy all personal identifying information about class members, honor all coupons lawfully obtained, and clearly and conspicuously identify the additional animal ingredients in its product;

5.   An award of reasonable attorneys' fees, interest and costs; and

6.   Such other and further relief as the Court deems equitable and just.

### DEMAND FOR TRIAL BY JURY

Plaintiffs request trial by jury of all claims that can be so tried.

Respectfully submitted,

**CHRISTINE DOERING, KAY READY,
JAMES ASANUMA, VERONICA MORA, AND
DALEEN BROWN,** *on behalf of themselves and
all others similarly situated*

By: /s/ Michael J. McMorrow
One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Michael J. McMorrow
mjmcmorrow@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Ste. 1300
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
*Counsel for Christine Doering and Kay Ready*


Seth Safier (*pro hac vice pending*)
seth@gutridesafier.com
Adam Gutride (*pro hac vice pending*)
adam@gutridesafier.com
GUTRIDE SAFIER LLP
835 Douglass Street
San Francisco, California 94114
Tel: (415) 271-6469
Fax: (415) 449-6469
*Counsel for James Asanuma and Veronica Mora*


David C. Parisi (*pro hac vice pending*)
dparisi@parisihavens.com
Suzanne Havens Beckman (*pro hac vice pending*)
shavens@parisihavens.com
PARISI & HAVENS, LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Tel: (818) 990-1299
Fax: (818) 501-7852
*Counsel for Daleen Brown*


Mark H. Freedman (*pro hac vice pending*)
mark@freedmanlawyers.com
LAW OFFICES OF FREEDMAN & FREEDMAN, PLC
24725 West Twelve Mile Road, Suite 220
Southfield, MI 48034
Tel: (248) 799-9905
Fax: (248) 799-9906
*Counsel for Kay Ready*

## CERTIFICATE OF SERVICE

I, Michael McMorrow, an attorney, certify that on February 4, 2010, I served the above and foregoing *Master Consolidated Class Action Complaint*, by the Court's CM/ECF server and by first class U.S. Mail, postage prepaid, to the persons shown below.

Charles William Douglas
David F. Graham
Theodore R. Scarborough , Jr.
Elizabeth M. Chiarello
Sidley Austin LLP
One South Dearborn Street
Chicago , IL 60603
(312) 853-7000
cdouglas@sidley.com
dgraham@sidley.com
echiarello@sidley.com
tscarborough@sidley.com

/s/ Michael McMorrow
Michael J. McMorrow