IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re KENTUCKY GRILLED CHICKEN | ) | |
| COUPON MARKETING & SALES | ) | No. 09 C 7670 |
| PRACTICES LITIGATION | ) | (MDL 2103) |
| | ) | |
| | ) | THIS DOCUMENT RELATES TO |
| | ) | ALL CASES |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On February 4, 2010, plaintiffs Christine Doering, James Asanuma, Veronica Mora , Kay

Ready, and Daleen Brown (together "Plaintiffs"), on behalf of themselves and a purported class

of over five million other people, filed a "Master Consolidated Class Action Complaint" in this

multidistrict class action lawsuit.  (Dkt. No. 18 ("Master Complaint").)  Plaintiffs allege claims

for breach of contract (Count I), common law fraud (Count VI), and violations of the consumer

protection statutes of Illinois, Michigan, and California (Counts II-V & VII) in relation to a free

product giveaway in May 2009.  Pending before the court is defendant Yum! Brands, Inc.

("Yum!") and defendant KFC Corporation's ("KFC") (together "Defendants") motion to

dismiss.  (Dkt. No. 24.)  For the reasons stated below, Defendants' motion is denied.

BACKGROUND

For purposes of the pending motion to dismiss, the court accepts as true all well-pleaded

allegations set forth in the Master Complaint.  *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759,

763 (7th Cir. 2010).

Defendant KFC is the world's most popular chicken restaurant chain, and is a subsidiary

of defendant Yum!.  (Master Compl. ¶¶ 1, 15.)  In April 2009, Defendants introduced a new

product called "Kentucky Grilled Chicken." (*Id.* ¶ 22.) Defendants promoted "Kentucky Grilled Chicken" as a healthy fast-food menu option and incorporated the new menu item as part of their overall campaign to improve KFC's reputation for healthiness. (*Id.* ¶¶ 1, 23.) Defendants' campaign included a "Kentucky Grilled Chicken" giveaway, which was announced by Oprah Winfrey on May 5, 2009, on her television talk show. (*Id.* ¶¶ 2, 25-26.) Pursuant to the terms of the giveaway, any individual could obtain a free meal at KFC by first downloading a coupon from either unthinkfc.com or from Oprah Winfrey's website and then redeeming the coupon at a participating KFC franchise between May 5, 2009 and May 19, 2009, with the exception of May 10, 2009 (Mother's Day). (*Id.* ¶¶ 2, 26.) When presented at a KFC restaurant, the coupon entitled the bearer to a free two-piece "Kentucky Grilled Chicken" meal, with two sides and a biscuit. (*Id.* ¶ 26.)

Defendants "began almost immediately to refuse to honor the coupons." (*Id.* ¶¶ 3, 29.) At first they did so by "limit[ing] the promotion to the first 100 coupons presented at each KFC restaurant, per day." (*Id.* ¶ 30.) On May 7, 2009, Defendants "stopped the promotion altogether . . . [and] instructed franchises to stop honoring the coupons." (*Id.* ¶ 31.) Many of the KFC locations that refused to honor the coupon continued to offer "Kentucky Grilled Chicken" for purchase. (*Id.* ¶ 33.) From May 5 to May 7, 2009, at least 10.2 million coupons were downloaded from unthinkfc.com. (*Id.* ¶ 32.) Only 4.5 million coupons were actually redeemed at KFC franchises. (*Id.*)

After stopping the coupon promotion, Defendants offered consumers the option of applying for a "rain check" for the promised free "Kentucky Grilled Chicken" meal. (*Id.* ¶ 34.) To apply for a "rain check," the consumer was required to fill out a form with the consumer's name and address, attach his or her coupon to the form, and mail the form to KFC or give it to a

KFC team member. (*Id. ¶* 35.) Defendants told consumers these procedures were necessary "so that KFC could verify the coupons' validity." (*Id.* ¶ 34.) Following receipt of the "rain check" application, KFC would then send the consumer a new coupon for a free meal at a later date, as well as an additional complimentary Pepsi product. (*Id.* ¶ 35.)

Additionally, the Master Complaint alleges that "Kentucky Grilled Chicken" contains rendered beef fat and beef powder, and that these ingredients were not disclosed in Defendants' marketing materials. (*Id.* ¶¶ 1, 24.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Reger Dev., LLC*, 592 F.3d at 764. While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, a complaint's allegations of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); *see Reger Dev., LLC*, 592 F.3d at 764. If the allegations in a count of a complaint "fail[ ] to state a claim upon which relief can be granted," that count is to be dismissed. Fed. R. Civ. P. 12(b)(6).

