The Law Offices of Sam P. Cannata
Sam P. Cannata
9555 Vista Way, Ste. 200
Cleveland, OH 44125
(216) 438-5091
(216) 587-0999 Fax
samcannata@cannataphillipslaw.com

FILED
OCT 24 2011 NF
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

October 21, 2011


United States District Court
Northern District of Illinois (Eastern Division)
Clerk of Courts
219 South Dearborn Street
Chicago, IL 60604


Class Counsel
Jay Edelson
Michael J. McMorrow
Edelson McGuire LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654

Defendants' Counsel
David F. Graham
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603


Re: *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices
Litigation*, No. 1:09-cv-07670

Dear Sirs and Madams:

        Class member JILL K. CANNATA ("Objector") 14944 Hillbrook Drive,

Cleveland, Ohio 44022 is a member of the class. She downloaded a PDF Coupon

between May 5, 2009 at 9:00 a.m. central time and May 6, 2009 at 11:59 p.m. central

time from Oprah.com and did not receive the KGC Free Meal pursuant to the PDF

Coupon, or the Raincheck Coupon; a "Chicken Check" or other compensation from KFC

in response to a complaint concerning the Oprah Promotion; or a free meal or other

1

consideration at a restaurant unaffiliated with Defendants that agreed to accept the KGC Coupons.

Objector, by and through the undersigned counsel, hereby objects to the proposed Settlement Agreement of the above-entitled class action for the following reasons:

### 1. This Pre-Certification Settlement Warrants Elevated Scrutiny.

A "district court has a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2nd Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirafasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representatives and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992).

When a court is faced with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997); *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski,* 318 F.3d at 953 (*quoting Dunleavy v. Nadler,* 213 F.3d 454, 458 (9th Cir. 2000)). *Accord Hanlon v. Chrysler Corp.,* 150 F3d 1011, 1026 (9th Cir. 1998) "Several Circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness…because of the dangers of collusion between class counsel and defendant…when the settlement is not negotiated by a court-designated class

representative…. Because settlement class actions present unique due process concerns for absent class members we agree with our sister circuits…and adopt this standard as our own."

This Settlement is a pre-certification settlement, seeking to resolve claims for a nationwide class that the court has yet to certify. Pursuant to Seventh Circuit precedent, this Court has a special duty to make sure the settlement is more than fair to the absent class of 5.7 million class members.

2.    **Class Certification Should Be Defeated Based on An Insufficient Showing of Predominance.**

Beside the Parties' attempts to slip a Pre-Certification in this Settlement, the proposed class cannot be certified since the consumer protection laws of the states, which are considered in the class description, are considerably different.

Since considerable differences exist among the consumer protection laws and remedies, the proposed settlement cannot be approved. The Settlement tries to provide relief to class member from all fifty (50) states. However, each state provides different remedies for consumer protection statutes. Therefore under the Federal Rules for Civil Procedure Rule 23, predominance is unattainable.

The directive in recent consumer class action cases are that (a) certification must be rejected, and (b) where certification is allowed, the settlement must be structured to accommodate the differences among the states' statutes.

Under Rule 23(a), Class Counsel must show that the interests of the representative party do not conflict with the interests of any of the absent class members. The proposed settlement fails under this requirement because there is an intra-class conflict of interest

that renders Class Counsel, as well as the class representatives, inadequate, since it fails to differentiate between residents of various states. While it may seem burdensome to engage in state-by-state analysis, many courts have undertaken that burden in the interests of equity and of permitting a class settlement to be approved.

Even appellate courts have directed, if it is too troublesome to perform a proper choice-of-law analysis, the appropriate remedy is decertification of the class, not to gloss over the issue and split things up equally. *See, In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.* 288 F3d 1012, 1017 (7th Cir. 2002)("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules."). On the other hand, decertification is not required if Class Counsel or the Court can rationally divide the class to factor in the applicable consumer protection laws, as the court did in *In re Relafen Antitrust Litig.* 225 F.R.D. 14, 346 F.Supp.2d 349 (D. Mass. 2004).

The Supreme Court noted that one factor warning against certification of the settlement class was the fact that certain claimants "had more valuable claims ... the consequence being an ... instance of disparate interests. *Ortiz v. Fibreboard Corp.* 527 U.S. 815, 857 (1999). The Court consequently held that "when class members have claims of varying strength or merit, it is an abuse of discretion to approve a settlement that treats them all the same." *Id.* It is clear that applying the various consumer laws of each state will result in different benefits to class members of each state.

