**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation,* | MDL 2103 |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | Case No. 1:09-cv-7670 |
| | Hon. James F. Holderman |

**DECLARATION OF MICHAEL J. MCMORROW**

Pursuant to 28 U.S.C. § 1746, I, Michael J. McMorrow, hereby declare and state as follows:

1. I am an attorney admitted to practice in the State of Illinois and in the United States District Court for the Northern District of Illinois. I am entering this declaration in support of Plaintiff's Motion & Memorandum for Final Approval of Class Action Settlement, Approval of Attorneys' Fees and Incentive Award. I am fully competent to make this declaration. This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2. I am a partner in the law firm of Edelson McGuire LLC and have been named Class Counsel in this matter, along with Jay Edelson, the managing partner of my firm.

3. I, as well as other members of Edelson McGuire LLC that were actively involved in the litigation of this matter, have regularly engaged in major complex litigation, and have had experience in prosecuting consumer class action lawsuits of similar size and complexity. (*See* Firm Resume of Edelson McGuire LLC, a true and accurate copy of which is attached as Exhibit 1).

4. Based on my experience as a class action attorney, and through Edelson McGuire LLC's investigation, litigation, mediation, and settlement process, I personally have gained an intimate understanding of the instant litigation and believe the settlement to more than exceed the "fair, adequate, and reasonable" standard required for the Court's approval.

5. I believe that the Plaintiffs' claims in this case are strong, based on this Court's opinion denying Defendants' Motion to Dismiss and the uniform actions of the Defendants giving rise to the claims in this case. But I am also aware that Defendants have raised several affirmative defenses and factual issues during the litigation of this case and during the settlement conferences, any of which, if successful, would result in the Settlement Class receiving no relief whatsoever. Defendants are also represented by experienced and highly-skilled counsel, and further litigation may result in this Court or the Seventh Circuit finding no liability in this matter.

6. In the absence of settlement, I believe that the expense, duration and complexity of the resulting protracted litigation would be substantial. I believe that evidence and witnesses from across the country would have to be assembled for such litigation. In my experience, given the complexity of the factual and legal issues, as well as the amount in controversy, the defeated party or parties would likely appeal both the certification decision and the merits of any decision. As such, I believe that the immediate relief provided to the Settlement Class under the Settlement Agreement supports final approval.

7. Both Plaintiffs and Defendants undertook significant discovery in this matter both prior to, and subsequent to, the two settlement conferences presided over by Magistrate Judge Maria Valdez of this Court on September 3, 2010 and October 18, 2010. In addition to written responses to discovery by Defendants and all five Plaintiffs, including dozens of written discovery requests, Defendants produced over 15,000 pages of documents, and I took the deposition of KFC's Chief Operations Officer, Larry Roberts, in January 2011. Additional depositions of Plaintiffs and other officers of Yum, KFC, and various third parties were contemplated, but the instant settlement obviated the need for such depositions.

8. The formal and informal discovery exchanged in this case both before and after the two court-ordered settlement conferences with Hon. Maria Valdez was sufficient to allow Plaintiffs to effectively negotiate and engage in informed negotiations for relief on behalf of the Settlement Class.

9. At the Court's suggestion, the parties engaged in two settlement conferences with Judge Valdez on September 3, 2010 and October 18, 2010. I attended these conferences along with Mr.

Edelson, and both outside and in-house counsel represented Defendants at the settlement conferences. Judge Valdez was instrumental in advising both sides of the relative strengths of their cases and the advisability of compromise. After several rounds of arms-length negotiations with the assistance of Judge Valdez, the parties were at an impasse in their settlement discussions, and decided to move forward with litigation and discovery.

      10.     Discovery resumed shortly after the latter settlement conference, and continued until the parties reached the instant settlement. The principal terms of the settlement were negotiated over the course of approximately one week, through several phone conferences that began immediately after the deposition of Mr. Roberts.

      11.     Despite reaching an agreement in principal, my firm negotiated the specific terms of the Settlement Agreement with counsel for the Defendants over the next several months. Furthermore, on July 12, 2011, I attended an additional settlement conference with counsel for the Defendants and the Court. The Court questioned all counsel about the terms and effect of the Settlement Agreement in great detail over several hours, leading to additional revisions to the Settlement Agreement.

      12.     After publication of the summary notice of the settlement in *Parade* on September 11, 2011, I contacted by email each potential Settlement Class member for whom I had such information and provided a copy of the summary notice. None of the Settlement Class members I corresponded with objected to the terms of the Settlement Agreement. News of the settlement was also independently reported in several online sites, including: www.consumerist.com; www.classactionsettlementnews.com; http://www.moxiebird.com; http://www.topclassactions.com; and http://jennstrathman.com.

      13.     My office received no negative comments or opposition to the settlement from any state or federal entity in response to the notice provided by Defendants pursuant to the class Action Fairness Act. The Tennessee Attorney General's Office contacted me by phone to discuss the terms of the settlement, but raised no concerns or objection.