## JURISDICTION AND CHOICE OF LAW

The underlying cases in this multidistrict litigation have been consolidated before this court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. In each case, the court's subject matter-jurisdiction over Plaintiffs' claims is based on 28 U.S.C. § 1332(d), which establishes federal subject-matter jurisdiction over class action lawsuits in which the parties are minimally diverse and the amount in controversy exceeds $5,000,000.00. It is undisputed that the parties to this litigation have diverse citizenship, and Plaintiffs have alleged an amount in controversy that exceeds $22,000,000.00, based on the number of unredeemed coupons (5.7 million) and the retail price of a two-piece "Kentucky Grilled Chicken" meal ($3.99). (Master Compl. ¶¶ 27, 70.)

"When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010); *cf. Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). The federal courts of Illinois, Michigan, and California, in turn, each apply the substantive law of the forum state in which they sit, including that state's choice-of-law rules, when sitting in diversity. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009); *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009); *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010). The parties to this case agree that Plaintiffs' breach of contract claim is governed by the common law of Illinois, Michigan, and California, in accordance with the "most significant contacts" or "governmental interest" choice-of-law rule followed by each of those states. (*See* Dkt. No. 26-1 ("Defs.'

Mem.") at 6 n.5.)[1]

ANALYSIS

I.    <u>Count I — Breach of Contract</u>

For purposes of the pending motion, Defendants assume that a valid contract existed

between Plaintiffs and Defendants for a free meal, including two pieces of Kentucky Grilled

Chicken, two individual sides, and a biscuit, in exchange for a properly tendered coupon.  (Defs.'

Mem. 5.)  It is also undisputed that the coupon provided for a two-week redemption period from

May 5, 2009 to May 19, 2009, with the exception of May 10, 2009.  (*Id.* at 7, n.6; *see also*

Master Compl. ¶¶ 25-26.)  Defendants argue that Count I should be dismissed for failure to state

a claim, however, because the "time of performance was not an essential term of the contract."

(Defs.' Mem. 5-6.)  It is Defendants' position that their "delayed performance" comported with

all of the material terms of the contract, and that no actionable breach of contract could have

occurred based on the facts alleged by Plaintiffs.  (*Id*. at 6.)

In response to this argument, Plaintiffs stress their allegations that the original contract

terms were *never* honored by the Defendants—either during the contract period or at some later

date.  Plaintiffs have specifically alleged in their Master Complaint that Defendants breached

their contract with Plaintiffs by: "(a) refusing to provide a two-piece 'Kentucky Grilled Chicken'

meal upon presentment of the coupon; (b) by announcing [their] intention not to honor the

coupons already downloaded; and (c) demanding that the Plaintiffs and the Class members

relinquish their coupons to KFC as a condition of any future performance by KFC under the

---

[1] The court likewise assumes without deciding that California substantive law governs Plaintiffs' claim for common law fraud (Count VI), filed on behalf of the purported California subclass.  Because Defendants' argument to dismiss Count VI in the pending motion is premised on procedural grounds, the parties have not yet had an opportunity to address the substantive law applicable to Count VI.

contract." (Master Compl. ¶ 81.) Plaintiffs allege that Defendants, rather than honoring the original contract terms in the coupon, instituted a "rain check" program whereby Defendants agreed to provide the promised "Kentucky Grilled Chicken" meal at a later date. (*Id.* ¶ 34.) Defendants' "rain check" program additionally required the consumer to fill out a "rain check" application form with the consumer's name and address, attach the coupon to the form, and mail the form to KFC or give the form to a KFC team member. (*Id.* ¶ 35.) Plaintiffs have alleged that KFC stopped honoring the coupons after Plaintiffs had already performed (by downloading a "Kentucky Grilled Chicken" coupon from a participating website and presenting the coupon in person at a KFC restaurant), despite giving no indications as to a lack of supply. (*Id.* ¶¶ 29-33, 37-42, 45-50, 53-58, 60-65.)

The court finds that Plaintiffs have alleged sufficient facts to "plausibly suggest an entitlement to relief," *Iqbal*, 129 S. Ct. at 1951, for Defendants' breach of their contract with Plaintiffs. Defendants' argument that Plaintiffs are not entitled to damages because the alleged breach involved a contract term that was not "essential" misses the mark. The materiality of a breach is generally evaluated for purposes of ascertaining only what remedies are available to the non-breaching party—not for purposes of liability. *See Finch v. Ill. Cmty. Coll. Bd.*, 734 N.E.2d 106, 110 (Ill. App. Ct. 5th Dist. 2000) ("If a party fails to perform his duties under a contract, without a valid excuse, he is liable for a breach of contract, and the remedies for the breach would depend on whether the breach was material or minor."); *Woody v. Tamer*, 405 N.W.2d 213, 216 (Mich. Ct. App. 1987) ("When performance of a duty under a contract is due any non-performance is a breach.") (quoting Restatement (Second) of Contracts § 235); *Brawley v. J.C. Interiors, Inc.*, 74 Cal. Rptr. 3d 832, 838 (Cal. Ct. App. 5th Dist. 2008) ("A breach of contract may be total or partial. If the breach is total, the injured party has the right to terminate