3.      **Consumer Protection Statutes Are Conflicting.**

The predominance inquiry – as distinguished from the trial-manageability inquiry – should not be watered down merely because the parties have entered a proposed

4

settlement. *Amchem Products,* 521 U.S. at 620; *Denney v. Deutsche Bank AG* 443 F.3d 253, 270 (2d Cir. 2006); *In re Warfarin [Sodium Antitrust Litigation]* 391 F.3d 516, 529-30 (3d Cir. 2004). Under the facts of this case, differences in the applicable state laws go to the heart of Settlement Class members' substantive claims, and thus undermine the Settlement Class' cohesiveness. Therefore, certification of the Settlement Class is especially inappropriate, despite the existence of the Settlement. *In re Grand Theft Auto Video Game Consumer Litigation,* 251 F.R.D. 139, 149 (S.D.N.Y. 2008).

Individual Settlement Class members face different potential legal obstacles to recovery. For example, the reliance issue is irrelevant to Settlement Class members from states not requiring a showing of reliance to make out a claim for consumer fraud [such as in Kansas, New Jersey, and Arizona laws], while reliance is of the essence to those Class members who took the KFC Coupon deal in reliance states [such as in Georgia and Pennsylvania laws].

Issues present, such as Reliance, Choice of Law, Consumer Protection, Fraud, Eligibility to Maintain Class Actions, and Scienter of Defendants, exposes that the application of the states' different laws lead to contradictions` for the proposed class; and again, undercuts a finding of predominance of legal issues.

Many courts have determined that differences in the underlying state laws applicable to individual putative class members' consumer-protections claims preclude a finding of predominance. *See, e.g., McLaughlin v. American Tobacco Co. 522 F.3d 215 (2d Cir. 2008); In re Zyprexa,* WL 269916 2008 at 138 (tentatively holding that differences in state consumer practice laws defeat predominance); *Dex-Cool, supra,* 241 F.R.D. at 315(holding that differences in state warranty laws defeat predominance); *In re*

*Ford Motor Co. Ignition Switch Prods.* 194 F.R.D. 484, 489091 (D.N.J. 2000)( finding that differences in state consumer protection laws defeat predominance, even under grouping of similar state laws). In particular, the court in *Baker v. Family Credit Counseling Corp.* 440 F.Supp.2d 392 (E. D. Pa. 2006), stated that "When district courts have faced the problem of nationwide classes which seek to apply state consumer protection laws, those courts have refused to certify class, in part because choice of law would require applying the consumer protection law of each class member's home state." 440 F.Supp.2d at 414. Other courts have reached the same result. *In re Pharmaceutical Ind. Average Wholesale Price Litigation* 252 F.R.D. 83, 94 (D. Mass. 2008); *S. States Police Benevolent Assn, Inc. v. First Choice Armor & Equip., Inc.* 241 F.R.D. 85, 93 (D. Mass. 2007) (consumer protections laws varied in eight states, precluding certification).

Since a wide differences exist between jurisdictions in this case, the burden belongs to Class Counsel to conduct a review of state law variances to demonstrate how grouping would work, as recommended by the Manual for Complex Litigation (Fourth), §22.634, p. 412 (2004). This process worked in cases such as *In re Relafen*, 221 F.R.D. at 265 and 289, which certification was granted in part and denied in part. In that case, certain groups of states could be covered by class certification, and not others, depending on the claims.

4.    **Lack of Information To Determine the Reasonableness of the Requested Attorneys' Fees.**

Apparently Class counsel is requesting a compilation $515,000.00 in attorneys' fees on behalf of four different law firms. However, no information has been provided to

the class regarding the details of this request. Objector is unable to analyze the lodestar, calculate the requested multiplier or complete any comparative analysis of the actual available to the class and the requested fees.

Without more information, the percentage sought seems high. The actual fund being provided is $1,218,000.00, as the Defendant is providing $1,575,000.00. However, since $357,000.00 of that is for administrative costs, that leaves approximately $1,218,000.00 for disbursement. $515,000.00 represents 42% of $1,218,000.00, a percentage grossly above the usual benchmark many courts begin with.

In addition concerns exist regarding the stated lodestar as it relates to duplication of effort. There are at least four law firms that may lay claim to this $515,000.00 fund. Many of these firms are not from Illinois. No billing sheets are available to evaluate duplicated effort, nor are any information provided regarding the reasonableness of the time in relation to the work product. The lack of details does not allow the Court to conduct meaningful analysis regarding whether the fees are reasonable.

The court should separate the hearing on the final approval of the settlement and the hearing on the award of attorney fees and incentive award until such time as all time records are received, reviewed and tabulated. Approving and distributing the attorney fees should be consistent with an attorney's duty to put a client's interest first, Once these records have been filed, all class members should be given the opportunity to review the fee request by their attorneys. Any such fee applications and all supporting documents should be available to the class and the public.