      14.     My firm's billable rates and the hours of each attorney who worked on this matter are incorporated in the chart below. The attorneys' expenditure of time has been reasonable and necessary. Although several lawyers were involved in the litigation of this matter, each made conscious effort to

minimize the duplication of work and I have reviewed the hours, submitted and adjusted for time I deemed to be unnecessary or duplicative. Our representation of the Plaintiffs in this case was undertaken entirely on a contingency basis, and the Plaintiffs retained by my firm agreed that a fair award of attorneys' fees from a fund recovered for the class would be one-third of the total recovery plus reimbursement of all costs and expenses with interest. By taking this case on a contingency basis and not being paid by the hour, we had an incentive to conduct our efforts efficiently. So too, being responsible for advancing all expenses, we had an incentive not to expend funds unnecessarily.

15. Class Counsel assumed a significant risk of non-payment in initiating and prosecuting this case given the complexity of legal issues involved and the vigorous defense that Defendants and their highly-skilled counsel raised in the Motion to Dismiss and in discovery, and were prepared to continue to raise in this litigation. Given this, Class counsel would not have prosecuted this case without the prospect of obtaining a percentage of the common fund or applying a reasonable multiplier to our costs and fees.

16. Class Counsel was required to conduct substantial investigation into the claims in this case, to respond to a Motion to Transfer before the Judicial Panel on Multidistrict Litigation, to respond to the Motion to Dismiss, to engage in adequate discovery and further litigation in this case, to prepare for and attend the two settlement conferences with Judge Valdez, to prepare a comprehensive settlement agreement, to prepare preliminary approval papers and accompanying exhibits, including the Class Notices and several declarations, and to prepare the instant final approval papers. All of this work was done on behalf of the Plaintiffs and the Settlement Class without compensation and requiring that other work be foregone.

17. As is the general practice of most law firms, each of the attorneys and law clerks at Edelson McGuire LLC are responsible for keeping track of their billable time. The majority of these records are centralized in a billing management software program to which all employees have access, known as "BigTime."

18. Based on my experience doing plaintiff's class action work (in addition to nine years doing complex commercial litigation and regulatory litigation) and my knowledge of the billing rates of

other firms that pursue complex consumer class action litigation, I believe that the attorneys performing work on this litigation are billed at rates that correlate to their respective experience, that are reasonable in the Chicago, New York, Florida, Michigan, and California legal markets and are at or below average for attorneys of similar backgrounds and experience. Additionally, state and federal courts in other consumer class action settlements have approved rates substantially similar to these.

19. I have reviewed the hours of the attorneys' and law clerks' listed below for work performed on this case and their respective hours and billing rates. The hours submitted were reviewed and any unnecessary hours or duplicative hours have been adjusted. The rates listed are the same rates we use for hourly clients, which comprise a material part of our firm's revenues. The hours, rates, and experience of the particular attorneys involved in this matter are provided in the chart below:

| ATTORNEY (position) | YEARS OF PRACTICE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| J. Edelson (Managing Partner: Edelson McGuire) | 15 years | 57.3 | $600 | $34,380.00 |
| M. McGuire (Partner: Edelson McGuire) | 10 years | 27.2 | $550 | $14,960.00 |
| M. McMorrow (Partner: Edelson McGuire) | 11 years | 595.5 | $470 | $279,885.00 |
| R. Andrews (Partner: Edelson McGuire) | 6 years | 7.0 | $450 | $3,150.00 |
| S. Teppler (Partner: Edelson McGuire) | 31 years | 71.7 | $600 | $43,120.00 |
| Steven L. Woodrow (Partner: Edelson McGuire) | 6 years | 85.0 | $450 | $38,250.00 |
| Ben Richman (Associate Edelson McGuire) | 2 years | 24.10 | $295 | $7,109.00 |
| Edelson McGuire Law | N/A | 38.5 | $210 | $8,085.00 |

| Clerks | | | | |
|---|---|---|---|---|
| **TOTAL** | | 906.3 | | $428,939.00 |

20.     In addition, my law firm incurred costs during this case totaling $6,202.05. This amount includes charges for filing, mediation, travel, transportation, meals, and expert consultants. My firm does not generally charge for small copying charges, long distance telephone calls, Westlaw research charges or other incidental costs. As such, these amounts are not included.

21.     Edelson McGuire LLC will certainly incur future time and expense after the date of final approval, including attending the final fairness hearing, communicating with counsel, and helping to resolve any disputes over claims submitted by members of the class. I expect Edelson McGuire LLC's lodestar to increase by an additional $10,000.

22.     In addition, named Plaintiffs James Asanuma, Daleen Brown, Christine Doering, Veronica Mora, and Kay Ready brought this matter and their continued attentive involvement was critical to the ultimate successful resolution of this matter to the benefit of the class. The Plaintiffs showed a strong commitment to the Class and this action by assisting Class Counsel in investigation, and in reviewing and commenting on draft discovery responses. The Plaintiffs aided in preparation for the settlement conferences that preceded this settlement, and remained active and engaged in the litigation throughout. I believe that but for the participation of the named Plaintiffs, the substantial benefit to the class available through the settlement would not have resulted.