the contract.  If the breach is partial, there is no right to terminate. . . .  Any breach of contract, whether total or partial, causing measurable injury, gives rise to a claim for damages.") (quoting BAJI No. 10.86).  Additionally, a number of the cases cited by Defendants are inapposite insofar as they involve parties seeking to avoid their contractual obligations because of the other party's alleged breach of an essential "timing" term of the contract.  *See Sahadi v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 706 F.2d 193, 196 (7th Cir. 1983); *Chariot Holdings, Ltd. v. Eastmet Corp.*, 505 N.E.2d 1076, 1080 (Ill. App. Ct. 1st Dist. 1987); *MacRitchie v. Plumb*, 245 N.W.2d 582, 584 (Mich. Ct. App. 1976); *Johnson v. Alexander*, 134 Cal. Rptr. 101, 105 (Cal. Ct. App. 2d Dist. 1976).  That is not the situation here, where Defendants seek to set aside the redemption period for purposes of excusing their own alleged breach.  Finally, the cases Defendants cite also make clear that whether time is of the essence to a particular contract depends on the fact-specific circumstances of the case, making the determination that Defendants advocate particularly inappropriate at the motion to dismiss stage.  For all of these reasons, the court finds Defendants' argument to be unpersuasive on this point.

Defendants next assert that the allegations of the Master Complaint conclusively demonstrate Defendants adequately cured any breach by providing their "raincheck program." (Defs.' Mem. 8.)  This argument goes to the merits of Defendants' affirmative defense.  In general, a plaintiff need not anticipate or attempt to defend against affirmative defenses.  *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009).  Plaintiffs' Master Complaint has alleged that Defendants offered to supply the agreed-upon meal at a later date, but only after Plaintiffs "provide[d] identifying personal information" to Defendants. (Master Compl. ¶¶ 34-35.)  Plaintiffs' allegations, taken as true, plausibly suggest that Defendants' "raincheck program" was not a cure, but a requirement for additional performance

by Plaintiffs. Based upon the Master Complaint's alleged facts, the court finds that Plaintiffs have not set out an "impenetrable defense" to their breach of contract claim, *see Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008), such that their breach of contract claim must be dismissed at the outset of this litigation.

Because Plaintiffs have alleged sufficient facts to plausibly suggest that Defendants breached their contract with Plaintiffs, Defendants' motion to dismiss is denied with respect to Count I.

## II.     Count VI — Common Law Fraud

Defendants argue that Plaintiffs' claim for common law fraud (Count VI) should be dismissed because Plaintiffs' allegations of fraud fail to meet the federal pleading standards set forth in Rule 8 and Rule 9(b). (Defs.' Mem. 8-13.) Generally, fraud allegations must be pleaded with particularity under Rule 9(b). Fed. R. Civ. P. 9(b). This means "plaintiffs must plead the circumstances constituting fraud in detail—the 'who, what, when, where, and how.'" *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008). However, Defendants correctly acknowledge that allegations of fraudulent intent are not subject to the particularized pleading standards of Rule 9(b). *See Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (the heightened pleading standard for fraud "does not extend to 'states of mind' which 'may be pleaded generally' under Rule 9(b)"). Relying on Rule 8, Defendants argue that Plaintiffs' common law fraud claim must be dismissed because Plaintiffs have failed to allege facts "that plausibly give rise to an inference that KFC 'never intended to honor' the coupons." (Defs.' Mem. 12.)

Plaintiffs allege in their Master Complaint that "Defendants, in fact, never intended to honor the Coupons as represented." (Master Compl. ¶ 117.) While Plaintiffs, of course, cannot know Defendants' state of mind, they have supported this general allegation with additional facts alleged in the Master Complaint. For example, Plaintiffs allege that, "[o]n information and belief, many of the KFC locations that refused to redeem the coupons had ample supplies of Kentucky Grilled Chicken on hand, and continued to make those supplies available for purchase." (*Id.* ¶ 33.) The "information and belief" on which this allegation rests includes the experiences of plaintiff Veronica Mora on May 5, 2009 (*Id.* ¶¶ 60-65), who allegedly visited a KFC restaurant in Sylmar, California, where employees refused to honor the coupon while continuing to sell "Kentucky Grilled Chicken" to customers. (*Id.* ¶ 64.) It is also alleged that none of the four named plaintiffs who attempted to redeem the coupons in person were told that the specific KFC restaurant they visited had actually run out of "Kentucky Grilled Chicken." (*Id.* ¶¶ 40, 48, 56, 62-64.)

Defendants argue that they could not have plausibly harbored an intention not to honor the coupons, when it is undisputed that Defendants honored 4.5 million coupons in the first two days of the promotion. (*See id.* ¶ 32.) However, Plaintiffs have also alleged that Defendants "began almost immediately to refuse to honor the coupons" and "stopped the promotion altogether on May 7, 2009 — two days after it was announced," which left 5.7 million coupons unredeemed. (*Id.* ¶¶ 29, 31-32.)