Objector request and reserve the right to supplement its objections after review of the attorney fee application is adequately complete.

7

5.     **Class Counsel and Defendants Stand to Benefit More Than the Class.**

Both Class Counsel and the Defendants have much to gain from this proposed

Settlement where Class Counsel will receive $515,000.00 (42% of the actual fund) and

the proposed nationwide class, "certified for settlement purposes only", will release

claims against the Defendants for a fraction of the originally alleges amount in

controversy of over $22,000,000.00. Meanwhile the claimants of the 5.7 million

unredeemed coupons can expect about 13¢ per coupon.

When you deduct the attorneys' fees and incentive award ($540,000.00), the

administrative costs ($357,000.00) from the "Available Amount" of $1,575,000.00, the

Class Members are left with a whopping $678,000.00 to be divided amongst 5.7 million

unredeemed coupons.

Given the fact that this Court denied the Defendants motion to dismiss, it is

difficult to imagine that the risk of loss at trial is so great that the proposed nationwide

class would agree to receive $678,000.00, or 13¢ per coupon.

As the Seventh Circuit wrote of the settlement procured by the parties in *Mirfasihi*

*v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004), "Would it be too cynical to

speculate that what may be going on here is that class counsel wanted a settlement that

would give them a generous fee and Fleet wanted a settlement that would extinguish 1.4

million claims against it at no cost to itself? The settlement that the district court judge

approved sold these 1.4 million claimants down the river. Only if they had no claim –

more precisely no claim large enough to justify a distribution to them – did they lose

nothing by the settlement and the judge made no finding that they had no such claim."

Would it be too cynical to speculate here that class counsel wanted to spend no more money on this case now to establish the proper class certification and conduct adequate discovery? Would it be too cynical to speculate that the Defendants want a settlement that would extinguish 5.7 million claims that should amount to over $22,000,000.00 against itself for the minuscule cost of $1,575,000.00?

Once this Court denied the Defendants' motion to dismiss, a setting arose where Class Counsel and the Defendants could negotiate at arm's length for a proposed settlement that would benefit each of them at that juncture in the litigation, yet violate the due process rights of the proposed nationwide class and fail to provide any meaningful benefit.

### 6. The Cy Pres Distribution Recipients Are Questionable.

This Court must approve a class action settlement after determining that the settlement agreement is fair, adequate and reasonable. Hence, before a Court is able to approve a proposed *cy pres* distribution, the Court needs to determine whether the distribution is practical in fulfilling the purposes of the underlying cause of action. Here, the Settlement proposes that the *cy pres* recipients will be Feeding America, the Illinois Bar Foundation and the Chicago Bar Association. How do these organizations fulfill the purposes of the underlying cause of action? How is this distribution fair and reasonable, and put to the next best use?

It appears that the *cy pres* recipients only serve to put Class Counsel in a positive light with their own local professional organizations; and, help the Defendants with their public relations image after their disastrous and under-handed promotional campaign to sell Kentucky Grilled Chicken.

9

The *cy pres* recipients must be scrutinized by the Court determine whether these self serving provisions of Class Counsel and the Defendants fit into the Settlement, as a whole, is fair, adequate and reasonable.

### 7. Objectors Provide Value To The Settlement.

Objectors play an important role in assuring that settlements and attorneys' fees are reasonable and fair, which is why their existence is assured and guaranteed under Rule 23(e)(5). Several cases have discussed why objectors are necessary to the class settlement process, including *Vollmer v. Selden,* 350 F.3d 656 (7th Cir. 2003):

> Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation]. Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the chances that a claim will be settled for its fa9ir value.... The slightness of individual recovery does not make the counsel's purpose invalid nor his role as objector less vital.

350 F.3d at 660 (emphasis added).

Independent information provided by Objector's counsel complements the Court's fiduciary role in protecting the class members, rather than detracting from it, and prevents a rubber stamp of a settlement which may not have resolved the issues in favor of class members.

8. Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections.

**9.**     The Class Members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, and the legal fees that are proposed to be paid.

**10.**     These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector. All of the legally required prerequisites material to these objections have been met.

**11.**     Objector and her undersigned counsel do not intend to appear, at this time, at the Fairness Hearing scheduled for November 30, 2011, at 10:00 a.m., before Chief Judge James F. Holderman at the United States District Court for the Northern District of Illinois (Eastern Division), Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. Objector will let rely on her written objections.

Respectfully submitted,

Sam P. Cannata (OH#0076821)
Attorney for the Objector

## AFFIDAVIT

I, Jill K. Cannata, declare that I am a member of the Settlement Class.


Dated:  October 21, 2011

_Jill K. Cannata_
Jill K. Cannata

12