23.     Given their involvement and willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action, and their continued attention to this matter, we request that the Court approve the incentive award. Prior to the settlement conferences, the parties never discussed incentive awards of any type, and there was no pre-agreement concerning any award for being a Class Representative.

24.     After receiving a copy of the Objection filed by attorney Sam P. Cannata on behalf of Jill K. Cannata in this matter, I checked on the federal courts' PACER document retrieval service for

records of attorney Cannata's other litigation. According to PACER, Mr. Cannata has appeared in ten cases in federal courts, one of which was a class action filed by him. The remaining nine cases were class action settlements to which Mr. Cannata objected, either as a class member or as an attorney representing, in most instances, an apparent family member. All of the objections were filed in 2010 or 2011. The federal cases in which Mr. Cannata has filed objections are as follows:

- *Marsikyan v. Mercedes-Benz, USA, LLC*, No. 08-04876 (C.D. Cal. 2010);
- *Hartless v. Clorox Co.*, No. 06-02705 (S.D. Cal. 2011);
- *In re Quantcast Adv. Cookie Litig.*, No. 10-5484 (C.D. Cal., 2011);
- *In re Vytorin/Zetia Mktg. Sales Practices*, No. 08-285, MDL No. 1938 (D. N.J. 2010);
- *In re HP Inkjet Printer Litig.*, No. 05-03580 (N.D. Cal. 2011);
- *Masters v. Lowe's Home Centers, Inc.*, No. 09-0255 (S.D. Ill. 2011);
- *Schulte v. Fifth Third Bank*, No. 09-06655 (N.D. Ill. 2011);
- *Trombley v. National City Bank*, No. 10-00232 (D. D.C. 2011); and
- *Gemelas v. Dannon*, No. 08-00236 (N.D. Ohio 2010).

(True and correct copies of Mr. Cannata's objections in these cases are attached hereto as Group Exhibit 2.) The objection in *Masters v. Lowe's* was ostensibly filed pro se by Grace Cannata. In several of these cases, e.g., *In re HP Inkjet Printer*, *In re Vytorin/Zetia*, and *Marsikyan v. Mercedes-Benz*, Mr. Cannata later withdrew those objections. (True and correct copies of Mr. Cannata's withdrawals in these cases are attached hereto as Group Exhibit 3.) In *In re Vytorin/Zetia,* class counsel agreed to pay Mr. Cannata and a group of other attorneys $55,000 from class counsel's fees and expenses. (*See* Group Exhibit 2.) Based on my review of the dockets of these cases, it appears that none of Mr. Cannata's objections in these cases was sustained by the court. (True and correct copies of the court opinions overruling Mr. Cannata's objections are attached hereto as Group Exhibit 4.)

   25. In *Marsikyan v. Mercedes-Benz*, Mr. Cannata lists his home address as 14944 Hillbrook Drive, Hunting Valley, Ohio 44022. (*See* Group Exhibit 3.) The address listed for Jill K. Cannata in the Objection in this case lists her address as 14944 Hillbrook Drive, Cleveland, Ohio 44022.

26. I discovered that Mr. Cannata is a principal in the law firm of Cannata Phillips LPA, the offices of which are at 9555 Vista Way, Suite 200, Cleveland, Ohio 44125. (A true and correct copy of the Cannata Phillips website, printed on November 16, 2011, is attached hereto as Exhibit 5.)

27. I searched the online records of the Ohio Secretary of State for Cannata Phillips LPA and for the Law Offices of Sam P. Cannata. Cannata Phillips is registered with the office of the Ohio Secretary of State, and the firm appears on the Secretary of State's website as of November 16, 2011. The Law Offices of Sam P. Cannata does not appear on the Ohio Secretary of State's website as of November 16, 2011.

28. In addition, I searched the online records of the Ohio Bar Association for Cannata Phillips LPA and for the Law Offices of Sam P. Cannata. The Law Offices of Sam P. Cannata does not appear on that website. Cannata Phillips LPA appears as the registered address and firm of Mr. Cannata as of November 16, 2011.

29. Edelson McGuire has no affiliation with Feeding America. I am aware of no affiliation between Feeding America and either Defendants or their counsel. My firm selected Feeding America as an appropriate *cy pres* recipient due to its commitment to feeding the hungry, its national scope, and its excellent reputation.

30. True and correct copies of the Declarations of Seth Safier, David Parisi and Mark Freedman, all members of Plaintiffs' Steering Committee, are attached hereto as Exhibits 6, 7, and 8, respectively. The Declaration of Craig Borison is attached hereto as Exhibit 9.

31. A true and correct copy of the Declaration of Kim Schmidt, Senior Vice President of Rust Consulting, Inc., is attached hereto as Exhibit 10.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of November, 2011.

                                     /s/ Michael J. McMorrow
                                     Michael J. McMorrow

Declaration of Michael J. McMorrow