Based on the allegations of the Master Complaint, the court finds it plausible that Defendants never intended to honor the coupon as represented. It can be reasonably inferred from Defendants' choice to publicize their offer "on the highly popular 'Oprah' show" (*id.* ¶ 2) that Defendants hoped their promotion would reach millions of consumers. It is also reasonable

to assume that Defendants contemplated the possibility that millions of consumers would seize the opportunity to obtain a free "Kentucky Grilled Chicken" meal, and that Defendants considered what would happen if individual KFC restaurants ran out of the advertised product. With these considerations in mind, the court finds that it is plausible Defendants intended all along to offer a "rain check" (*id.* ¶ 5) in place of the coupon, or otherwise limit redemption of the coupon beyond the terms stated on its face. Plaintiffs have alleged sufficient facts to comport with the pleading requirements of Rule 8 and state a plausible claim for common law fraud.

III.    <u>Counts II, III, IV, V, & VII — Consumer Protection Statutes</u>

Defendants further argue that Plaintiffs' statutory fraud claims (Counts II-V & VII) should be dismissed because Plaintiffs "have not pled any facts . . . to distinguish their contract claim from a truly separate claim for 'deceptive' statutory fraud." (Defs.' Mem. 11.) It is Defendants' position that there is nothing inherently "unfair" or "deceptive" about refusing to honor the terms of a contract, and Plaintiffs' claims under the relevant state consumer protection statutes "simply restate plaintiffs' claim that KFC breached the terms of the original offer." (*Id.* at 10.)

Plaintiffs assert that they have alleged more than just breach of contract, noting that their statutory claims "partially rely on fraud . . . [and] also rely partially on the Defendants' 'unfair' conduct." (Dkt. No. 32 ("Pls.' Resp.") at 11.) Plaintiffs contend that the Master Complaint's allegations are sufficient to support their statutory claims under the relevant state consumer protection statutes, because the allegations go beyond breach of contract to "implicate[ ] consumer protection concerns." (*Id.* at 9-10 (quoting *Cent. Diversey M.R.I. Ctr., Inc. v. Med. Mgmt. Scis., Inc.*, 952 F. Supp. 575, 577 (N.D. Ill. 1996)).)

As discussed above, Plaintiffs have adequately alleged that Defendants "never intended to honor the Coupons." (Master Compl. ¶ 117.) Based on this allegation, Plaintiffs characterize Defendants' actions as "a classic 'bait and switch'" and note that this type of conduct is actionable under the relevant state consumer protection statutes. (Pls.' Resp. 7 (citing *Chandler v. Am. Gen. Fin., Inc.,* 768 N.E.2d 60, 69 (Ill. App. Ct. 1st Dist. 2002); Cal. Civ. Code § 1770(a)(17); and Mich. Comp. Laws § 445.903(1)(g)-(h)).) Defendants do not dispute that "bait and switch" schemes are generally actionable under the relevant statutes, but argue that their conduct should not be so characterized because a "bait and switch" only occurs if the defendant business actually "sells the consumer a more expensive item," which Plaintiffs do not allege in this case. (Dkt. No. 43 ("Defs.' Reply") at 14 (quoting *Xydakis v. Target, Inc.*, 333 F. Supp. 2d 683, 685 (N.D. Ill. 2004)).) While the judge in *Xydakis* did require the plaintiff to allege "actual damages caused by defendant's acts," that judge also determined that false advertising alone (*i.e.* the "bait") was sufficient to set forth a violation of Illinois' consumer protection statute. *Xydakis*, 333 F. Supp. 2d at 685. Moreover, this case is distinguishable from *Xydakis* in that Plaintiffs have alleged actual damages caused by Defendants' acts. (Master Compl. ¶ 127.) Accordingly, the court disagrees with Defendants' contention that the conduct alleged in the Master Complaint cannot be considered a "bait and switch" under any circumstances.

Because Plaintiffs have alleged that Defendants never intended to honor their promotion from the outset, Plaintiffs' allegations "involve[ ] more than the mere fact that a defendant promised something and then failed to do it." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) (citation omitted). Additionally, this court finds that the contract at issue in this litigation implicates an "inherent consumer interest" on its face, *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1116

(Ill. App. Ct. 2d Dist. 1995), insofar as Defendants' offer was allegedly accepted by millions of consumers across the nation. (Master Compl. ¶ 32.) For these reasons, the court declines to dismiss Plaintiffs' statutory claims as being redundant to the claim for breach of contract.[2]

A.     Count II — Illinois

In Count II of their Master Complaint, Plaintiffs allege that Defendants' actions violate Section 2 and Section 2P of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* Relying on the language of the statute, Defendants argue that Plaintiffs' claims under the ICFA should be dismissed because "the offering of a free meal does not fall within the scope of the ICFA." (Defs.' Mem. 13.)

1.     Section 2

Section 2 of the ICFA declares that it is unlawful to engage in:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. Defendants argue that Plaintiffs cannot state a cause of action under Section 2, because Defendants' alleged actions as set forth in the Master Complaint do not describe an act or practice that has taken place "in the conduct of any trade or commerce."

The ICFA defines the terms "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, . . . commodity, or thing of value." 815 ILCS 505/1(f). Defendants note that this definition "describe[s] four steps of a typical

---

[2] Because the court has determined that Plaintiffs' allegations of statutory fraud sufficiently allege conduct involving more than just breach of contract, the court need not address Plaintiffs' additional argument that Defendants' actions also constitute "unfair" conduct under the relevant statutes.

commercial sale" and argue that, because "the coupon did not involve any sale or offer of sale," the statute is inapplicable to the facts of this case. (Defs.' Mem. 14.) Defendants' interpretation ignores the plain language of the statute. This language is unambiguous, insofar as the use of the disjunctive "or" clearly signifies that allegations of unfair or deceptive acts or practices occurring at any one of the four stages in the life cycle of a typical consumer transaction ("advertising, offering for sale, sale, or distribution") will suffice to state a claim under Section 2. The court declines Defendant's invitation to read the disjunctive term "or" as though it means the conjunctive term "and" in this context.

The court further disagrees with Defendants' argument that the coupon did not constitute an "advertisement" because it was not "disseminated in connection with a 'commercial transaction.'" (*Id.* (citing 815 ILCS 505/1(a)).) Plaintiffs have alleged that Defendants offered the coupon as part of their advertising campaign for their new line of chicken. (Master Compl. ¶¶ 22-23, 25-26.) Plaintiffs have also alleged that this new line of chicken was, and is, for sale to the public. (*Id.* ¶ 27.) The allegations of the Master Complaint support the reasonable inference that the goal of Defendants' advertising campaign was to promote future sales of "Kentucky Grilled Chicken" and other KFC products, especially in light of the fact that the coupons were only redeemable in person at participating KFC restaurants. (*Id.* ¶ 26.) Because the "Kentucky Grilled Chicken" giveaway can reasonably be considered an attempt "to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise," the "Kentucky Grilled Chicken" giveaway can be considered an "advertisement" for purposes of the ICFA. 815 ILCS 505/1(a).

2.  Section 2P

Plaintiffs also allege that Defendants violated Section 2P of the ICFA, which states:

It is an unlawful practice for any person to promote or advertise any business, product, utility service . . . or interest in property, by means of offering free prizes, gifts, or gratuities *to any consumer*, unless all material terms and conditions relating to the offer are clearly and conspicuously disclosed at the outset of the offer so as to leave no reasonable probability that the offering might be misunderstood.

815 ILCS 505/2P (emphasis added).  Defendants argue that Plaintiffs' claims under Section 2P necessarily fail because (1) Plaintiffs are not "consumers" under the ICFA's definition of this term, and (2) Plaintiffs have not alleged any "unclear or inconspicuous disclosure."  (Defs.' Mem. 15.)

The ICFA defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."  815 ILCS 505/1(e).  Because "[n]one of the plaintiffs was required to purchase anything to receive a free meal," Defendants assert that Plaintiffs cannot state a claim for relief under Section 2P.  (Defs.' Mem. 15.)  The statutory definition of "consumer" is not as limited as Defendants contend.  On its face, the ICFA definition does not require a "consumer" to have purchased merchandise from a named defendant.  Nor does this reading make sense in the context of Section 2P.  Section 2P applies to situations in which businesses promote their products by offering "free prizes, gifts, or gratuities to any consumer." 815 ILCS 505/2P.  Section 2P would be rendered meaningless if an individual must first purchase the "free" product to be considered a "consumer" for purposes of the protections set forth therein.

Defendants also argue that "[t]his case has nothing to do with the failure to clearly and conspicuously disclose the terms of the promotion."  (Defs.' Mem. 15.)  In response, Plaintiffs contend that the Master Complaint is "rife with allegations of after-the-fact conditions placed on

the offer by Defendants and their employees." (Pls.' Resp. 17.)  The conditions cited by

Plaintiffs include (1) that redemption of the coupons would be limited "to the first 100 coupons

presented at each KFC restaurant, per day, regardless of the supplies of 'Kentucky Grilled

Chicken' on hand" and (2) that consumers would not be able to redeem the coupon after a

certain date, at which point consumers would be required to provide their names and addresses

before receiving a "rain check" good for a free meal at a later date.  (*Id.*; *see also* Master Compl.

¶¶ 30, 34-35.)  Section 2P requires disclosure of "all material terms and conditions relating to the

offer . . . at the outset of the offer," for purposes of ensuring that the there is "no reasonable

probability that the offering might be misunderstood."  815 ILCS 505/2P.  Plaintiffs do not

contend that Defendants failed to disclose the original terms of the offer "at the outset," and

Defendants cannot have been expected to disclose up-front any "after-the-fact" conditions that

Defendants *later* made a part of the offer.  However, the court finds that Plaintiffs have set forth

sufficient allegations in the Master Complaint to plausibly suggest that Defendants at some point

made a decision to revise the terms of the offer and did not "clearly and conspicuously" disclose

the new contract terms to Plaintiffs before Plaintiffs accepted the offer.  It is unclear at this point

in the litigation exactly when Defendants made the decision to limit coupon redemption to the

first 100 customers per restaurant, when Defendants made the decision to issue a "rain check"

(Master Compl. ¶ 5), or when Christine Doering, the only named Illinois plaintiff, attempted to

redeem her coupon.  The court expects that it will be in a better position to evaluate Plaintiffs'

Section 2P claim on the merits once it has the benefit of a better-developed factual record, and

declines to dismiss Count II on the bases contended by Defendants.

3.      Illinois Administrative Code

Finally, Defendants argue that their conduct cannot constitute an unfair or deceptive act under the ICFA because it comports with the raincheck exception set forth in Title 14 of the Illinois Administrative Code.  This exception states:

> It is an unfair or deceptive act for a seller to advertise any product for sale when the seller does not have that product in stock in sufficient quantities to meet reasonably anticipated customer demand during the effective period of the advertisement, *except* where:
> . . .
>
> d) The seller tenders a raincheck entitling prospective purchasers to buy the advertised product at the advertised price and redeems the raincheck within a reasonable time after the issuance thereof . . .

Ill. Admin. Code tit. 14, § 470.310(d) (emphasis added); *see also* 815 ILCS 505/4 (authorizing the Attorney General to promulgate rules and regulations "[t]o accomplish the objectives and to carry out the duties prescribed by [the ICFA]") and 815 ILCS 505/10b(1) (stating that the ICFA does not apply to actions "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State").  Defendants do not cite any cases applying this exception, and it is not clear to the court that this provision is applicable when Defendants did not "advertise [their] product for sale."  Additionally, Plaintiffs have not alleged that the KFC restaurant visited by Doering actually failed to sufficiently stock Kentucky Grilled Chicken; rather, Plaintiffs allege only that "Doering was informed by the restaurant's management that her coupon would not be honored, because of 'some error in the coupon' and the overwhelming response to the coupons."  (Master Compl. ¶ 55.)  The provision also appears on its face to require that the raincheck include the same terms as the original offer for sale, with the exception of the redemption date.  Plaintiffs have alleged in this case that Defendants required additional terms as part of their "rain check" (*id.* ¶ 35), thereby changing the terms of

the original offer.  Because Plaintiffs have not clearly established the elements of this affirmative

defense through the allegations of the Master Complaint, the court declines to dismiss Count II

on these grounds.

B.      Count III — Michigan

Like the ICFA, the Michigan Consumer Protection Act ("MCPA") prohibits "[u]nfair,

unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."

Mich. Comp. Laws § 445.903(1).  The MCPA defines "trade or commerce" to include "the

advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or

property."  Mich. Comp. Laws § 445.902(1)(g).  Defendants argue that the MCPA does not

cover "free coupon giveaways," because "[p]laintiffs did not buy goods or services from the

Defendants."  (Defs.' Mem. 18 (quoting *Cosmetic Dermatology & Vein Ctrs. of Downriver, P.C.

v. New Faces Skin Care Ctrs., Ltd.*, 91 F. Supp. 2d 1045, 1060 (E.D. Mich. 2000)).)  While the

*Cosmetic Dermatology* case in 2000 expressed the proposition that a plaintiff cannot set forth a

claim under the MCPA unless the plaintiff actually purchased goods or services from the

defendant, this court agrees with later federal court decisions in Michigan that have viewed this

interpretation of the MCPA as "impermissibly narrow[ing] the scope of the statutory definition

of trade or commerce."  *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 900-

01 (W.D. Mich. 2001); *see also Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F.

Supp. 2d 837, 848-50 (E.D. Mich. 2003).  Relying on "the express language of the MCPA as

well as the remedial purposes of the MCPA," the court in *Action Auto Glass* found that "[t]here

is no requirement that consumer goods be *sold or purchased* in order to constitute 'trade and

commerce.'"  *Action Auto Glass*, 134 F. Supp. 2d at 901 (emphasis in original).  It is enough that

a defendant "in the business of providing consumer goods or services" is alleged to have

engaged in false or misleading advertising.  *Id.*  Because Plaintiffs' allegations are consistent with the requirements of Michigan law, Plaintiffs need not have actually purchased any KFC products to state a claim for relief under the MCPA.

Defendants also argue that they cannot be liable under the MCPA because they complied with the Michigan Administrative Code "by immediately offering [customers] a raincheck in the face of 'high demand.'" (Defs.' Mem. 19 (quoting Master Compl. ¶ 3).)  The applicable regulation states that "[i]f an advertisement does not state the quantity of a consumer item available, and the consumer item cannot be sold throughout the advertised period of sale, . . . the advertiser shall make available a raincheck which obligates the advertiser to deliver and sell to the consumer in possession of the raincheck the consumer item specified in the raincheck, at the advertised price stated in the raincheck, and at the future date stated in the raincheck, not in excess of 90 days, or at an earlier time upon notification to the consumer by the advertiser." Mich. Admin. Code R. 14.203(1); *see also* Mich. Comp. Laws § 445.904(1)(a) (stating that the MCPA does not apply to "conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state").  As with the Illinois raincheck exception, Defendants do not cite any case law applying the Michigan regulation to a claim brought under the MCPA and, again, it is not clear to the court that this regulation applies where there is not an "advertised period *of sale*."  Additionally, as with the Illinois plaintiff Christine Doering, Plaintiffs have not alleged that the KFC restaurant visited by Michigan plaintiff Kay Ready on May 5, 2009, was actually unable to offer the Kentucky Grilled Chicken product; rather, the Master Complaint alleges that "Upon entering the restaurant, Plaintiff Ready was informed that KFC was not honoring the coupons anymore."  (Master Compl. ¶¶ 37-39.) Finally, the Michigan regulation also appears on its face to require that the raincheck include the

same terms as the original offer for sale, with the exception of the redemption date.  Mich. Admin. Code R. 14.203(1)-(2).  However, Plaintiffs have alleged in this case that Defendants required additional terms as part of Defendants' "rain check."  (Master Compl. ¶¶ 35, 41.)  The court denies Defendants' motion as to Count III.

Finally, Defendants seek to dismiss Plaintiffs' request for an injunction under Michigan law, in which Plaintiffs seek an order requiring Defendants to "clearly and conspicuously identify the additional animal ingredients in the 'Kentucky Grilled Chicken' product."  (Master Compl. ¶¶ 1, 24, 92, 135(4).)  The MCPA prohibits "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."  Mich. Comp. Laws § 445.903(1)(s).  "A 'material fact for purposes of the MCPA' is one 'that is important to the transaction or affects the consumer's decision to enter into the transaction.'"  (Pls.' Resp. 20 (quoting *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999)).)  In their Master Complaint, Plaintiffs allege that "[a]t no point did any of the marketing materials in the campaign disclose the fact that KFC's new 'Kentucky Grilled Chicken' product contains beef."  (Master Compl. ¶ 24.)  Whether the presence of beef in a poultry product is the type of information that affects a consumer's decision to enter into the transaction, and whether that information could reasonably be known by the consumer, are legitimate questions of fact raised properly by Plaintiffs' Master Complaint.

The MCPA specifically authorizes injunctive relief for purposes of addressing conduct that is made unlawful pursuant to the MCPA's provisions.  Mich. Comp. Laws § 445.911(1)(b). This injunctive relief is available "[w]hether or not [the plaintiff] seeks damages."  *Id.* Defendants argue that a plaintiff cannot recover under the MCPA unless he or she was

personally injured as a result of the defendants' conduct, but the cases cited by Defendants to support Defendants' contention on this point are suits for damages, not for injunctive relief.  (*See* Defs.' Mem. 20 (citing *Lozada v. Dale Baker Oldsmobile, Inc.*, 136 F. Supp. 2d 719, 729 (W.D. Mich. 2001)); Defs.' Reply 24 (citing *Mayhall v. A.H. Pond. Co.*, 341 N.W.2d 268, 270 (Mich. Ct. App. 1983)).)  These cases discuss the "actual damages" requirement of Section 11(2) of the MCPA, which states that, "[e]xcept in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees."  Mich. Comp. Laws § 445.911(2).  As noted above, Section 11(1), by contrast, states that "a person may bring an action" seeking an injunction "[w]hether or not he seeks damages."  Mich. Comp. Laws. § 445.911(1).  This provision does not require that a plaintiff stating a claim under the MCPA suffer a "loss" before bringing an action for injunctive relief.  Defendants' arguments on this point are without merit.

## C.      Counts IV, V & VII — California

The California Consumers Legal Remedies Act ("CLRA") enumerates specific unlawful acts or practices "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  As with the Illinois and Michigan statutes, Defendants argue that the CLRA "applies only where a 'consumer' alleges unfair or deceptive conduct in the course of a 'transaction.'" (Defs.' Mem. 16.)  "Consumer" is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d).  A "transaction" is "an agreement between a consumer and any other person."  Cal Civ. Code § 1761(e).

It is Defendants' position that California plaintiffs Daleen Brown, Veronica Mora, and

James Asanuma cannot be considered "consumers" because they did not seek to acquire any

"Kentucky Grilled Chicken" "by purchase or lease." Cal. Civ. Code § 1761(d). Again, the court

finds that Defendants' interpretation of the statute is too limited. On its face, the CLRA's

definition of "consumer" does not identify the specific goods a "consumer" must seek to acquire.

Rather, the definition applies to an individual who seeks to purchase (or lease) "*any* goods or

services for personal, family, or household purposes." Cal. Civ. Code § 1761(d) (emphasis

added). Moreover, the CLRA protects "*any* consumer" from the unfair or deceptive acts or

practices enumerated therein. Based on the plain language of the statute, the court finds that

Plaintiffs have been properly alleged to be "consumers" for purposes of the CLRA.

Additionally, it is undisputed for purposes of the pending motion that the coupon

constituted an agreement between Plaintiffs and Defendants. (Defs.' Mem. 5.) As "an

agreement between a consumer and any other person," Cal Civ Code § 1761(e), the coupon

therefore qualifies as a "transaction" for purposes of the CLRA. As discussed above, it can be

reasonably inferred from the allegations of the Master Complaint that the goal of Defendants'

advertising campaign was to promote future sales of "Kentucky Grilled Chicken" and other KFC

products. Because the Master Complaint sets forth sufficient factual allegations to plausibly

suggest that Defendants intended the coupon to result in the sale of specific goods to consumers,

Cal. Civ. Code § 1770(a), the court finds that Plaintiffs qualify for relief under the CLRA.

Defendants further argue that Plaintiffs' claims under the CLRA, California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's False

Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, must be dismissed because

Defendants agreed to offer "an appropriate correction, repair, replacement or other remedy" in

accordance with Cal. Civ. Code § 1782(b) and Cal. Bus. & Prof. Code § 17537.1(d). The court

finds that the allegations of the Master Complaint are sufficient to state a claim under the CLRA,

the UCL, and the FAL. Defendants' further contentions that their KFC restaurants had

unforeseeably run out of Kentucky Grilled Chicken and that Defendants' remedy of this situation

was otherwise "appropriate" under the circumstances are of no moment in determining the

sufficiency of the Master Complaint's allegations under California law. Defendants' motion to

dismiss Counts IV, V, and VII on these grounds is therefore denied.

IV.    YUM!

Finally, Defendants argue that Yum! should be dismissed as a defendant because

"plaintiffs do not allege any facts that Yum! is directly or indirectly liable for any conduct

undertaken by its subsidiary, KFC." (Defs.' Mem. 21.) Plaintiffs have generally alleged that

Yum! was a participant in the conduct set forth in the Master Complaint (Master Compl. ¶¶ 17-

19), and have specifically alleged that Yum! and KFC, "acting in concert," together "introduced

'Kentucky Grilled Chicken,'" "initiated a campaign called 'UNThink KFC' . . . which attempted

to re-brand KFC as a healthy fast-food alternative," and, as part of this campaign, "developed a

television advertising campaign based around a 'Kentucky Grilled Chicken' giveaway." (*Id.* ¶¶

22-23, 25.) Plaintiffs allege that Yum! and KFC together "stopped the promotion . . . [and]

instructed franchises to stop honoring the coupons." (*Id.* ¶ 31.)

Defendants argue that Yum! cannot be a defendant to the breach of contract claim,

because Yum! "was not a party to the alleged contract." (Defs.' Mem. 21.) In support of this

argument, Defendants look to the "face of the alleged contract (the coupon)" and invite the court

to consider the copy of the coupon attached by plaintiff Christine Doering as an exhibit to her

original complaint in this case. (*Id.* (citing Defs.' Ex. A).) Although Plaintiffs did not

specifically respond to Defendants' argument on this point, Plaintiffs did allege in Count I of the Master Complaint that Yum! itself was a party to the contract that made "a valid offer" to consumers (Master Compl. ¶ 79) and "breached its contract with Plaintiffs and the Class members" (*id.* ¶ 81) by committing specific acts alleged in the Master Complaint. (*Id.* ¶ 81) Because the Master Complaint alleges that Yum! was directly involved with the making of the coupon offer, the refusal to honor the coupons, the announcement not to honor the coupons, and the demand that Plaintiffs and class members relinquish their coupons as a condition of future performance by KFC under the contract (*id.* ¶ 81), the court finds that the Master Complaint alleges a plausible claim against Yum!.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 24) is denied. Defendants' answer is to be filed on or before 7/16/10. With the exception of the deadline for the close of class discovery, which was vacated in open court on 7/6/10, all dates set forth in the court's scheduling order of 5/18/10 (Dkt. No. 42) remain in effect at this time. Counsel for the parties are requested to meet pursuant to Rule 26(f) and jointly file an amended Form 52 on or before 7/20/10 setting forth any changes to the schedule for the class certification portion of this litigation desired by counsel. Status hearing remains set for 7/22/10, at 9:00 a.m. for purposes of scheduling further dates as appropriate. Parties are encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 8, 2010

23