# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FILED

2010 APR -6 AM 11: 19

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

|  |  |  |
|---|---|---|
| ARUTYUN MARSIKYAN and | ) | Case No.: CV08-04876 AHM (JTLx) |
| PAYAM SAADAT, individually and on | ) | |
| behalf of a class of similarly situated | ) | |
| individuals | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | **OBJECTIONS TO CLASS** |
| vs. | ) | **ACTION SETTLEMENT** |
|  | ) | |
| MERCEDES-BENZ USA, LLC | ) | |
|  | ) | |
| Defendant | ) | |

NOW COMES Sam P. Cannata of 14944 Hillbrook Drive, Hunting Valley, Ohio 44022, telephone number (216) 214-0796 (hereinafter referred to as "Objector") hereby file these Objections to the Proposed Settlement of this Class Action and, in support thereof, state as follows:

## PROOF OF MEMBERSHIP IN CLASS

Objector owns a 2002 Mercedes-Benz S-Class, Vehicle Identification Number (VIN) WDBNG75J62A292874. Attached is the itemized bill of the cost to repair the damage and expenses caused by what Objector believes to be caused by the defective reed valve in the air/water duct. The damage was caused by water infiltrating the passenger compartment which caused the electrical and shifter components to fail.

1

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he intends to appear at the Fairness Hearing presently scheduled for 10:00 A.M. on May 17, 2010, in the United States District Courthouse for the Central District of California, 312 N. Spring St., Los Angeles, California 90012 before the Honorable A. Howard Matz, United States District Judge.

## SUMMARY OF SETTLEMENT

The Settlement Agreement provides that all persons throughout the United States (including Puerto Rico) who currently own or lease a model year 2001 through 2006 Mercedes-Benz S-Class (W220) or CL-Class (W215) vehicle; as well as all persons throughout the United States (including Puerto Rico) who previously owned or leased a model year 2001 through 2006 Mercedes-Benz S-Class (W220) or CL-Class (W215), who incurred out-of-pocket, unreimbursed expenses for repair of water damage  due to a clogged reed valve in the air/water duct during the period in which they leased or owned that vehicle are part of the Settlement Class.  Mercedes-Benz USA, LLC ("MBUSA") has agreed to provide several settlement benefits such as Maintenance, a Reimbursement Program, Payment for Future Water Damage and Dealer Technical Bulletin Work.  Class Counsel is requesting a fee of $1,500,000.00 plus reimbursement of expenses up to $35,000.00.

However, an analysis of the Class Action Settlement Agreement ("Settlement Agreement") reveals that much of Settlement Agreement fails to meet the legal prerequisites of fairness, adequacy and reasonableness to the members of the class, as more specifically set out in the subsequent objections. This Court is urged to reduce

2

the requested fees and to withhold a significant portion of the fees until such time as it receives a final report detailing exactly how much cash and non-cash benefit was actually distributed to the Class.

## OBJECTIONS

The Settlement Agreement is unfair, unreasonable and inadequate for the following reasons:

### 1. **ATTORNEYS FEES ARE EXCESSIVE**

Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $1.5 million in fees. That is entirely too much compensation considering that very little money may ever be paid to the Class Members.

A decision as to Class Counsel's fees should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

### 2. **MBUSA'S UNDERTAKINGS**

MBUSA's Undertakings as prescribed in Paragraph 11 of the Settlement Agreement amount to mostly **non cash benefits,** aside from the **Reimbursement Program.** The non cash benefits such as the **Revised Maintenance Program, Coverage for Future Water Damage** and the **Dealer Technical Bulletin Work** are of questionable value to the Class.

In addition the **Reimbursement Program** has no minimum payout amount except "for one-time towing and car rental costs up to a combined maximum for towing

3

and rental costs of $150.00 per Class Member". Therefore if only 100 claims are made, only $15,000.00 will be paid to Class Members

3.   **DELAY IN PAYMENT OF ATTORNEYS' FEES**

In the instant case, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much cash is paid out to Class Members.  The **Reimbursement Program** is entirely on a **"claims made"** basis, with no guaranteed fund at all; therefore, the Court does not know the exact amount that will be paid to the Class Members.  Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.  It would not be fair to reimburse only $15,000.00 (or even $500,000.00) to the class while paying $1.5 million to counsel.

Based on anecdotal historical evidence, it is doubtful if more than 5% of those eligible will actually file a claim.  This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure it that the attorneys' fees are reasonably related to the actual benefit received by the Class.  This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation.

*"Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by

4

calculating class members' **actual use.** *Id.* Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the amount made available to the class when calculating attorneys' fees, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed lodestar). *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar):

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known... "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons ... does not provide a sufficiently firm foundation to support a fee award..."

*In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at *58 (quoting Manual for Complex Litigation § 14.121). The Court proceeded to wait until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate. Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the

redeemed coupons. The court awarded counsel $2.4 Million in fees. This Court should wait until it receives a report on actual redemption before awarding fees. Although this is not a coupon case, the principle of waiting until the benefit to the Class is ascertained is the same.

In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees and stated that "Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained" *Id.* at *20-28. This court went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney's fees, a figure that was approximately one-third of class counsel's claimed lodestar. See also *Managing Class Action Litigation: A Pocket Guide for Judges.*

There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases. For example, in *In re: General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered $1,000 coupons for the purchase of a new truck. In *Maffei v. Alert Cable TV of North Carolina*, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

Here, although no coupons are being issued. The concept is the same. Because this is, in effect, a claims-made settlement, the Court should await a report detailing exactly the amount of monetary benefit received by the Class. If the POF method is

chosen, it should be based on the actual relief received by the Class, not the potential. Therefore, this Honorable Court is urged to wait until it receives a report on actual payments to Class Members before awarding fees.

4.   **VIOLATION OF FED. R. CIV. P. 23(h)**

In addition, Class Counsel has also violated Fed. R. Civ. P. 23 (h) (2) by not giving the class members adequate notice of their fee petition which is, in fact, a motion. The deadline for filing this Objection is April 12, 2010. However, as of such date no fee petition, or Motion for Award of Counsel Fees, has been filed. This puts Objectors in the awkward and impossible position of objecting to a Motion for Fees prior to the time that the motion is filed. Under Fed. R. Civ. P 23(h)(2), the Motion for Fees should be filed prior to the time of the objection deadline.

Rule 23(h), Fed.R.Civ.P. provides:

(h) Attorney's Fees and Nontaxable Costs.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
(2) A class member, or a party from whom payment is sought, may object to the motion.
(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D) (emphasis added).

7

Since Objectors do not have an opportunity to review the Fee Petition prior to the objection deadline, they reserve the right to file additional and supplemental objections after the Fee Petition is filed.

Rule 23 (h) (2) above expressly provides that the class member "may object to the **motion**." In order to object to the "motion," the class member must first read the motion and thereby understand the asserted factual and legal basis for the legal fees being sought in the motion. Only then can the class member make a well informed, sensible and usable objection to the actual fees being sought. In fact, until a class member actually sees the motion for fees, he does not even know the **exact amount** of the fees being sought. Therefore, it is disingenuous, unfair, unreasonable and unlawful under Rule 23 (h) (2) to require the class members to file their written objections to the attorney fees at a time when the attorney fee motion has not even been filed.

5. **CLEAR SAILING**

"Defendant agreed to pay, and will not oppose an award of attorneys' fees in the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00)" Settlement Agreement, Paragraph 22. However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

8

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses).    The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980).  Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

## 6.    OBJECTIONS BY SETTLEMENT CLASS MEMBERS

Pursuant to Paragraph 16.1 (v) of the Settlement Agreement Objector hereby objects the requirement to provide "a list of any other objections he or she has submitted to any class action settlements in any state or federal court in the United States in the past five (5) years. If he or she has not objected to any other class action settlement in any court in the United States in the past five (5) years, he or she shall affirmatively so state in the written materials provided in connection with the objection of this Settlement.  If the objection is presented through an attorney, the written objection must also include: (i) the identity and the number of Class Members represented by objector's counsel; (ii) the date

9

the objector's counsel assumed representation of the objector, and (iii) a list of the names of all cases, including case numbers and courts, in which the objector's counsel has filed an objection to a class action settlement in the last three years". This requirement is irrelevant and immaterial to the merits of an objection and should not be enforced. Furthermore this provision places a "chilling effect" on Class Members who have legitimate and lawful objections.

7.      Objector respectfully adopts and incorporates into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections after the Fee Request is filed.

8.      The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

9.      These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

        **WHEREFORE**, Objector respectfully requests that this Court:

        A.      Upon proper hearing, sustain these Objections;

        B.      Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

C.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

SAM P. CANNATA (Ohio 0078621)
9555 Vista Way, Suite 200
Tel: (216) 214-0796
Fax: (216) 587-0999
Garfield Heights, Ohio 44125
samcannata@snider-cannata.com

## CERTIFICATE OF SERVICE

I certify that on April 12, 2010, I mailed the foregoing objection by ordinary

U.S. Mail, postage prepaid to the following addresses and also filed the foregoing

Objections:

Clerk of Court
US District Court for the
Central District of California
312 N. Spring Street
Los Angeles, California 90012

Robert L. Starr
The Law Offices of Robert L. Starr
23277 Ventura Boulevard
Woodland Hills, CA 91364-1002

Stephan M. Harris
Knapp, Petersen & Clarke
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203-1922

Terri S. Reiskin, Esq.
Wallace King Domike & Reiskin, PLLC
2900 K Street, NW
Harbourside, Suite 500
Washington D.C. 20007-5127

*Marsikyan v. Mercedes-Benz USA, LLC* Claims Administrator
P.O. Box 6159
Novato, CA 94948-6159


SAM P. CANNATA (Ohio 0078621)
9555 Vista Way, Suite 200
Tel: (216) 214-0796
Fax: (216) 587-0999
Garfield Heights, Ohio 44125
samcannata@snider-cannata.com

P.O. Box 6159
Novato, CA 94948-6159
1-877-695-7485

# CLAIM FORM AND RELEASE

## PART I: CLAIMANT IDENTIFICATION

Claim #: MEM-1018972-0-01   009378

002A009378*527*13814-01
Sam P Cannata
14944 Hillbrook Dr
Chagrin Falls, OH 44022-6804

Name/Address Changes (if any):

First Name _____   Last Name _____

Address _____

City _____ , State _____ Zip _____

Email address: Sa mcannata @cannataphillipslaw.com

( 216 ) 587-0900
Area Code   Daytime Telephone Number

(   ) _____
Area Code   Evening Telephone Number

( 216 ) 214-0796
Area Code   Cell Phone Number

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*Marsikyan v. Mercedes-Benz USA, LLC*, Case No. CV08-04876 AHM

Must be Postmarked By No Later Than September 14, 2010.

Please send this completed Claim Form and Release, together with any documents or other information to support your claim, to the Claims Administrator: *Marsikyan v. Mercedes-Benz USA, LLC* Claims Administrator, P.O. Box 6159, Novato, CA 94948-6159.

Please type or clearly print the following information:

## PART II: VEHICLE IDENTIFICATION

| 2002 | Mercedes-Benz S-Class | WDBNG75J62A292874 |
|------|-----------------------|-------------------|
| Model Year of Your Vehicle | Make and Model of Your Vehicle | Vehicle Identification Number (VIN) |

## PART III: ELIGIBILITY

To be eligible to file a claim you must be a current or former owner or lessee in the United States (including Puerto Rico) of a model year 2001 through 2006 Mercedes-Benz S-Class (W220) or CL-Class (W215) vehicle who incurred out-of-pocket, unreimbursed expenses for repair of water damage due to a clogged reed valve in the air/water duct during the period you leased or owned that vehicle.

## PART IV: CLAIM FOR REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES DUE TO WATER DAMAGE CAUSED BY A CLOGGED REED VALVE

**You must answer all of the following questions regarding the repairs made to your vehicle:**

1. Date on which damage occurred or best estimate (month, day, year): 11/25/09

2. Date(s) on which repairs were made or best estimate (month, day, year): 11/27/09

3. Name and Address of Location Where Repairs Were Performed: Mercedes-Benz of Bedford 18122 Rockside Rd., Bedford, Ohio 44146

4. How much did you pay out-of-pocket (including your deductible and other costs) for water damage repairs? (enter "0" if you did not incur out-of-pocket costs in any category)

   a. Repair costs: $ 1339.30
   b. Towing: $ 130.00
   c. Car Rental: $ 1,469.30

**Please sign the Claim Form on Page 2**



**Mercedes-Benz Of Bedford**
18122 Rockside Road
Bedford, Ohio 44146
Phone (440) 359-1444
www.mercedesbenzbedford.com

**Mobil 1**

SERVICE HOURS
MON. THRU FRI.
7:30 AM to 5:30 PM

| | |
|---|---|
| I ACKNOWLEDGE AND APPROVE EXTRA WARRANTY REPAIRS PERFORMED AS NEEDED. | CUST. INITIAL |

SIGNED: X

THANK YOU FOR THIS OPPORTUNITY TO SERVICE YOU. IT IS OUR AIM TO PERFORM ALL THE REPAIRS REQUESTED ON THIS REPAIR ORDER TO YOUR COMPLETE SATISFACTION. IF OUR SERVICE WAS SATISFACTORY TELL YOUR FRIENDS. IF NOT, PLEASE TELL US IMMEDIATELY.

CUSTOMER NO. **16236**

ADVISOR **AARON NEAL**

LICENSE NO. **862** MILEAGE **4056**

INVOICE DATE **11/27/09**

INVOICE NO. **MBCS98855**

SAM P CANNATA
14944 HILLBROOK DRIVE
HUNTING VALLEY, OH 44022

YEAR / MAKE / MODEL **02 MERCEDES-BENZ/S CLASS/4 DR**

COLOR **BLACK/**

DELIVERY MILES

DEL. PHONE

V.I.N. **WDBNG75J62A292874**

DELIVERY DATE **04/30/02**

SERVICE MGR DATE

PRODUCTION DATE **23,989**

**03/26/02**

SCANNATA@SNIDER-CANNATA.COM

R.O. DATE **11/19/09**

REPRINT# **1**

RESIDENCE PHONE **440-893-9953**

BUSINESS PHONE **216-587-0900**

COMMENTS

C# 2201751A292874  F# 1139603038342Q

MO: **77545**

COURTESY ALT. TRANS PROVIDED ON 24 HR BASIS. MUST BE
RETURNED UPON COMPLETION. A $75.00 RENTAL FEE WILL BE
CHARGED IF NOT RETURNED PROMPTLY.
COMPLETE

JOB# 3 TOTALS----------------------------------------------------

JOB# 3 JOURNAL PREFIX MBCS  JOB# 3 TOTAL        0.00

RECOMMENDATIONS-------------------------------------------------
FOUND AIRMATIC LEAKING DOWN OVERNIGHT. DECLINED

TOTALS----------------------------------------------------------

```
**************************************************
*                                                *
*  [ ] CASH    [ ] CHECK   CK NO. [       ]   *
*                                                *
*  [ ] VISA    [ ] MASTERCARD    [ ] DISCOVER  *
*                                                *
*  [ ] AMER XPRESS    [ ] OTHER    [ ] CHARGE  *
*                                                *
**************************************************
```

| | |
|---|---|
| TOTAL LABOR.... | 550.00 |
| TOTAL PARTS.... | 811.40 |
| TOTAL SUBLET... | 110.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | -136.14 |
| TOTAL TAX...... | 114.04 |
| **TOTAL INVOICE $** | **1449.30** |

CLIENT SIGNATURE

Reynolds and Reynolds ERAL2SNVE CC29074 Q (05/05)

PAGE 2 OF 2                     CUSTOMER COPY                     [ END OF INVOICE ] 11:21am



# Mercedes-Benz Of Bedford

18122 Rockside Road
Bedford, Ohio 44146
Phone (440) 359-1444
www.mercedesbenzbedford.com

**Nothing Outperforms**
**Mobil 1**

| SERVICE HOURS |
|---|
| MON. THRU FRI. |
| 7:30 AM to 5:30 PM |

| I ACKNOWLEDGE AND APPROVE EXTRA WARRANTY REPAIRS PERFORMED AS NEEDED. | CUST. INITIAL | THANK YOU FOR THIS OPPORTUNITY TO SERVICE YOU. IT IS OUR AIM TO PERFORM ALL THE REPAIRS REQUESTED ON THIS REPAIR ORDER TO YOUR COMPLETE SATISFACTION. IF OUR SERVICE WAS SATISFACTORY TELL YOUR FRIENDS. IF NOT, PLEASE TELL US. PH# |

SIGNED: X

| CUSTOMER NO. | ADVISOR | TAG NO. | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 16236 | AARON NEAL | 865 | 11/27/09 | MBCS98855 |

LICENSE NO.  MILEAGE 4056  COLOR BLACK

| | YEAR / MAKE / MODEL | | DELIVERY MILES |
|---|---|---|---|
| SAM P CANNATA | 02/MERCEDES-BENZ/S CLASS/4 DR | 77,540 | 04/30/02 |
| 14944 HILLBROOK DRIVE | | | PRODUCTION DATE 23,889 |
| HUNTING VALLEY, OH 44022 | WDBNG75J62A 29287 4 | | 03/26/02 |

R.O. DATE 11/19/09  REPRINT# 1

SCANNATA@SNIDER-CANNATA.COM

RESIDENCE PHONE 440-893-9953  BUSINESS PHONE 216-587-0900

C# 2201751A292874  S# 1139603038342 0  MO: 77545

COMMENTS

---

JOB# 1 CHARGES · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

LABOR · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
J# 1 27MBZ    AUTO TRANSMISSION          TECH(S):916        550.00
    CLIENT STATES VEH WILL NOT COME OUT OF PARK
    DUE TO INTERNAL FAILURE OF SHIFTER,AND DAMAGED SHIFTER
    LINKAGE.
    DIAG. AND REPLACED SHIFTER,SHIFT LINKAGE, AND RETAINER.
    ROAD TEST AFTER ALL OK

PARTS · · · · QTY · · · FP-NUMBER · · · · · · · · · · DESCRIPTION · · · · · · · · LIST PRICE-UNIT PRICE ·
        1    220-267-33-24    FLOOR SHIFT       608.40    608.40    608.40
        1    220-260-05-33    SHIFTING ROD      198.00    198.00    198.00
        1    000-994-43-60    LOCK                5.00      5.00      5.00
                                          TOTAL - PARTS              811.40

MISC · · · · · CODE · · · · · · · · DESCRIPTION · · · · · · · · · · · · · · · · · · · · CONTROL NO · · · · · · · · ·
        QP    COUPON PARTS                                           -81.14
        QS    COUPON SERVICE                                         -55.00
                                          TOTAL - MISC              -136.14

JOB# 1 TOTALS · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
                                          LABOR                      550.00
                                          PARTS                      811.40
                                          MISC                      -136.14
          JOB# 1 JOURNAL PREFIX MBCS   JOB# 1 TOTAL               1225.26

JOB# 2 CHARGES · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

LABOR · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
J# 2 70MBZ05            TOWING             TECH(S):916         0.00
        Q
        Q
        Q

SUBLET · · · · · PO# · · · · · · · · VEND INV# · INV.DATE · DESCRIPTION · · · · · · · · · · · · · · · · · · · · · · · · ·
        8273              11/23/09 TOW                         110.00
                                          TOTAL - SUBLET        110.00

JOB# 2 TOTALS · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
                                          SUBLET                110.00
          JOB# 2 JOURNAL PREFIX MBCS   JOB# 2 TOTAL            110.00

JOB# 3 CHARGES · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

LABOR · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
J# 3 05MBZ01        MERCEDES BENZ LOANER       TECH(S):916         0.00
    OPTION #1- NO HASSLE $19.95 CONVENIENCE FEE ALLOWS YOU TO
    DRIVE VEHICLE AND SIMPLY RETURN IT WITHOUT REFUELING.
    Initial here

    OPTION #2-REPLACE FUEL USED-IF YOU CHOOSE OPTION #2 AND DO
    NOT REPLACE FUEL USED, A CHARGE OF $5.00 PER GALLON WILL BE

Reynolds and Reynolds ERA2DRIVE  CCS06974 O (05/05)

```
LN# J# CODE DESCRIPTION.... T/N L/P/T  %/AMNT CWI PRICE.... CONTROL #........
  1  1 QP   COUPON PARTS    N   P      10.00% C    -81.14
  2  1 QS   COUPON SERVICE  N   L      10.00% C    -55.00
```

| BILL TYPE | PARTS | LABOR | PARTS+LABOR | $ITEM | TOTAL |
|-----------|-------|-------|-------------|-------|-------|
| CUSTOMER | -81.14 | -55.00 | 0.00 | 0.00 | -136.14 |
| WARRANTY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INTERNAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTALS | -81.14 | -55.00 | 0.00 | 0.00 | -136.14 |

(E=ENTER)(A=ADD)(C=CHANGE)(D=DELETE)(P=PAGE)

**Mercedes-Benz of Bedford**

18122 Rockside Road
Bedford, Ohio 44146
(440) 439-0100

**LOANER AGREEMENT**

NO. **8087**

| CUSTOMER NAME | SERVICE RO NO | LICENSE NO |
|---|---|---|
| SAM CANNATA | 48855 | DNL 2584 |

| HOME ADDRESS | YEAR-MODEL | COLOR |
|---|---|---|
| 4444 Hillbrook Dr. | AF 373664 | |
| | 10-C300-W/4 | |

| CITY | STATE | ZIP CODE | ODOMETER IN | DATE AND TIME IN | |
|---|---|---|---|---|---|
| Hunting valley OH | | 44022 | / | / / | AM PM |

| DRIVER'S LICENSE NO | STATE | EXP DATE | ODOMETER OUT | DATE AND TIME OUT | |
|---|---|---|---|---|---|
| RL047543 | OH | 44022 | 5446 | 5:50 11/19/09 | AM PM |

If the loaner vehicle is not returned when requested to do so by a representative from Mercedes-Benz of Bedford, I agree to pay $ **75.00** per day for every day thereafter until I present the vehicle to an authorized representative of Mercedes-Benz service department.

The rental cost per day will be added to the client's service invoice or at the discretion of Mercedes-Benz of Bedford may be billed separately.

**CUSTOMER'S INITIALS X** _____

| | | GAS | |
|---|---|---|---|
| | | OUT | IN |

It is the customer's responsibility to recheck the condition of the loaner vehicle for any additional damage not noted on the loaner agreement. If the customer does find damage, it MUST be noted on the agreement before the customer drives off the lot thus taking possession of the vehicle. Any damage that is not documented on agreement prior to possession will be the be the responsibility of the customer.

MERCEDES-BENZ OF BEDFORD is providing this car at no cost to you. However, MERCEDES-BENZ OF BEDFORD asks that you replace all fuel used.

By initialing, customer agrees to replace all fuel used or pay $5.00/gallon for fuel used. The fuel charge will be added to the customer's service invoice or credit card.

**X** _____
INITIALS          Fuel Charge

Fuel Used _____ Gal.     $ _____

**VISUAL DAMAGE**          **CUSTOMER'S INITIALS X** _____

| | E | E |
|---|---|---|
| | 1/4 | 1/4 |
| | 1/2 | 1/2 |
| | 3/4 | 3/4 |
| | F | F |

### INSURANCE VERIFICATION - IMPORTANT - READ BEFORE SIGNING

I hereby acknowledge that MERCEDES-BENZ OF BEDFORD is not providing any type of insurance protection or collecting any charges thereof. I understand and agree that I am responsible for all physical damage, bodily injury, property damage and fire and theft insurance coverage, and therefore I agree to indemnify MERCEDES-BENZ OF BEDFORD against and hold it harmless from all loss, cost and expense arising from, out of, or in any way related to my use of the vehicle. With respect to damage to the vehicle, all repairs or replacements shall be made at standard factory authorized prices. I represent that I have insurance coverage set forth in the box below.

I understand that is it my responsibility to either pay for repairs or get my insurance company to pay for repairs. I agree that I must pay any costs to repair the damaged vehicle that is not covered by my insurance company including my deductible and loss of use cost to the dealership while any repairs are made.

I understand that no other persons are authorized to drive this vehicle unless they have signed a separate loaner agreement.

In the case of accident or theft, I agree to make and sign as soon as possible, a detailed report to both local parties and MERCEDES-BENZ OF BEDFORD, the cause, names of persons injured and the nature and extend of any physical damage incurred

I HAVE READ AND UNDERSTAND
THE TERMS OF THIS AGREEMENT

CUSTOMER
SIGN _____

| Insurance Company: _____ |
|---|
| Agent's Phone: _____ |
| Name of person verifying coverage at Agency: _____ |
| Insurance Agent: _____ |
| Policy Number: # 322048-4 |
| Comprehensive? _____ YES _____ NO $ Coverage? _____ |
| Collisions _____ YES _____ NO $ Coverage? _____ |
| Does coverage extend to dealer's loaner/rental? _____ |
| DEALER VERIFICATION BY _____ DATE / / |
| PREPARED BY _____ |

**LOANER CARS ARE NOT PERMITTED TO LEAVE THE CLEVELAND-AKRON METRO AREA UNLESS PRIOR PERMISSION IS GIVEN BY DEALERSHIP. MAXIMUM OF 50 MILES PER DAY. PLEASE NO SMOKING IN VEHICLE.**

Customer has read both sides of this agreement and agree to the terms.

**CUSTOMER INITIAL:** _____

CHECKED IN BY _____

The Reynolds and Reynolds Company  FL518944 Q (12/08)

**NUNC PRO TUNC**

DEC - 3 2010

December 1, 2010

FILED

DEC - 8 2010

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Leslie Hurst
Blood Hurst & O'Reardon, LLP
600 B Street, Suite 1550
San Diego, CA 92101`

Sabrina Strong
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Clerk of Court
U.S. District Court
Southern District of California
880 Front Street, Suite 4290
San Diego, CA 92101-8900

Re: <u>Shawndee Hartless, on Behalf of Herself and All Others Similarly Situated and the
General Public vs. Clorox Company, No. 06-CV-02705-CAB in the United States
District Court for the Southern District of California</u>

Dear Sirs and Madams:

Class member Sam P. Cannata ("Objector") hereby objects to the proposed
settlement of the above-entitled class action for the following reasons:

1.      This settlement consists of up to $8 million in cash plus injunctive relief
consisting primarily of Clorox ceasing to use the language "Does not harm plumbing" or
substantially similar language that reasonably conveys the same meaning on future
Clorox Automatic Toilet Bowl Cleaner ("CATBC"). The terms are as follows:

   a.  Clorox will pay $7 million in cash into a Claim Fund in compensation for
       valid claims for property damage resulting from the purchase and/or use of
       CATBC, and
   b.  Up to an additional $1 million into the Claim Fund if the amounts to be
       paid from the Claim Fund exceed $7 million as needed to pay Class
       Members' Approved Claims, and
   c.  $750,000.00 in costs reasonably and actually incurred by the Claims
       Administrator in connection with providing notice to and administering
       claims submitted by the Class in the settlement.

In the Notice to Class Members, class counsel advises that it intends to seek legal
fees and expenses in addition to and apart from the settlement fund in the following
amounts:

   a.  Clorox agrees to pay attorney fees and expenses awarded by the Court up
       to $2.25 million, and

1

    b. Clorox will pay costs incurred by the Claims Administrator in excess of $750,000.00.

    2. <u>Attorneys' fees are excessive</u>. Class Counsel justifies their Attorneys' fees using the percentage and lodestar methods. <u>Plaintiff's Application for Attorneys' Fees and Costs and Plaintiff Service Awards ¶ ¶ VI</u>. Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $2.25 million in fees and expenses. Under the percentage method that is entirely too much compensation considering the relationship of the requested attorneys' fee to the amount of benefit being paid to the Class. A simple review of the numbers involved in this case clearly indicates that the requested fee is excessive. Even if 100% of the Claim Fund is claimed by the Class (a highly unlikely eventuality), Class Counsel is asking for a fee representing 31% of the value of the $8 million Claim Fund or 36% of the total $7 million Claim Fund, after removing the costs incurred by the Claims Administrator incurred ($750,000.00) from the calculation. If the claims rate in this case holds true to the historical average noted by numerous Federal courts, the amount paid to members of the class will be much less than either $8 million or $7 million in cash, and yield response rates of 10% or less. There is nothing in the facts of this case that would indicate that the claims rate is going to be significantly higher than the historical average. This means that the amount of cash that will be claimed and paid to class members is certainly unknown at this time, and may well be much less than $7 million; indeed, the amount claimed may be **less than** the $2.25 million in attorneys' fees to be requested. Such a result would be neither fair nor reasonable and the total fee awarded should not exceed 25% of the cash portion of the settlement.

    Furthermore, in addition, the $8 million in potential cash is clearly not a "Fund" for the following reasons: (1) the last $1 million of said "fund" will never be paid unless claims exceed $7 million (which in all likelihood they will not) and (2) as to the $7 million "fund", no monies will ever be paid except those that are actually claimed through written claim forms received from class members. As to this "fund", any unclaimed amount of the **cash** will revert to a charity agreed upon by the Parties. The unclaimed amount of cash should be paid to the class members.

    If it were truly a cash fund, the entire $7 or $8 million would be distributed among the class members who filed claims.

    Therefore, a significant portion, if not all of Class Counsel's fees, should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

    Likewise, the lodestar method suggests that Class Counsel's valuation of attorneys' fees is improper. Class Counsel in this case purports to have expended 5,995.4 hours in this case and seeks $2.25 million in attorneys' fees. This amounts to a lodestar of $375.29 an hourly fee which has little evidentiary support.

    Hence, the percentage and lodestar methods do not support Class Counsel's request for attorneys' fees and the Court should reject the settlement.

3.   <u>The payment of attorneys' fees should be delayed</u>. Class Counsel purports to request fees that are reasonable in light of the value of the settlement to Class Members. However, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much of the Fund is paid out to Class Members. Although $8.0 million in cash are to be distributed, it is unlikely that anywhere near that amount will actually go to Class Members. In fact, it is likely that a significant portion of the Fund will actually go to a *cy pres* distribution. The Settlement Agreement provides "if the qualifying claims do not reach $7.0 million then the difference between $7.0 million and the amount distributed to Class Members shall be treated as a *cy pres* Fund. <u>Stipulation of Settlement ¶ ¶III.B.2(d)</u>. Therefore, at this point in time the Court does not know the exact amount that will be paid to the Class Members. Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.

This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure it that the attorneys' fees are reasonably related to the actual benefit received by the Class. This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation. *"Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed*, Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by calculating class members' **actual use.** *Id*. Many courts are following the Federal Judicial Center guidelines to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the maximum potential amount of claims, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members.

In the instant case, cash is to be distributed, and this is, in effect, a claims-made settlement. Therefore, the Court should await a report detailing exactly the amount of monetary benefit received by the Class.

4.   <u>Cy Pres Contributions</u>. The way that the Settlement Agreement is structured, it is likely that the majority of the benefit will go to as yet unspecified IRC Section 501(c)(3) charitable organization which will be mutually agreed between Clorox and Class Counsel. What charitable organizations will be chosen, and how will that be determined? The Stipulation of Settlement is silent on this issue. While the concept of making the *cy pres* donation is laudable, the actual mechanism described in the Settlement Agreement leaves many open questions.

In addition, unclaimed funds should be paid to class members who made claims, not third parties. The American Law Institute ("ALI") recommends that unclaimed funds be paid to claimants, not *cy pres:*

§ 3.07 Cy Pres Settlements

3

(b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

Principles of the Law of Aggregate Litigation § 3.07 (b), p. 220 (Proposed Final Draft 2009). Of course, in this case the extra money could easily be given to claimants for no additional costs by simply making the initial payments to claimants large enough so as to exhaust the fund. The ALI further reasons:

[T]his Section generally favors cy pres awards only when direct distribution to class members is not feasible – either because class members cannot be reasonable identified or because distribution would involve such small amounts that, because of the administrative costs involve; such distributions would not be economically viable.

*Id.* cmt. (b), p. 221. Here it would clearly be economically feasible to make the distribution to claimants and they are easily identified – they made a claim. Even if giving this money to claimants would over compensate them (which it would not), the ALI draft finds that that would be preferable to giving the money to third parties:

[A]ssuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions. This Section rejects the position urged by a few commentators that a cy pres remedy is preferable to further distributions to class members. Those commentators reason that further direct distributions would constitute a "windfall" to those class members. ... [T]his Section takes the view that in most circumstances distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* p. 222.

5. "Clear Sailing" Provision. Clorox agreed "not to oppose an application for an award of attorneys' fees and expenses not to exceed a total of $2,250,000" or approximately one-third of the Claims Fund. Stipulation of Settlement, ¶ ¶VIII.A.2. However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti* v. *DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); see *also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988).

Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77* Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "a district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

6.     Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections.

7.     The Class Members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

9.     These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector. All of the legally required prerequisites material to these objections have been met.

10.     Attached hereto is the Claim Form of Sam P. Cannata.


Respectfully submitted,


Sam P. Cannata, Pro Se
14944 Hillbrook Drive
Cleveland, Ohio 44022
(216) 214-0796

5

CLX



**MUST BE FAXED, SUBMITTED ONLINE OR POSTMARKED ON OR BEFORE JANUARY 28, 2011**

CATBC Settlement
c/o The Garden City Group, Inc.
P.O. Box 9487
Dublin, OH 43017-4587


Claim No: 7241301

Control No: 4580505188

SAM P. CANNATA
14944 HILLBROOK DRIVE
CLEVELAND, OH 44022

**REQUIRED ADDRESS INFORMATION OR CORRECTIONS**
If the pre-printed address to the left is incorrect or out of date, **OR** if there is no pre-printed data to the left, **YOU MUST** provide your current name and address here:

Name:

Address:

City/State/Zip:

## Clorox Automatic Toilet Bowl Cleaner with Bleach
## CLAIM FORM 1

**You can also submit online at www.catbcsettlement.com.**

Use this Claim Form 1 if you claim refunds of purchase price and/or property damage totaling $30 or less. If you want to claim refunds of purchase price and/or property damage over $30, you must use Claim Form 2 available at www.catbcsettlement.com or 1-888-262-1556. This Claim Form is only for damage allegedly caused by Clorox Automatic Toilet Bowl Cleaner with Bleach. If you allege damage caused by any other Clorox product, or any other toilet bowl cleaner manufactured by another company (e.g., 2000 Flushes, Vanish Drop-ins Bleach Tablets, or Ty-D-Bol Cleaner), do not fill out this form. You may submit only one Claim Form, and two people cannot submit Claim Forms for the same alleged damage. **All Claim Forms must be postmarked, faxed, or submitted online on or before January 28, 2011.** If mailing or faxing, please return this form to:

CATBC Settlement
c/o The Garden City Group, Inc.
P.O. Box 9487
Dublin, OH 43017-4587
FAX 1-614-553-1552

### CLASS MEMBER INFORMATION

NAME: Sam P. Cannata          TELEPHONE OR EMAIL: (216) 214-0796

ADDRESS: 14944 Hillbrook Dr.

CITY: Cleveland          STATE: OH          ZIP CODE: 440 22

AMOUNT CLAIMED FOR ALLEGED PROPERTY DAMAGE (INCLUDING THE PURCHASE PRICE OF CATBC) RESULTING FROM THE PURCHASE AND/OR USE OF CATBC IN THE UNITED STATES INCURRED AT ANY TIME BETWEEN DECEMBER 13, 2002 AND SEPTEMBER 15, 2010: $ 25.00

### AFFIRMATION

I UNDERSTAND THAT THE DECISION OF THE CLAIM ADMINISTRATOR IS FINAL AND BINDING ON ME AND ON CLOROX. I SWEAR UNDER PENALTY OF PERJURY THAT THE INFORMATION ON THIS CLAIM FORM IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

SIGNATURE: _Sam P. Cannata_          DATE: 12/1/10

**CLAIM FORMS MUST BE RETURNED BY JANUARY 28, 2011.**
**QUESTIONS? VISIT WWW.CATBCSETTLEMENT.COM OR CALL 1-888-262-1556.**

Sam P. Connach
14944 Hillbrook Dr.
Cleveland, Ohio 44022

CATBC Settlement
c/o The Garden City Group, Inc
P. O. Box 9487
Dublin, OH 43017-4587



# 0000026656

Case 2:10-cv-05484-GW -JCG Document 79 Filed 06/01/11 Page 11 of 33 Page ID #:718

Sam P. Cannata, Pro Se Objector
9555 Vista Way, Suite 200
Cleveland, Ohio 44125
(216) 438-5091 – phone
(216) 587-0900 – fax
*samcannata@cannataphillipslaw.com*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re Quantcast Advertising Cookie Litigation, | Case No.: 2:10-cv-05484-GW-JCG |
| In Re Clearspring Flash Cookie Litigation | Case No.: 2:10-cv-05948-GW-JCG |
| Davis, et al. v. VideoEgg, Inc. | Case No.: 2:10-cv-07112-GW-JCG |
| | **OBJECTION TO CLASS ACTION SETTLEMENT** |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD

Please take notice that class member Sam P. Cannata ("Cannata") intends not to appear by and through counsel at the fairness hearing scheduled for June 13, 2011 at 9:30 a.m. as to Quantcast and Clearspring Settlements; and for July 18, 2011 at 9:30 a.m. as to VideoEgg Settlement and will rely on his written objections.

## MEMORANDUM OF POINTS AND AUTHORITIES

Cannata hereby objects to the proposed class action settlement (the "Settlement") in the above-captioned matter between the plaintiffs (the "Plaintiffs") and Quantcast, Clearspring and VideoEgg ("Defendants") (the "Settlement Agreement") on behalf of a class (the "Class") that includes users of "any web browsing program on any device to access any website employing any of Defendant's technologies involving the use of HTTP (Browser) cookies or Adobe Flash LSOs" in the United States or its territories at any time between June 1, 2008 and March 3, 2011 (the "Class Members").

### I.   STATEMENT OF ISSUES TO BE DECIDED

Cannata identifies the following issues to be decided:

- Whether the Court should review the Settlement Agreement with heightened scrutiny?

- Whether the Settlement Agreement's failure to name the recipients of the *cy pres* fund renders it unfair, inadequate, and unreasonable?

- Whether the Settlement Agreement's failure to obligate Defendants to any permanent, specific improvements or public education as to privacy issues and failure to afford Class Members the right for Plaintiffs to approve any such improvements or public education, results in no benefit to the Class Members and renders the Settlement Agreement unfair, inadequate, and unreasonable?

- Whether the Settlement Agreement's requirement that Class Members release and dismiss their claims upon entry of the Settlement Agreement's Approval Order, prior to the Defendants being obligated to perform any remedy (which occurs only after the Approval Order becomes final and non-appealable), renders the Settlement Agreement unfair, inadequate, and unreasonable?

- Whether the Class definition, which includes a Class period from June 1, 2008 through March 3, 2010, renders the Settlement Agreement unfair, inadequate and unreasonable because the definition is overly broad?

- Whether the Settlement is fair, adequate, and reasonable where the Class members release their claims in exchange for no benefit to the Class?

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This settlement affords class members no compensation.  Rather, under the terms of the Settlement Agreements, Defendants will establish an $3.225 million settlement fund (the "Fund") which, after deducting attorneys' fees and class representative fees, is to be used to fund as-yet unnamed organizations to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety and security of electronic information from and about consumers (the "Fund Recipients").  In exchange for nothing, the Settlement Agreement requires Class Members to release, and Class Counsel to dismiss, any and all claims arising out of the privacy breach the Defendants committed via their actions.

The Negotiating Parties executed the Settlement Agreements and Class Counsel filed the Preliminary Approval Motion together with the executed Settlement Agreements.  At the time the Settlement Agreements were filed, no dispositive motions had been filed, nor had Class Counsel moved for class certification.  The Negotiating Parties had not engaged in any formal discovery, although some undisclosed "confirmatory discovery" is alleged to have been taken while the settlement terms had already been reached.  At no time before the settlement was reached, did the Negotiating Parties exchange written discovery, conduct depositions, or brief the legal issues that are central to the claims in this case.

Cannata submits this objection for the Court's consideration.  Cannata objects to several aspects of the settlement in this case: (i) the failure of the Settlement Agreement to name the Fund Recipients, (ii) the failure to require specific Education privacy improvements from Defendants which are overseen by an independent third party and approved by Plaintiffs in exchange for the Class Members' releases, (iii) the requirement that Class Members release their claims upon entry of the Settlement Agreement Approval Order before Defendants are required

Case 2:10-cv-05484-GW -JCG Document 79 Filed 06/01/11 Page 14 of 33 Page ID #:749

to provide any benefit (which only occurs upon such Approval Order becoming final and non-appealable), (iv) the over-inclusive Class definition which includes a dubious Class period, and (v) a Settlement Agreement that provides no benefit to the Class in exchange for the release of their claims. For the reasons described herein, Cannata urges the Court to withhold final approval of the Settlement Agreement and to direct the Negotiating Parties to modify the Settlement Agreement as proposed below.

### III.  STANDARD OF REVIEW FOR CLASS ACTION SETTLEMENTS

In deciding whether to approve a class action settlement, a court must determine whether the settlement is "fundamentally fair, adequate, and reasonable."[1] A district court must take this determination to ensure proffered settlements are "not the product of fraud or overreaching by, or collusion between, the negotiating parties."[2]

District courts consider the following factors, among others, when presented with a class action settlement.

> The strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the Settlement Agreement.[3]

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."[4] Applying the factors outlined above, it is clear that the settlement in this case is neither "fundamentally fair," "adequate," nor "reasonable."

---

[1] *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F. 2d 615, 628 (9th Cir. 1982). *See also* Fed. R. Civ. P. 23(e)(2).

[2] *Id.* at 625.

[3] *Id.* at 628.

[4] *Id.*

4

## IV.   THE COURT SHOULD REVIEW THE SETTLEMENT AGREEMENT WITH HEIGHTENED SCRUTINY

While district court review of class action settlements is normally deferential, certain circumstances demand heightened scrutiny.[5]  Because each circumstance presents itself in this case, the Court should review the Settlement Agreement with heightened scrutiny.

### A.   Heightened Scrutiny Applies to this Pre-Certification Settlement

In this Circuit, "[s]ettlements that take place prior to formal class certification require a higher standard of fairness."[6]  Heightened review of such settlements is necessary because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."[7]  Further, the risk of "collusion, individual settlements, buy-offs . . . , and other abuses" is greater in the context of pre-certification settlements because a court has "less information about the class" than it would if the parties engaged in discovery relating to certification issues and the merits of the case.[8]  The incentives for the negotiators to pursue their own self-interest and that of certain class members are implicit in the circumstances and can influence the result of the negotiations without any explicit expression or secret cabals."[9]

Here, the Negotiating Parties reached the Settlement Agreement within a very short period of time after the alleged unlawful conduct occurred and the Original Complaint was filed. The parties engaged in no discovery before reaching the Settlement Agreement, depriving the Court and the Plaintiffs to determine the full extent of Defendants' alleged misconduct and an opportunity to adjust the class as the litigation unfolds.  This is particularly problematic in this case, as the Complaint alleges such wide-ranging and legally-distinct violations of Federal, and

---

[5]  *See, e.g. id.* at 625.*Id.*
[6]  *Molski v. Gleich,* 318 F. 3d 937, 953 (9ᵗʰ Cir. 2003).
[7]  *Amchem Prod. V. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). *See also Narouz v. Charter Comms., LLC,* 591 F.3d 1261, 1266 (9ᵀᴴ Cir. 2010).
[8]  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F 3d 768, 787 (3d Cir. 1995).
[9]  *Staton V. Boeing Co.,*  327 F. 3d 938, 960 (9ᵗʰ Cir. 2003).

1 California law claims, which in any event, discovery is necessary to fully understand the nature

2 of the unlawful conduct and potential remedies available to the Class. Because they reached the

3 Settlement Agreement so early in this case, the Negotiating Parties have abdicated their

4 responsibility to develop any of the factual or legal issues relevant to these claims. And the risks

5 of collusion, individual settlement, buy-offs, and other abuses are inherent in this pre-

6 certification Settlement Agreement. Accordingly, the court should review this Settlement

7 Agreement with heightened scrutiny.

**B.     Heightened Scrutiny Applies to this Non-Monetary Settlement Agreement**

District courts should apply heightened scrutiny in deciding whether to approve

settlements where class members receive either no benefit or only non-monetary relief, in order

to ensure class members receive an actual benefit and not an illusory one. It is because of the

danger that class members will release valuable claims in exchange for virtually valueless non-

monetary relief that *cy pres* settlements are disfavored. While *cy pres* settlements are permitted

in some limited circumstances, the Ninth Circuit has remarked that "it seems somewhat

distasteful to allow a corporation to fulfill its legal and equitable obligations through tax-

deductible donations to third parties."[10]

*Cy pres* settlements present special problems because they not only alter the class

members' substantive rights, they do so while circumventing individualized proof

requirements.[11] Specifically, *cy pres* settlements may "stray far from the next best use for

undistributed funds and turn courts into a grant-giving institution." As a result, such settlements

often benefit the defendant or class counsel more than the class members, creating the

appearance of impropriety.[12]

The Settlement Agreement at issue in this case poses the risk of turning this Court into a

"grant-giving institution." The Class Administrator can only disburse the fund by the mutual

agreement of the Negotiating Parties. In the event of any disagreement, the parties must seek the

---

[10] *Molski*, 318 F.3d at 954.

[11] *Id.*

[12] *S.E.C. V. Bear, Stearns & Co. Inc.*, 626 F. Supp.2d 402 (S.D.N.Y.2009).

6

Court's intervention to resolve the dispute, forcing this Court into the role of non-profit internet privacy advocate. Because the Settlement Agreement does not provide any benefit to class Members, including monetary benefit, there is also a substantial likelihood that the Settlement Agreement benefits Defendants and Class Counsel more than the Class Members. In exchange for the Class Members releasing their valuable legal claims, Defendants receive the tax benefits of a charitable donation and the public relations benefit of appearing responsive to its users' complaints. Class Members receive nothing.

The "clear sailing" feature of the Settlement Agreement allows Class Counsel to collect a fee equal to 25% of the Fund without objection from Defendants.[13] Again, Class Members receive nothing while Class Counsel takes $806,250.00 for their little work between the complaint filings and the settlement of the Class claims. These figures illustrate Class Counsel's windfall as compared to Class Members' non-recovery.

Finally, the Settlement Agreement creates the appearance of impropriety: Defendants donate a tax-deductible pittance to as-yet-unnamed organizations to discharge the claims of *substantially all their users* while Class counsel takes 25% of the Fund for facilitating the release of all claims. The incongruity is stark. Because the Negotiating Parties reached the Settlement Agreement before certification, and because it provides no benefit to the class members, including monetary relief, the Court should review the Settlement Agreement with heightened scrutiny.

## V. ARGUMENTS IN OPPOSITION TO THE SETTLEMENT AGREEMENT AND SUGGESTED IMPROVEMENTS

When the Court looks beyond the Negotiating Parties' characterizations of the Settlement Agreement to review its actual terms, the court will find the Settlement Agreement's deficiencies render it unfair, inadequate, and unreasonable. Specifically, the Settlement Agreement fails to fully designate the fund Recipients who will receive the bulk of the $3.225 million Fund, affords Defendants unfettered discretion in establishing measures to correct its own improper conduct

---

[13] SA.

and curtail further privacy breaches, requires Class Members to release their claims before Defendants are obligated to perform any benefits or remedial action, has an overbroad Class definition, and finally, provides no direct benefits for the Class Members. For the reasons detailed below, the Court should withhold approval of the Settlement Agreement and require the Negotiating Parties to modify the Settlement Agreement to rectify its deficiencies.

**A. The Settlement Agreement is Unfair, Inadequate, and Unreasonable Because It Failed to Fully Designate the Fund Recipients.**

The failure of the Settlement Agreement to identify and determine the Fund Recipients is a fatal defect as it renders the Settlement Agreement fundamentally unfair, inadequate, and unreasonable. Cannata therefore respectfully requests that the Court deny final approval of the Settlement Agreement and require the parties to modify the Settlement Agreement to cure its inadequacies and allow the Class and the Court review of and approval of the *cy pres* recipient.

*1. The Negotiating Parties have Not Carried their Burden to Prove the Fairness of the* Cy Pres *Remedy*

The burden of proving that a *cy pres* recipient is acceptable rests on the settling parties.[14] The settling parties must prove, *inter alia,* that *cy pres* recipients have a substantial record of service, that the funds "adequately target the plaintiff class," and that there is "adequate supervision over distribution."[15]

Here, the Negotiating Parties have failed to meet this standard because the Settlement Agreement does not fully identify the Fund Recipients. The Settlement Agreement instead purports to disburse the Fund to a few organizations focused on Internet privacy policy or privacy education. But there is no guarantee yet that the Negotiating Parties will actually designate Fund Recipients that meet the service requirement. Neither does the Settlement Agreement adequately target the Class. On the contrary, it bestows unfettered discretion on the Class Counsel to designate recipients who may or may not in fact have the necessary focus.

---

[14] *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1307 (9th Cir. 1990).
[15] *Id.* at 1308-9.

There is simply no guarantee that the Fund Recipients—whoever they ultimately may be—will target the Class. Furthermore, an adequate oversight procedure is conspicuously absent from the Settlement Agreement. Upon approval, Defendants can walk away from the courthouse confident that it can ignore the legitimate claims of the Class Members with impunity.

>        *2. The Settlement Agreement is Unfair, Inadequate, and Unreasonable because it Prevents the Court from Discharging its Fiduciary duty to Class Members*

District courts owe a fiduciary duty to class members when class counsel derives their fee from a common settlement fund.[16] The Court stands as a fiduciary in this case because the Settlement Agreement provides that Class Counsel may take up to 25% of the Fund as their fee. Yet the Court cannot discharge its fiduciary duty because the Settlement Agreement leaves the future determination of the Fund recipients solely to the discretion of the Class Counsel. The failure to designate the Fund Recipients renders the Court unable to exercise its fiduciary duty to ensure that the settlement, and the Fund created thereunder, will in fact benefit all Class Members.

The Court must identify the Fund Recipients ***before*** the Court enters the Final Order and Judgment. This is the only way the Court will be able to discharge its duty to review the Fund Recipients and properly determine that the Fund will or will not benefit the Class Members.

>        *3. The Settlement Agreement is Unfair, Inadequate, and Unreasonable Because it Disincentivizes Class Counsel from Objecting*

Another troubling fact is that the Class Counsel's interests are now more closely aligned with Defendants' than with those of the Class Members. District court review of class action settlements exists precisely to police this misalignment, which is ripe for abuse. "The primary concern of [district court review] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."[17]

---

[16] *In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1302 (9th Cir. 1994).
[17] *Officers for Justice,* 688 F.2d at 624.

9

In this case, while the Class Members receive no direct benefit, Class Counsel receives its 25% cut of the Fund if the Court approves the Settlement Agreement. The Settlement Agreement terminates if the Court vacates, modifies, or reverses it, which would send the Negotiating Parties back to the settlement drawing board. The Settlement Agreement therefore incentivizes Class Counsel to quash legitimate objections both now and after the Final Order and Judgment.

Accordingly, the Court should fully identify the Fund Recipients and the amounts to be disbursed to each before the Court grants final approval to the Settlement Agreement. This would allow the Court to discharge its fiduciary duty to the Class Members by guaranteeing that the Fund will actually benefit Class Members.

**B. The Court Should Require the Negotiating Parties to Amend the Settlement Agreement to Actually Benefit the Class Members Through Substantive and Specific Improvements in Privacy controls and Specific Designation of Privacy Education**

Although Defendants promise to improve and correct its actions and to provide education, the Settlement Agreement provides no obligation for Defendants to provide any specific improvements or privacy education related to their operations and conduct, no standards for such improvements or education, and any oversight or consequences relating to such improvements and education. In addition the provisions will remain in effect only until June 30, 2013. These failures render the Settlement Agreement unfair, inadequate, and unreasonable. The Settlement Agreement simply does not benefit the Class Members. Cannata therefore respectfully requests that the Court withhold final approval of the Settlement Agreement and require the Negotiating Parties to modify the Settlement agreement to specify substantive improvements.

In addition to the creating the Fund, the Settlement Agreement requires Defendants to perform vague promises that lack any specific obligation of Defendants and therefore lack any substantive force and do not discharge the Negotiating Parties' burden to prove that the

Settlement Agreement benefits Class Members. The Settlement Agreement neither defines nor provides details regarding what each Defendant will be compelled to provide. This leaves Defendants absolute discretion. Defendants, the wrongdoer here and competitors in the cutthroat arena of website services, has no incentive to highlight its shortcomings and provide proper services beyond June 30, 2013. Defendants are much more likely to use the class relief as a marketing tool rather than make it an honest remedy for Class Members, then after June 30, 2013 go back to the same improper conduct that they have been cited for in this action.

### C. The Settlement Agreement Provides No Benefit to Members of the Class

The Settlement Agreements fail to obligate Defendants to implement any permanent substantive improvements to its website services for the Class in exchange for the Release and Dismissal. Allowing Defendants unfettered discretion to decide its obligations, especially after June 30, 2013, under the Settlement Agreement do not provide Class Members with any relief in exchange for forever releasing their rights to recover.

In addition, promising to disburse the Fund to an unnamed *cy pres* recipient does not obligate Defendants to provide any benefit to the Class, as there is no assurance the Fund Recipient eventually named provide any services that benefit the Class.

Finally, providing to Class Counsel the information relevant to Defendant's alleged misconduct is not relief for the Class Members. Defendants, under basic discovery rules and judicial rules of fairness, would have been required to provide such discovery in any event.

For the foregoing reasons, none of the purported "relief" obligates Dfendants to provide any real relief or benefits to the Class Members in exchange for the Class Members extinguishing claims against Defendants for its egregious breach. Therefore, the Court should withhold final approval of the Settlement Agreement and require the Negotiating Parties to modify the Settlement Agreement to rectify this deficiency.

## VI.   CONCLUSION

The Settlement Agreement is substantively deficient and is inherently unfair, inadequate, and unreasonable.  Therefore, the Court should withhold final approval of the Settlement Agreement until the Negotiating Parties modify the Settlement Agreement to address the deficiencies described above.


Dated:  May 12, 2011                                    Respectfully submitted,



                                                        _____
                                                        Sam P. Cannata, Pro Se Objector
                                                        9555 Vista Way, Suite 200
                                                        Garfield Heights, Ohio 44125
                                                        (216) 438-5091 – phone
                                                        (216) 587-0900 – fax
                                                        samcannata@cannataphillipslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were served via Federal Express Priority Overnight, to the following on this 12th day of May, 2011:

Clerk of the United States District Court
For the Central District of California
312 North Spring Street
Los Angeles, CA 90012

Flash Cookie Settlement
Claims Administrator
c/o Rosenthal & Company LLC
75 Rowland Way, Ste 250
Novato CA 94945

The undersigned hereby certifies that copies of the foregoing were served by ordinary, first class U.S. mail, postage prepaid to the following on this 12th day of May, 2011:

Josh M Kantrow
Wilson Elser Moskowitz Edelman & Dicker
55 West Monroe Street, Ste. 3800
Chicago, IL 60603

Scott A. Kamber
Kamberlaw, LLC
100 Wall Street, 23rd Floor
New York, NY 10005

Michael G. Rhodes
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111

Avi Kreitenberg
Kamberlaw, LLP
1180 South Beverly, Ste. 601
Los Angeles, CA 90035

Michael G. Page
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111

Sam P. Cannata

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____) | | |
| In Re:                          ) | **MDL NO. 1938** | |
|                                 ) | **Master Docket No. 08-285 (DMC)** | |
| **VYTORIN/ZETIA**               ) | | |
| **MARKETING SALES PRACTICES**   ) | | |
| **AND PRODUCTS LIABILITY**      ) | | |
| **LITIGATION**                  ) | | |
| _____) | **OBJECTIONS** | |
|                                 ) | | |
| **THIS DOCUMENT RELATES TO**    ) | | |
| **ALL CASES**                   ) | | |
| _____) | | |

NOW COME Sam A. Cannata  and Dennis Levin, members of the Class who each purchased Zetia  between November 01, 2002 and September 17, 2009, by and through the undersigned counsel, and hereby file these objections to the Proposed Settlement.

## MEMBERSHIP IN CLASS

Mr. Cannata lives at 23200 Bryden Road, Beachwood, Ohio 44122.  His telephone number is (216) 751-4519.  Mr. Levin has an office at 5910 Landerbrook Dr., Ste. 200, Lyndhurst, Ohio 44124.  His telephone number is (216) 831-3939.  Evidence that Mr. Cannata is a member of the Class (a receipt for Zetia dated 07/04/2009) is attached hereto as an Exhibit.  Evidence that Mr. Levin is a member of the Class (an affidavit from him) is attached hereto as an Exhibit.

## NOTICE OF INTENT TO APPEAR

Objectors hereby notify this Honorable Court that they will appear, through counsel, at the Fairness Hearing currently scheduled for February 8, 2010 before the Honorable Dennis M. Cavanaugh, at the United States District Courthouse, 50 Walnut Street, Newark, NJ  07102.

## SUMMARY OF OBJECTIONS

The proposed Settlement Agreement is not fair, reasonable or adequate for several reasons.  Chief among them is the fact that Class Counsel is requesting a fee of up to thirty-three and one-third percent (33.3%) of the Class Settlement Amount for their fee and out of pocket expenses and "can make a further request for additional expenses incurred by the Claims Administrator… " Notice Paragraph 18.  The Class Settlement Amount is $41,500,000.  Therefore, the fee request is for $13.83 million.  This is objected to because 1) the percentage is too great for a settlement of this size; 2) Class Counsel has not submitted their time records so there is no way to know whether or not the requested fee is fair and reasonable; 3) they should not be allowed to request any additional amounts after approval of their fee request.  In addition, there is insufficient information in the Settlement Agreement concerning how much of the court awarded fees will come from the Consumer Class, how much will come from the IRHP's,  and how much from the TPA's, TPP's, ASO's and PMB's.

1.    PERCENTAGE OF SETTLEMENT FUND IS TOO GREAT

Based upon the size of the Settlement Fund, the Court should award **total fees and costs** to counsel in an amount not exceeding approximately **24.8 %** percent of the Settlement Fund.  Even this sum, which would be almost $10.3 Million, would reward Class Counsel handsomely for their services.  According to the study by the consulting firm of Logan, Moshman and Moore which analyzed over 1100 Common Fund cases, the average award for

**fees and expenses** in Class Action cases whose settlements were valued between $30 and $50 million was 24.8 percent. Stuart J. Logan, Jack Moshman and Beverly C. Moore, Jr., *Attorney Fee Awards in Common Fund Class Actions,* 24 Class Action Rep. 169 (2003). A copy of the executive summary from such study is attached hereto as Exhibit A.

     2.    <u>VIOLATION OF FED. R. CIV. P. 23(h)</u>

The Notice provided that any objections to the Settlement were to be filed on or before January 15, 2010. However, the fee petition was filed on January 13, 2010 which allows only two (2) days to respond before the deadline set forth in the Notice. This is insufficient time in which to thoroughly review said petition and file a response thereto. Under Fed. R. Civ. P 23(h), each class member has a period of time as set forth in the Local Rules in which to respond to the Motion for Fees.

Fed.R.Civ.P. Rule 23(h) provides:

(h) Attorney's Fees and Nontaxable Costs.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
(1) A claim for an award must be <u>made by motion</u> under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. <u>Notice of the motion must be</u> served on all parties and, for motions by class counsel, <u>directed to class members in a reasonable manner.</u>
(2) <u>A class member</u>, or a party from whom payment is sought, <u>may object</u> to the motion.
(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D) (emphasis added).

This Rule has three elements or conditions precedent to having a hearing on a fee request: 1) the request for fees must be by motion; 2) notice of the motion must be directed to class members in a reasonable manner; and 3) class members must have an opportunity to object. Although it is questionable whether or not the Notice of the motion has been directed to the Class members in a reasonable manner, Objector hereby reserves the right to file a response to

the Motion by way of Supplemental Objections within the applicable time period. Assuming *arguendo* that the document filed on January 13, 2009 (Docket No. 200) is intended as a Motion for Fees, any opposition thereto is due fourteen (14) days prior to the hearing date, or January 25, 2010. Local Rule 7.1 (d) (2). Supplemental Objections will be filed by such date.

### 3.    REDACTION OF IMPORTANT OPERATIVE SECTIONS

The Class Settlement Agreement and Release that is posted on the website, and can be found on PACER is inadequate and fails to provide Class Members with certain vital necessary information. Specifically, Articles XVI and XVII have been redacted. In a conversation on January 13, 2009, Mr. Cecchi, one of the Class Counsel, indicated that these sections only dealt with the ability of the parties to withdraw from the settlement if there were a certain number of opt-outs. Nevertheless, Class members are entitled to this and all other information concerning the settlement.

Objectors also have serious questions concerning the allocation of attorneys fees. They could find no provision in the Settlement agreement relating to attorneys' fees and only a few phrases in the notice. It clearly violates fundamental fairness to withhold such vital information from the Class Members. They clearly have a right to know how much they are paying their lawyers, how this is calculated, how much is coming out of their portion of the Class Settlement Fund, etc. That a request will be made for "up to 33 and 1/3 percent (33 1/3%)" of the Settlement Fund is meaningless in the abstract. It does not tell the class members how this is calculated, how much time was spent by Class Counsel, whether or not there was a *ex ante* fee agreement, or any other information needed to make an informed decision. Lacking such information, the Notice must be deemed to be inadequate for purposes of holding a hearing on the requested fees.

The Notice provides that a portion of the Court-approved awards for attorneys' fees and other costs will be deducted from the $12,450,000 that is allocated to the Consumer Settlement Pool. <u>Notice ¶ 9</u>. However, the Notice does not say how great a portion this will be. Will 100% of the fees and expenses be taken from the Consumer Settlement Pool? 50%? 30%? 10%? An aliquot percentage? It is impossible to know from the Notice just how much of the fees and expenses will be paid by the consumer sub-class. Furthermore, there is nothing in the Settlement Agreement or elsewhere on the website that addresses this issue. This is fundamentally unfair. The Class has a right to know how much of the total fees and expenses they will be responsible for. Without this information, the Notice is totally inadequate.

4.  <u>NO WITNESSES</u>

Objectors will appear at the Fairness Hearing by and through Counsel, but will not present any witnesses.

5.  Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

6.  The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

7.  These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully request that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Continue the issue of attorneys' fees and expense reimbursement

for a subsequent hearing;

C.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

/s/Stephen Tsai_____
991 U.S. Highway 22 West
Bridgewater, N.J. 07060
(201) 927-1000
(201) 927-1002 (fax)
info@stephentsai.com

Edward F. Siegel (Ohio Bar 0012912)
27600 Chagrin Blvd. #340
Cleveland Ohio 44122
Voice: (216) 831-3424
Fax:    (216) 831-6584
e-mail: efsiegel@efs-law.com

Edward W. Cochran
(Ohio Bar no. 0032942)
20030 Marchmont Rd.
Cleveland Ohio 44122
Tel:     (216) 751-5546
Fax:     (216) 751-6630
edwardcochran@wowway.com

Sam P. Cannata (Ohio Bar no. 0078621)
9555 Vista Way Ste. 200
Garfield Hts., Ohio 44125
Voice:          (216)  587-0900
E-mail:          scannata@snider-cannata.com

Co-counsel for Objectors

### CERTIFICATE OF SERVICE

The foregoing objections were filed with the Court's elelctronic system on January 15, 2010 and were by such system served on all other counsel of record.

/s/ Stephen Tsai

1    Sam P. Cannata
2    9555 Vista Way, #200
3    Cleveland, Ohio 44125
4    (216) 214-0796
5    In Pro Per
6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                        SAN JOSE DIVISION

10

11   In re:  HP INKJET PRINTER LITIGATION      )      Master File No. C05-3580 JF
12                                             )
13                                             )      **OBJECTION TO PROPOSED**
14   _____   )      **CLASS ACTION SETTLEMENT**
15

16          NOW COMES, Sam P. Cannata ("Cannata"), proceeding in pro se as a member of the

17   class in the above referenced suit against Hewlett Packard Company ("HP" or "Defendant"), and

18   files this Notice of Intent to Object to the Proposed Class Action Settlement and Objections to

19   Class Action Settlement.  In support of this objection, Cannata would respectfully show the

20   Court as follows:

21          1.      Cannata is a member of the class through his purchase of the HP  Photosmart

22   3310 All-in-One Printer during the period of September 6, 2001 to September 1, 2010.  Cannata

23   timely submitted his claim as required on December 30, 2010 and he was acknowledged as a

24   member of the class by the claims administrator.  *See* Exhibit A 1-3.

25          2.      Cannata hereby gives notice that he does not intend to attend the Fairness Hearing

26   presently scheduled for January 28, 2011at 9:00 a.m. in the United States District Court of

27   Northern California, located at 280 South First Street, Room 2112, San Jose, CA 95113.

28   Cannata will rely on his written Objections.

                                        1

OBJECTION                                              Master File No. C05-3580 JF

3. Cannata objects to the proposed class action settlement and respectfully requests the Court to reject it because it is unfair, unreasonable, and inadequate. Specifically, Cannata objects to the proposed class action settlement for the following reasons:

**A.** **The Defendant is only required to refrain from its deceptive practices for three years.**

While class counsel appear to recognize the serious deceptive and fraudulent business practices the Defendant practices against its unsuspecting customers and consumers of its products over the course of the last nine years, the settlement they have struck with Defendant permits more fraudulent concealment and unjust enrichment with consumers in the marketplace in merely three years. Specifically, the terms and requirements of the Injunctive Relief described in Paragraphs 33 through 35 of the Stipulation of Settlement shall "expire the earliest of the following dates: (a) three (3) years after the Effective Date; or (b) the date upon which there are such changes in the technology that would render any of the disclosures described in Paragraphs 33 through 35 inaccurate; or (c) the date upon which there are changes to any applicable statute, regulation, or other law that HP reasonably believes would require a modification to any of the disclosures described in Paragraphs 33 through 35 in order to comply with the applicable statute, regulation, or law." After that short period, HP is free to maintain and continue its deceptive and wrongful practices in conjunction with selling printers to its consumers. This entire scheme is unjust, unfair, and unreasonable. While class members are asked to forever waive and release all claims, whether known or unknown, related to Defendant's printers, Defendant is free to continue its unconscionable business practices in merely three years, at most. By way of this proceeding, Defendant is seeking to purchase through settlement the unconscionable deal of the decade – for a nominal fee, Defendant is seeking to bar all present and future claims related to its

1 printers in exchange for its attempt to comply with state and federal law for three years. This is

2 unjust and unfair on its face. Additionally, and quite shockingly, HP can even escape its

3 contractual and ethical obligations during the three year compliance period. The settlement

4 provides that HP can modify any disclosures "that HP reasonably believes would require

5 modification". For these reasons, the proposed settlement should be rejected.

6       **B.**    **The requested attorneys' fees and settlement administrator's fees are**

7 **unreasonable, unjust and unwarranted.**

8      As set forth, this case is detrimental to class member's legal rights. According to the

9 proposed settlement, class members are required to waive significant, valuable legal rights in

10 order to obtain a purported "benefit". Nonetheless, class counsel demands an enormous

11 $2,900,000.00 for attorneys' fees, costs and expenses. The settlement administrator will receive

12 $950,000.00 for costs, fees and expenses for providing notice to the Settlement Class and

13 administering the settlement. These types of fee requests and their lack of rational relationship to

14 the actual benefit to class members is the exact reason so many Americans despise the legal

15 system and its participants. No rational, disinterested person could objectively opine that class

16 counsel has earned $2,900,000.00 and the Settlement Administrator will earn $950,000.00 in this

17 case. Aside from the lack of any real benefit to the class members in this case, there is no

18 evidence available to the undersigned that would possibly justify such an excessive award and

19 fees based on the amount of work put in the case. Further, the Settlement Administrator has yet

20 to justify its exorbitant fees as well. For these reasons, the Court should reject the proposed

21 settlement and the requested fees.

22

23

**C.    The Defendant will benefit more from the settlement than the class members.**

The proposed settlement is a coupon settlement.  The proposed settlement essentially forces the class members who receive the "e-credit" coupons to do business with the Defendants in order for the coupons to have value.  Class members should not have to continue to deal with Defendants in order to receive value from the proposed settlement.  The e-credit coupons are nothing more than marketing and will actually benefit the Defendant more than the class members.  Coupon settlements have been criticized by courts (*In re: G.M. Trucks*, 55 F.3d 768, 803 (3rd Cir. 1995); *Acosta v. Trans Union, LLC,* 243 F.R.D. 377 (C.D. Cal. 2007)) and Congress (Class Action Fairness Act, Pub.L. 109-2, Feb. 18, 2005, 119 Stat.4) as providing only illusory benefit to injured class members while actually benefitting only class counsel and defendants.

**D.    The Court should await claims data before awarding fees.**

Class counsel will seek an award of attorneys' fees and expenses of $2,900,000.00, as noted above, to which Defendants have agreed not to oppose.  However, because the proposed settlement is essentially a coupon settlement, under the Class Action Fairness Act ("CAFA"), no attorneys' fees may be awarded until the actual value of the coupon elements of the propsed settlement to the class members has been determined.  Where the attorney's fees are contingent upon the value of the settlement, the court must base the attorneys' fees attribute to award of the coupons on the value of the coupons that are actually redeemed by class members.  28 U.S.C. 1712(a).  If a proposed settlement provides coupons to class, and a portion of the recovery of coupons is not used to determine the attorneys' fees, then any attorneys' fee award must be based on a lodestar analysis.  28 U.S.C. 1712(b)(1).  If the proposed settlement contains both coupons and injunctive relief, as the proposed Settlement in the instant case does, the portion of the attorneys' fees that is based upon the portion of the recovery of coupons must be calculated

4

1   according to the value of the coupons actually redeemed by class members, and the portion of

2   the attorneys' fees not based on the coupons must be calculated according to a lodestar analysis.

3   28 U.S.C. 1712(c). Thus, the portion of the attorneys' fees based on the coupon portion of the

4   proposed settlement must be calculated as a percentage of the value of the coupons actually

5   redeemed by the class members, or the entire amount of attorneys' fees must be determined

6   according to a lodestar analysis, or a combination of a percentage of the value of the coupons

7   actually redeemed and the amount of time class counsel reasonably expended working on the

8   action. At any rate, given the coupon portion of the proposed settlement, there is no way that an

9   award of $2,900,000.00 in attorneys' fees may be paid to class counsel within 30 days after the

10  Effective Date, as contemplated by Section V. of the Stipulation of Settlement.

11          **E.      The Court should not permit the "Clear Sailing" provision set forth in the**

12  **proposed settlement.**

13          Section V. of the Stipulation of Settlement states that "HP does not oppose, and will not

14  encourage or assist a third party in opposing, Class Counsel's request for attorneys' fees, costs

15  and expenses up to Two Million Nine Hundred Thousand Dollars ($2,900,000.00), nor does HP

16  contest the reasonableness of the amount." However, this agreement between Class Counsel and

17  the Defendant should not be afforded any weight by this Court, and is clearly not binding on this

18  Court. "[A]ny award of attorneys' fees to class counsel must be reasonable in comparison to the

19  benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx.

20  525, 528 (4th Cir. 2002)(citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d

21  451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or

22  justified when compared to the benefits conferred on the class through counsel's efforts.

1   **F.    The proposed settlement agreement lacks any form of deference for the**

2   **Defendant's unconscionable misconduct.**

3   When these consolidated cases were filed, they often sought punitive damages against

4   Defendant for its knowing, calculated, and intentional misconduct. All of a sudden at the

5   settlement, these claims have disappeared. This is the type of lack of accountability and

6   corporate unconsciousness that led to the Defendant's caviler belief that it could scam consumers

7   with no consequence. The settlement serves to reaffirm Defendant's caviler belief and

8   encourage corporate misconduct. The Defendant has obtained a very favorable settlement,

9   negated millions of possible lawsuits through this class action, and faces no additional damages.

10  The only thing the Defendant does in the proposed settlement is to provide a coupon for its

11  misconduct and pays class counsel an outrageous fee. There is absolutely no damage assessed to

12  deter Defendant from future misconduct and, indeed, the proposed settlement agreement permits

13  Defendant's misconduct to continue in three years while barring future claims based on that

14  same misconduct. As such, the Court should reject the proposed settlement agreement.

15  4.    Cannata respectfully adopts and incorporates into these Objections all other well-

16  taken, timely filed Objections that are not inconsistent with these Objections.

17  5.    The class members have a legally protectable interest in this litigation. That

18  interest will be impacted by the proposed settlement agreement, particularly the legal fees that

19  are proposed to be paid.

20  6.    These Objections, presented to the Court as a matter of right, are properly and

21  timely filed by Cannata. All of the legally required prerequisites material to these Objections

22  have been met.

23

6

1    WHEREFORE, class member Sam P. Cannata respectfully requests that this Court:

2    A.    Upon proper hearing, sustain these Objections;

3    B.    Continue the issue of attorneys' fees and expense reimbursement for a subsequent

4    hearing;

5    C.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate

6    these Objections and to alleviate the inherent unfairness, inadequacies, and unreasonableness of

7    the proposed settlement.

8

9

10                               Respectfully submitted,

11

12

13                               Sam P. Cannata
14                               9555 Vista Way, #200
15                               Cleveland, Ohio 44125
16                               Voice (216) 214-0796
17                               In Pro Per
18

19

20

21

22

23

7

CERTIFICATE OF SERVICE

A copy of the foregoing Objection to Proposed Class Action Settlement was emailed and mailed by first class U.S. Mail, postage prepaid to the following on December 30, 2010:

| | |
|---|---|
| Clerk of Court | Niall P. McCarthy |
| U.S. District Court | Justin T. Berger |
| Northern District of California | Cotchett, Pitre & McCarthy |
| 280 South First Street, Room 2112 | San Francisco Airport Office Center |
| San Jose, CA 95113 | 840 Malcom Road, Suite 200 |
| | Burlingame, CA 94010 |
| | jberger@cpmlegal.com |
| | |
| HP Inkjet Settlement Administrator | Brian Kabateck |
| P.O. Box 5270 | Richard L. Kellner |
| Portland, OR 97208-5270 | Alfredo Torrijos |
| Facsimile: 877-341-4607 | Kabateck Brown Kellner LLP |
| info@HPInkjetPrinterSettlement.com | 644 South Figueroa Street |
| | Los Angeles, CA 90017 |
| | at@kbklawyers.com |
| | |
| Samuel G. Liversidge | |
| Christopher Chorba | |
| Dhananjay S. Manthripragada | |
| Gibson, Dunn & Crutcher LLP | |
| 333 South Grand Avenue | |
| Los Angeles, CA 90071 | |
| DManthripragada@gibsondunn.com | |

Sam P. Cannata

OBJECTION

Master File No. C05-3580 JF

**EXHIBIT A-1**

# HP Inkjet Printer Settlement

1. Reference Number  >  2. Name & Address  >  3. Product Information  >  4. Confirmation



Home

FAQs

Important Documents

File Your Claim

Important Dates

Contact Us

## Online Claim Form Submission

### Confirmation of Submission

Thank you for submitting a claim, you may print a copy of this page as confirmation of your submission. You have been assigned a claim number which you should keep for your records:

**8E70787**

for 2 product(s) in the HP Inkjet Printer litigation. Please read this entire page carefully as further action may be required in order to receive your benefits.

**Name: Sam Cannata**
**Email: samcannata@cannataphillipslaw.com**
**Claim Number: 8E70787**

### Product Submissions

| Product | Status |
|---------|--------|
| HP Photosmart 3310 All-in -One Printer | Action Required: To receive benefits, you must comply with the instructions in the Completion Form (click on button Below). |
| HP Photosmart 3310 All-in -One Printer | Complete: Your submission is complete. No further action is required. |

[ Print Completion Form ]

Click here to upload a PDF copy of your completed form and/or documentation, or click here to return to the home page. You may upload your completed form at a later date by returning to the File Your Claim tab of this website. Please note, to upload your form or documentation via this website, you will be required to enter your e-mail address and claim number assigned to you.

# HP Inkjet Printer Settlement
## Completion Form



*8E70787*

| Your Claim Information |
|---|
| Reference Number: 8E70787 |
| Sam Cannata |

### ACTION REQUIRED TO RECEIVE BENEFITS

This form must be returned by **February 15, 2011** and mailed to
**HP Inkjet Printer Settlement, PO Box 5270, Portland, OR 97208**
or email a PDF copy of the form to
**info@HPInkjetPrinterSettlement.com**

To complete your submission, additional action is required. Failure to complete the required step(s) will result in the forfeiture of all e-credits for the printer(s) identified below. E-credits for eligible, approved products will be emailed to the address provided as part of your original submission. If you require assistance in completing this form, please visit the FAQ section of the settlement website at www.HPInkjetPrinterSettlement.com (Questions 2 and 14).

To receive e-credits for the printer(s) identified below, you are required to: complete and return a signed **ATTESTATION** as specified below.

## ATTESTATION

**By signing in the box below and marking the associated printer in the list provided below, I declare under penalty of perjury that:**

- *For the specific Blennis printer(s) indicated below, I purchased an inkjet cartridge for the printer that reached the expiration date before the cartridge had been fully used.*
- *For the specific Ciolino printer(s) indicated below, I received a message indicating the printer was low on ink and removed the inkjet cartridge upon receiving the message without using any remaining ink, believing it was out of ink.*

## PRINTERS CLAIMED WITH ACTION REQUIRED

If you claimed printers not appearing below, no additional information is required for those printers.

| Printer | Matter | Action Required | I have signed the Attestation (mark X below for each Printer) | I have attached Proof of Purchase (mark X below for each Printer) |
|---|---|---|---|---|
| HP Photosmart 3310 All-in-One Printer | Blennis | · Attestation | X 8+C | N/A |

**EXHIBIT A-3**



Sam P. Cannata
9555 Vista Way
#200
Garfield Hts., OH 44125

HP Inkjet Printer Settlement
P.O. Box 5270
Portland, OR 97208

Completion Form

FILED

MAY 02 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DORIS J. MASTERS, individually and as )
the representative of a class of similarly )
situated persons )

    )    Case No. 09-cv-255-JPG-PMF

       Plaintiff, )

    )    **OBJECTION TO CLASS**

v.            )    **PROPOSED ACTION**

    )    **SETTLEMENT**

LOWE'S HOME CENTERS, INC., )

       Defendant. )

NOW COMES Grace M. Cannata, 23200 Bryden Rd., Cleveland, Ohio 44122

(telephone number (216) 533-0522), Pro Se ("Objector"), hereby files these Objections to

the Proposed Settlement of this Class Action and, in support thereof, state as follows:

## PROOF OF MEMBERSHIP IN CLASS

Objector, past and presently, holds a Lowe's branded GE Money Bank credit card

and made a payment on her Lowe's branded GE Money Bank credit card balance at a

new Lowe's store during the class period. (See Attached Claim Notice and Claim Form).

Objector is eligible for at least one gift card as prescribed in the Claim Notice, the Notice

of Proposed Settlement of Class Action and the Settlement Agreement.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that she does not intend to appear at the Fairness

Hearing presently scheduled for 1:30 P.M. on July 14, 2011, in the United States District

Court for the Southern District of Illinois, Kenneth Gray Federal Building and U.S.

Courthouse, 301 West Main Street, Benton, IL 62812 and will rely on the written

Objections.

1

## OBJECTIONS

The Settlement Agreement is unfair, unreasonable and inadequate for the following reasons:

1.  <u>LOWE'S STANDS TO BENEFIT MORE THAN THE CLASS</u>. This Settlement is nothing more than a coupon settlement and a marketing incentive program for Lowe's. In fact, if you purchased products from Lowe's and you used their branded credit card, the only relief is to get a gift card (or coupon) to buy more products from Lowe's. That is a benefit to Lowe's! Essentially, Class Members receive little more than the right to purchase more products from the defendant at a discounted price.

Given the abuse Class Members have already suffered at the hands of Lowe's, they certainly are reluctant to engage in further dealings with Lowe's. Hence, in light of the dubious value of the benefit offered to Class Members, the redemption rate is virtually guaranteed to be miniscule. The low redemption rates which typically accompany these "in-kind" settlements make a mockery of the concept that Class Members should receive value for settling their claims. This abuse is particularly troubling when, as in the instant case, class attorneys are paid in cash while Class Members receive gift cards or coupons of dubious value.

This Court should determine the actual value of the settlement prior to granting or denying final approval. The settling parties have failed to produce sufficient evidence in this regard. Not only is the final claims rate unavailable, the Court has not even been presented a reasonable approximation of the claims rate. Accordingly, the Court does not have the information it needs to evaluate the settlement's reasonableness.

Notwithstanding the absence of evidence concerning the "actual value", here even the stated value $7,000,000 is suspect. First, the $7,000,000 cap is arbitrary and no

evidence has been presented that the benefit offered will be commensurate with released claims. If there is no reasonable approximation of the number of claims to be filed, there is absolutely no way to know whether individual class members will receive an amount that is adequate to compensate them for claims they are releasing. Second, the benefit offered is per "qualifying payment" at a Lowe's store up to three (3) qualifying payments. As such, a Class Member who made 3 qualifying payments at a Lowe's store is eligible for the same benefit as some who made a thousand qualifying payments. Under the terms of the proposed settlement, heavy volume users are subsidizing, to their detriment, Class Members who made 3 or less qualifying payments. This disparate treatment of class members is unfair and results in the smallest benefit going to the class members with the greatest damages.

Finally, regardless of whether the Court is inclined to approve the settlement's substance in the absence of claims data, it must, according to Class Action Fairness Act ("CAFA"), wait to see how many "gift cards" or coupons are issued to Class Members before awarding attorneys' fees. Additionally, the Court should require publication of the final claims rate in the interest of tracking the efficacy of this type of settlement.

2.      <u>ATTORNEYS FEES ARE EXCESSIVE</u>. Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $1,724,000 in Attorneys' fees and expenses. That is entirely too much compensation considering how short this case's "time-line" is and the fact that it represents 25% to 49% (and maybe higher) of what the class members will receive.

The Court should award total fees and expenses in proportion to the benefit that the Class Members receive which is likely to be significantly less than what is requested here, and should make sure that the lodestar multiplier, if any, is reasonable.

3

In addition, a significant portion of Class Counsel's fees should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

3.    INSUFFICIENT INFORMATION IS AVAILABLE REGARDING THE REASONABLENESS OF THE REQUESTED ATTORNEYS FEES.

In the instant case, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much cash value is paid out to Class Members rather than some charities. The Court does not know the exact amount that will be paid to the Class Members at this time. Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.

This Court should wait to award attorneys' fees and expense reimbursements until such time as it has had a chance to review the claims actually made to assure it that the attorneys' fees are reasonably related to the actual benefit received by the Class.

Because this is, in effect, a claims-made settlement, with unclaimed benefits going to *cy pres* recipients chosen by Counsel and approved by the Court, the Court should await a report detailing exactly the amount of monetary benefit received by the Class. It should be based on the actual relief received by the Class, not the potential. Therefore, this Honorable Court is urged to wait until it receives a report on actual payments to Class Members before awarding fees.

4.    CY PRES DISTRIBUTION

The Settlement Agreement provides that if "the amount of claims Lowe's must pay to Class Members does not reach $3,500,000, the difference between $3,500,000 and

4

the amount distributed as gift cards to qualifying Claimants shall be treated as a *cy pres* fund to be distributed to a Section 501(c)(3) charitable organization." There is no requirement that the *cy pres* be limited to organizations whose purpose will benefit the class in some way. The amount that is received by this presently unknown organization, whose purpose may not benefit the Class Members at all, should not be considered when determining the appropriate amount of fees to be awarded.

In addition, the Class Members who submit a qualifying claim should directly receive the benefits, and should not go into a *cy pres* fund.

5.    LACK OF FEE PETITION NOTICE

In addition, Class Counsel has not giving the class members adequate notice of their fee petition. As of such date no fee petition, or Motion for Award of Counsel Fees, has been filed. This puts Objector in the unfeasible position of objecting to a Motion for Fees prior to the time that the motion is filed. The Motion for Fees should be filed prior to the time of the objection deadline.

Since Objector did not have an opportunity to review the fee petition prior to the objection deadline, she reserves the right to file additional and supplemental objections after the fee petition is filed.

6.    Objector respectfully adopts and incorporates into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objector also reserves the right to supplement these Objections with other and fuller objections after the fee request is filed.

7.    The class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

5

8.      These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector.  All of the legally required prerequisites material to these Objections have been met.

9.      The Objector hereby declares that she intends to hire Attorney Sam P. Cannata to represent her interests in this matter.  Please direct correspondence to him at Law Offices of Sam P. Cannata, 9555 Vista Way, Ste. 200, Cleveland, Ohio 44125; telephone (216) 214-0796; email samcannata@cannataphillipslaw.com.


WHEREFORE, Objector respectfully requests that this Court:

A.      Upon proper hearing, sustain these Objections;

B.      Continue the **issue of attorneys' fees and expense reimbursement** for a subsequent hearing;

C.      Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested **attorneys' fees and expenses.**


Respectfully submitted,

_Grace M. Cannata_
Grace M. Cannata
Pro Se Objector

6

## CERTIFICATE OF SERVICE

I certify that on April 29, 2011, I mailed and filed the foregoing objection by Federal Express Overnight Mail to the **Office of the Clerk of Court, United States District Court for the Southern District of Illinois, Kenneth Gray Federal Building and U.S. Courthouse, 301 West Main Street, Benton, IL 62812** and by ordinary US Mail, first class, postage prepaid to the following addresses:

Settlement Administrator:

Payment Receipt Settlement
P.O. Box 2003
Chanhassen, MN 55317-2003

For the Class:

Phillip A. Bock
Richard J. Doherty
Bock & Hatch LLC
134 N. La Salle Street
Suite 1000
Chicago, IL 60602

For Lowe's:

Kimball R. Anderson
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601

*Grace M. Cannata*
Grace M. Cannata
Pro Se Objector

7

**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT**

P.O. Box 2003
Chanhassen, MN 55317-2003

Presorted
First-Class Mail
U.S Postage
PAID
Minneapolis, MN
Permit No. 3648

Masters v. Lowe's Home Centers, Inc.

According to our records you made 1 qualifying payment(s) at a Lowe's store on your GE Money Bank account balance. If you disagree with our records, please follow the instructions on the claim form.

To file your claim online:

Password: 0520EE39

Claim Number: 2157537

Postal Service: Please Do Not Mark Barcode

LHC00832DA509

Grace Cannata
23200 Bryden Rd
Beachwood OH 44122-4017

## NOTICE OF PROPOSED SETTLEMENT AND RIGHT TO OPT OUT
*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

The U.S. District Court, Southern District of Illinois has preliminarily approved a class action settlement in Masters v. Lowe's Home Centers, Inc., No. 3:09-CV-255. Class members are: *All past and present holders of Lowe's branded GE Money Bank credit cards who made an in-store payment on their Lowe's branded GE Money Bank credit card balance at a new Lowe's store between January 1, 2005 and December 3, 2006 or at any Lowe's store between December 4, 2006 and March 24, 2008, and who received a receipt for their in-store payment showing more than the last five digits of their account. A new Lowe's store is a Lowe's store opened after January 1, 2005 and is identified in Exhibit A* which is available on the website. This is a summary of your legal rights. Call or visit the website for more details. **What is this about?** The lawsuit claims that Lowe's printed more than the last five digits of credit card numbers on receipts when Class Members made in-store payments on their Lowe's branded GE Money Bank credit card account balances. Lowe's did not print the cardholder's entire account number on these receipts and Lowe's denies that it did anything wrong. The Court has not decided who is right.
**What are my rights?** You are a Class Member and you have the following choices: (1) **Submit a Claim Form:** Submit a claim online or by mail by **September 1, 2011** and you may receive a gift card. The maximum value of the gift card will be $25 if you made one payment on your Lowe's credit card at a Lowe's store, $33 if you made two payments, and $40 if you made three or more payments. If the total amount of approved claims exceeds the $7 million settlement fund, the gift cards' value will be reduced *pro rata*.
(2) **Do Nothing:** By doing nothing, you will remain in the class, but you will not receive a gift card. You will be legally bound by all orders and judgments of the Court, and you will not be able to sue, or continue to sue, Lowe's about the same claims in this case. (3) **Exclude Yourself:** If you exclude yourself, you cannot receive a gift card; however you will keep your right to sue Lowe's about the same claims in this case and you will not be bound by any orders or judgments of the Court. To be excluded, you must send a letter to the Settlement Administrator postmarked by **May 2, 2011**, stating that you want to be excluded from the Payment Receipt Settlement. Include your name, address, phone number, and the last four digits of your GE Money Bank account number. (4) **Object:** You may write to the Court about why you are objecting to the settlement. Your objection must be filed by **May 2, 2011** and sent to: The Class: Phillip Bock & Richard Doherty, Bock & Hatch LLC, 134 N. LaSalle St., Suite 1000, Chicago, IL 60602; Lowe's: Kimball Anderson, Winston & Strawn LLP, 35 West Wacker Dr., Chicago, IL 60601; Settlement Administrator: PO Box 2003, Chanhassen, MN 55317-2003. (5) **Go to a hearing:** You may also appear and ask to speak at the Fairness Hearing on **July 14, 2011**. Visit the website, call, or write to the Settlement Administrator for details on how to ask to speak.
**Do I have a lawyer in the case?** The Court appointed attorneys for the Class, but you will not be charged for them. They will be paid up to $1.724 million, if the Court approves that amount. You may hire your own lawyer to represent you at your own expense. If you hire your own lawyer, they must file an appearance by **May 2, 2011**. **Want More Information?** Visit the website, call, or write to the Settlement Administrator.

**www. paymentreceiptsettlement.com**
**1-866-890-4859**



IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS
DORIS J. MASTERS, individually and as the representative of a class of similarly situated persons, Plaintiff,
v. LOWE'S HOME CENTERS, INC., Defendant. Case No. 09-cv-255-JPG-PMF

# DO NOT MAIL.
# THIS IS FOR YOUR RECORDS ONLY.

*LHC00AA3C1094*



2157537



## PROOF OF CLAIM

### DEADLINE FOR SUBMISSION: September 1, 2011.

If you submit a Proof of Claim that is incomplete or inaccurate, it may be rejected, and you will be precluded from obtaining a benefit under the Settlement Agreement.

Please do not mail or deliver this form to the Court or to any of the Parties or their Counsel. In addition, do not telephone the Judge or Clerk of the Court or any representatives of Lowe's.

*To speed processing, please fill out the form in blue or black ink, using block letters, with one letter in each square, as shown:*

| A | B | C | D | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|

## PART I: CLAIMANT IDENTIFICATION
### [If different from information on Notice and Proof of Claim]

Name of Claimant (if business or other entity, full name of the entity):

First Name

| G | R | A | C | E | | | | | |
|---|---|---|---|---|---|---|---|---|---|

Last Name

| C | A | N | N | A | T | A | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

If business or other entity, full name of the entity:

If claimant is business or other entity, name and title of person filing claim on behalf of the entity:

Claimant Street Address

| 2 | 3 | 2 | 0 | 0 | | B | R | Y | D | E | N | | R | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

City

| B | E | A | C | H | W | O | O | D | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

State/Province

| O | H |
|---|---|

Zip Code

| 4 | 4 | 1 | 2 | 2 |
|---|---|---|---|---|

Postal Code

Country Name/Abbreviation

| U | S |
|---|---|

Claimant telephone contact number(s):

Daytime

| 2 | 1 | 6 | | 5 | 3 | 3 | | 0 | 5 | 2 | 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|

Evening

| 2 | 1 | 6 | | 7 | 5 | 1 | | 4 | 5 | 1 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|

Claimant Identification Number From Postcard:

| 2 | 1 | 5 | 7 | 5 | 3 | 7 |
|---|---|---|---|---|---|---|

*(CONTINUED ON BACK)*

LOW001001



## PART II: CLAIM FOR SETTLEMENT PAYMENT

UNDER THE TERMS OF THE PROPOSED SETTLEMENT, YOU ARE ONLY ELIGIBLE TO RECEIVE THE BENEFIT OF A LOWE'S GIFT CARD FOR EACH TIME YOU MADE A QUALIFYING PAYMENT AT YOUR LOWE'S STORE ON YOUR LOWE'S BRANDED GE MONEY BANK ACCOUNT BALANCE; THE VALUE OF THE GIFT CARD SHALL BE $25 IF YOU MADE ONE QUALIFYING PAYMENT AT A LOWE'S STORE, $33 IF YOU MADE TWO QUALIFYING PAYMENTS AT A LOWE'S STORE, AND $40 IF YOU MADE THREE OR MORE QUALIFYING PAYMENTS AT A LOWE'S STORE OR YOUR *PRO RATA* SHARE THEREFROM (IF THE TOTAL AMOUNT OF APPROVED CLAIMS EXCEEDS $7 MILLION), IF YOU ARE A MEMBER OF THE FOLLOWING SETTLEMENT CLASS:

> All past and present holders of Lowe's branded GE Money Bank credit cards who made an in-store payment on their Lowe's branded GE Money Bank credit card balance at a new Lowe's store between January 1, 2005 and December 3, 2006 or at any Lowe's store between December 4, 2006 and March 24, 2008, and who received a receipt for their in-store payment showing more than the last five digits of their account. A new Lowe's store is a Lowe's store opened after January 1, 2005 and is identified on the list attached to the Agreement as Exhibit A and is available on the website.

IF YOU WOULD LIKE TO OBTAIN THIS BENEFIT, PLEASE COMPLETE **PARTS I AND II** OF THIS CLAIM FORM AND RETURN TO THE SETTLEMENT ADMINISTRATOR.

The number of qualifying in-store payments reflected in our records is indicated to the left of your name and address on the notice. If you disagree with the number of in-store payments listed on your notice or if you did not receive a notice, please indicate below the number of qualifying in-store payments made and provide the receipts for qualifying in-store payments showing more than the last five digits of the Lowe's branded GE Money Bank account number.

I state under penalty of perjury under the laws of the United States of America that the statements below are true:

*[CHECK ALL BOXES, IF TRUE]*

☑ I am (or the business that I am making the claim on behalf of is) a member of the Settlement Class as defined above and did not request to be excluded from the Settlement Class. *(check box if true)*

☑ I am or was (or the business that I am making the claim on behalf of is or was) a holder of a Lowe's branded GE Money Bank credit card between January 1, 2005 and March 24, 2008. *(check box if true)*

☑ I have (or the business that I am making the claim on behalf of has) made a payment at a new Lowe's store between January 1, 2005, and December 3, 2006 or between December 4, 2006 and March 24, 2008 at any Lowe's store. *(check box if true)*

☑ The information supplied by me in this Proof of Claim is true and accurate and executed under the pains and penalties of perjury. *(check box if true)*

Date Signed

| M M | D D | Y Y Y Y |
|-----|-----|---------|
| 0 4 | 2 6 | 2 0 1 1 |

☑ Signed Electronically

**Print Name**

First Name

| G | R | A | C | E | | | | | | | |

Last Name

| C | A | N | N | A | T | A | | | | | |

**IMPORTANT NOTICE:** If you did not receive a postcard providing you notice of this settlement or you are not on the settlement administrator's list of class members, you may still participate in this settlement *if and only if* you provide proof showing that you are a class member. The only acceptable proof under the settlement is the actual receipts for a payment at a new Lowe's store between January 1, 2005, and December 3, 2006, or at any Lowe's store between December 4, 2006, and March 24, 2008 showing more than the last five digits of the account number.

**THE SETTLEMENT ADMINISTRATOR MAY INVESTIGATE THE VALIDITY OF ANY AND ALL PROOFS OF CLAIM.**

LOW001002



February 23, 2011

Ben Barnow, Esq.
Barnow and Associates, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60602

Clerk of Court
U.S. District Court
Northern District of Illinois
219 South Dearborn
Chicago, IL 60604

Patrick Fischer, Esq.
Keating, Muething & Klekamp PLL
Suite 1400
Cincinnati, OH 45202

Re: *Schulte, et. al. v. Fifth Third Bank,* Case No. 1:09-CV-06655

Dear Sirs and Madams:

    Class member Sam P. Cannata ("Objector") hereby objects to the proposed settlement of the above-entitled class action for the following reasons:

    1.    This settlement consists of a $9,500,000.00 Settlement Fund and Fifth Third Bank implementing modifications to its business practices. The terms are as follows:

    a. Fifth Third Bank will pay Settlement Class Members from the residual of the Settlement Fund, which after deducting the attorneys' fee, costs and expenses ($3,167,000.00), incentive fees and the administrators fees is estimated to be about $6,000,000.00.

    b. Fifth Third will also implement the modifications to its business practices by: (1) not charging Debit Transactions to a customer's Fifth Third Account from the highest amount to the lowest amount, buy rather in chronological order, and (2) train all customer service representatives in the Fifth Third call centers on issues related to Overdraft Fees and other overdraft issues.

    In the Settlement Agreement, class counsel will seek legal fees and expenses from the Settlement Fund in the following amounts:

    a. Attorneys' fees, costs and expenses approved by the Court up to $3,167,000.00,

    b. Incentive awards up to $1,000.00 each to Plaintiff's representatives and

    c. Claims Administrator costs up to $270,000.00.

    2.    <u>Attorneys' fees are excessive.</u> Class Counsel justifies their Attorneys' fees using the percentage method. <u>Attorneys' Fees, Costs and Expenses ¶ ¶ 11.</u> Class

1

Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $3,167,000 million in fees, costs and expenses. Under the percentage method that is entirely too much compensation considering the relationship of the requested attorneys' fee to the amount of benefit being paid to the Class. A simple review of the numbers involved in this case clearly indicates that the requested fee is excessive. Even if 100% of the Settlement Fund is claimed by the Class (a highly unlikely eventuality), Class Counsel is asking for a fee representing 33 1/3% of the value of the $9,500,000.00 Settlement Fund and 34 1/3% after removing the costs incurred by the Claims Administrator incurred ($270,000.00) and the Incentive Awards from the calculation. If the claims rate in this case holds true to the historical average noted by numerous Federal courts, the amount paid to members of the class will be much less than the remaining $6,000,000.00 left in the Settlement Fund, and yield response rates of 10% or less. There is nothing in the facts of this case that would indicate that the claims rate is going to be significantly higher than the historical average. This means that the amount of cash that will be claimed and paid to class members is certainly unknown at this time, and may well be much less than $6,000,000.00; indeed, the amount claimed may be **less than** the $3,167,000.00 in attorneys' fees to be requested. Such a result would be neither fair nor reasonable and the total fee awarded should not exceed 25% of the cash portion of the settlement.

Furthermore, in addition, the $6,000,000.00 in potential cash it is clearly not a "Fund" since no monies will ever be paid except those that is actually claimed through written claim forms received from class members. As to this "Fund", any unclaimed amount of the **cash** will revert to a charity agreed upon by the Parties. The unclaimed amount of cash should be paid to the class members.

If it were truly a cash fund, the entire $9,500,000.00 would be distributed among the class members who filed claims.

Therefore, a significant portion, if not all of Class Counsel's fees, should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

Hence, the percentage method does not support Class Counsel's request for attorneys' fees and the Court should reject the settlement.

3.  The payment of attorneys' fees should be delayed. Class Counsel purports to request fees that are reasonable in light of the value of the settlement to Class Members. However, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much of the Fund is paid out to Class Members. Although $9,500,000.00 in cash is to be distributed, it is unlikely that anywhere near that amount will actually go to Class Members. In fact, it is likely that a significant portion of the Fund will actually go to a *cy pres* distribution. The Settlement Agreement provides "[i]f there are funds remaining in the Escrow Account after distributions are completed pursuant to Paragraph 30 of this Settlement, Fifth Third shall distribute all such remaining funds through the *cy pres* distribution. Settlement Agreement ¶ ¶31. Therefore, at this point in

2

time the Court does not know the exact amount that will be paid to the Class Members. Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.

This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure it that the attorneys' fees are reasonably related to the actual benefit received by the Class. This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation. *"Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by calculating class members' **actual use.** *Id.* Many courts are following the Federal Judicial Center guidelines to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the maximum potential amount of claims, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members.

In the instant case, cash is to be distributed, and this is, in effect, a claims-made settlement. Therefore, the Court should await a report detailing exactly the amount of monetary benefit received by the Class.

    4.   <u>Cy Pres Contributions</u>. The way that the Settlement Agreement is structured, it is likely that the majority of the benefit will go to as yet unspecified IRC Section 501(c)(3) charitable organization which will be mutually agreed between Fifth Third Bank and Class Counsel. What charitable organizations will be chosen, and how will that be determined? The Settlement Agreement is silent on this issue.

In addition, unclaimed funds should be paid to class members who made claims, not third parties. The American Law Institute ("ALI") recommends that unclaimed funds be paid to claimants, not *cy pres:*

§ 3.07 Cy Pres Settlements

(b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

Principles of the Law of Aggregate Litigation § 3.07 (b), p. 220 (Proposed Final Draft 2009). Of course, in this case the extra money could easily be given to claimants for

3

no additional costs by simply making the initial payments to claimants large enough so as to exhaust the fund. The ALI further reasons:

> [T]his Section generally favors cy pres awards only when direct distribution to class members is not feasible – either because class members cannot be reasonable identified or because distribution would involve such small amounts that, because of the administrative costs involve; such distributions would not be economically viable.

*Id.* cmt. (b), p. 221. Here it would clearly be economically feasible to make the distribution to claimants and they are easily identified – they made a claim. Even if giving this money to claimants would over compensate them (which it would not), the ALI draft finds that that would be preferable to giving the money to third parties:

> [A]ssuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions. This Section rejects the position urged by a few commentators that a cy pres remedy is preferable to further distributions to class members. Those commentators reason that further direct distributions would constitute a "windfall" to those class members. ... [T]his Section takes the view that in most circumstances distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* p. 222.

5.    "Clear Sailing" Provision. The Settling Parties agreed not to "engage in any conduct or make any statements, directly or indirectly, (a) to encourage, promote, or solicit Settlement Class Members or their counsel to request exclusion from the Settlement Class or to object to the Settlement, or (b) to facilitate, induce or cause the non-fulfillment of a condition or the occurrence of an event giving rise to a Party's right to terminate this Settlement. Settlement Agreement, ¶ ¶47. However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti* v. *DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts. "Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing

clauses). The Fifth Circuit has stated that "a district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

6.    Objector respectfully adopts and incorporates into these Objections and all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objector also reserve the right to supplement these Objections with other and fuller objections.

7.    Objector reserves the right to file supplemental Objections addressed to the attorneys' fee Motion when and if that Motion is filed with the Court. Objectors will rely on these written Objections, as well as the supplemental Objections to be filed addressing the specific fee request.

8.    Objector does not plan to attend the fairness hearing, but rather will rely on his written Objections.

9.    Objector objects to the requirement in the Notice requiring "a list of all other objections you have filed during the prior five (5) years" and "a list of all other objections filed by your attorneys during the prior five (5) years" since that information is not relevant to this matter.

10.    The Class Members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

9.    These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector. All of the legally required prerequisites material to these objections have been met.

10.    Attached hereto is the Claim Form of Objector.

WHEREFORE, Objectors respectfully request that this Court:

A. Sustain these Objections in full;
B. Require full written notice of the attorneys' fee request to the class members;
C. Deny approval for certification of this settlement class, for the reasons stated herein;
D. Deny approval of the settlement, for the reasons stated herein;
E. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

F.  Upon completion of the fairness hearing, enter such orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of this settlement.


Respectfully submitted,


Sam P. Cannata, Pro Se
9555 Vista Way, Ste. 200
Cleveland, Ohio 44125
(216) 214-0796

6

June 20, 2011

Office of the Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

Darryl J. May
Ballard Spahr, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Hassan A. Zavareei
Jonathon K. Tyko
Tyko & Zavareei LLP
2000 L St. NW, Ste. 808
Washington, D.C. 20036

Re: <u>Ramona Trombley, et al on behalf of themselves and all others similiarly situated</u>
<u>v. National City Bank, Case No. 1:10-CV-00232 in the United States District Court For</u>
<u>the District of Columbia</u>

Dear Sirs:

Class member Sam P. Cannata ("Objector") hereby objects to the proposed
settlement of the above-entitled class action for the following reasons:

## OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT

1. The parties should present evidence that would enable the Court to
determine the potential value of Class Members' claims. No such evidence has been
presented by the settling parties. The record before this Court does not support a
finding that the proposed settlement is fair, adequate and reasonable, and will provide
sufficient compensation to the affected customers of NCB. The absence of such
evidence demonstrates that the settlement is inadequate and, therefore, not deserving
of final approval.

The absence of any pre-settlement discovery shows that class counsel failed to
properly evaluate the merits of the claims at issue in this litigation. It also made it
impossible for class counsel to perform any reliable, independent analysis of the
potential class damages in this case. In fact, there is no evidence that any analysis was
performed prior to entering into the settlement. Under these circumstances, the Court
cannot sufficiently evaluate the adequacy of the proposed settlement, and final
approval is *not* appropriate. *See Reynolds v. Beneficial Nat'l Bank*, 238 F.3d 277, 280-
285 (7th Cir. 2002) (Seventh Circuit criticized approval of class settlement where
reliable damages estimate was lacking and warning of "the practice whereby the
defendant in a series of class actions picks the most ineffectual class lawyers to
negotiate a settlement with in the hope that the district court will approve a weak

1



RECEIVED
Mail Room

JUN 2 1 2011

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

settlement that will preclude other claims against the defendant."); *Reynolds v. Beneficial Nat'l Bank*, 260 F. Supp. 2d 680 (N.D. Ill. 2003) (declining to approve settlement on remand and disqualifying class counsel because they attempted to settle case without first undertaking sufficient discovery to estimate class damages); *In re Microsoft Antitrust Litig.*, 185 F. Supp. 2d 519, 526-527 (D. Md. 2002) (declining to grant preliminary approval to proposed class action settlement where the record contained insufficient "information by which to . . . reach a conclusion as to a reasonable range of value").

In lieu of presenting a reliable estimate of the NCB customers' damages in this case, the settlement proponents may to try to establish the settlement's "adequacy by analogy." Specifically, the settlement proponents will likely claim that the gross amount offered in this settlement ($12.0 million before deducting attorneys' fees, expenses and administrative costs) is greater (based on NCB's relative assets) than other recent settlements involving the same or similar circumstances, such as the $35 million settlement of claims involving Bank of America approved by a California state court in *Closson v. Bank of America N.A.*, Cal. Super. Ct. No. CGC 04436877.

However, this "adequacy by analogy" argument is no substitute for the "'effort . . . to quantify the net expected value of continued litigation to the class' required by the Seventh Circuit." As the *Microsoft* court explained:

> Assessment of the adequacy of a proposed settlement requires evaluation both of the value of the settlement and the value of the claims being settled...[T]he record contains sufficient information by which to evaluate the parties' respective contentions and reach a conclusion as to a reasonable range of value. However, as to the second factor in the equation, the parties have widely divergent views which, on the present record, are largely theoretical and have not been sufficiently tested.

185 F. Supp. 2d at 526. As in *Microsoft*, any valuation of the customers' claims put forward by the settlement proponents here is theoretical and not sufficiently tested.

Recently, Bank of America (the defendant in *Closson*) reached an agreement in principle to pay $410 million to resolve the claims pending against it in the MDL, which are similar to the claims at issue here. *See* Exhibit A attached hereto.

Also in August 2010, U.S. District Judge William H. Alsup (N.D. Cal.) issued lengthy findings of fact and conclusions of law in *Gutierrez v. Wells Fargo Bank*, in which he concluded that the very same practices at issue in this litigation were unlawful, and awarded California customers of Wells Fargo Bank approximately $203 million in restitution for that bank's wrongful practices. Even before Judge Alsup issued the $203 million restitution award in *Gutierrez*, the record in that case provided no support for the $12.0 million settlement amount here. After presiding over similar litigation against Wells Fargo, including issuing numerous opinions about the most significant legal issues presented, Judge Alsup refused to grant preliminary approval of a proposed settlement of $16 million for Wells Fargo's California account holders,

finding that "16 million is very low for a case where your expert said the damages were 200 million;" that plaintiffs had "a strong claim, not a weak claim;" that the proposed settlement was not "in the ballpark and even close to a reasonable settlement," calling it "a nonstarter in my judgment;" and strongly indicating that he would not consider approving any settlement that provided class members with a recovery of less than fifty cents on the dollar.

In any event, the fact that the class in *Gutierrez* prevailed on claims that are substantially similar to the claims raised in this case, after a bench trial, and were awarded $203 million in restitution, calls into serious doubt the adequacy of the $12.0 million proposed settlement here. This is especially so given that the restitution award in *Gutierrez* was limited to the very same practice at issue in this case—*i.e.*, the re-sequencing of debit card transactions. *See, e.g., Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sep. 11, 2008); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 2009 WL 1246988 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1246689 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1247040 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010); *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233885 (N.D. Cal. Mar. 26, 2010) and *See* Himmelstein Decl., Ex. B (Transcript of *Gutierrez* Proceedings, May 13, 2009), at 3:9- 6:18.

Likewise, U.S. District Judge James Lawrence King, (S.D. Fla.), who presides over the MDL litigation, found that the re-sequencing cases in the MDL have "legs," denying the bank defendants' omnibus motions to dismiss, and along with it, their principal legal defenses to liability. Himmelstein Decl., Ex. C (Order Ruling on Omnibus Motions to Dismiss). The MDL litigation, which now involves approximately 35 national banks, including the defendant in this case, and challenges the very same wrongful practices at issue here, has, as stated above, already resulted in the announcement of a $410 million settlement in principle involving one of the defendant banks.

Because this Court cannot tell whether this is a "good" or "bad" deal for the class, granting final approval would be improper.

2.      The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A plan of allocation of settlement proceeds in a class action must also be fair and reasonable."); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 2001 WL 1568856 *4 (N.D. Ill. Dec. 10, 2001) ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."). "The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir.1983). Here, the proposed fund distribution is unfair and unreasonable, in that it forces class members to choose up to

3

two months between July 1, 2004 and August 15, 2010 in which to claim a refund of overdraft charges, while proposing to release their claims for over six years of overdraft charges.

The Settlement Agreement does not offer any rationale or justification for failing to allocate the settlement proceeds in proportion to the damages sustained by class members over the entire class period, which runs from July 1, 2004 and August 15, 2010. The proposed two month period for claiming a refund of overdraft fees is manifestly unfair and inequitable, in that a class member who paid a larger total amount of overdraft charges over the entire class period will receive less compensation than a class member who paid a lower total amount of overdraft fees but incurred a larger portion of his fees during the proposed "two calendar month" limitation. For example, a class member who sustained $1,000 in improper overdraft charges over the class period, but no more than $100 in improper overdraft charges during any two calendar month period, would be allocated a portion of the settlement fund based on only $100 (*i.e.*, 10% of their damages), while a class member who incurred $200 in improper overdraft charges over the class period, but incurred them all within class settlement period, would be allocated a portion of the settlement fund based on twice this amount ($200), even though he sustained only 10% of the other class member's damages.

The Objector respectfully urges the Court to consider this issue anew for final approval. The Objector respectfully submits that the Court may be inadvertently combining the question of customers' surprise concerning the assessment of overdraft charges generally, with customers' surprise concerning the bank's concealed manipulation of their transactions—*i.e.*, the re-sequencing their transactions from high-to-low to artificially increase the number of overdraft charges assessed in a given day, which is the specific practice at issue in this case.

In *Gutierrez*, Judge Alsup declined to adopt Wells Fargo's expert's proposed damage analysis that purported to discount damages by eliminating so-called "chronic over-drafters" from the recovery class, and rejected "constructive knowledge" or "actual knowledge" inferences that Wells Fargo attempted to draw with respect to one of the named plaintiffs. Judge Alsup ordered full restitution for all Wells Fargo California customers for all excessive overdraft charges resulting from the bank's re-sequencing practice during the relevant class period. It is revealing of class counsel's inadequacy here that they posit this highly speculative argument without any supporting evidence or legal analysis, and are willing to discount the relief for the class members (producing clear inequities with respect to the proposed allocation of settlement funds) on the basis of this argument alone.

While courts have tolerated differences in the treatment of class members in terms of the distribution of settlement funds, they have done so only "when real and cognizable differences exist" between the "likelihood of ultimate success" for different plaintiffs. *In re Lucent Technologies, Inc., Securities Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004). This type of merit-based weighting has been approved by courts where substantially different or additional claims have been asserted by certain class members and not others. *In re PaineWebber LTD Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir.1981). No such differences exist here that

justify anything other than a straight *pro rata* allocation based on the damages sustained by each class member over the *entire* class period.

This misallocation of settlement funds is further amplified by the treatment of any funds remaining after the initial distribution. Instead of using the "excess" funds to reimburse class members for NCB's overdraft charges they incurred outside the narrow two calendar month period selected, the proposed settlement will use that money instead to pay up to treble damages to class members on charges that have already been fully refunded as part of the initial distribution or through an undisclosed *cy pres* recipient. Revised Settlement Agreement ¶31 b) (ii)-(iii).

Because the plan of allocation in the proposed settlement over-compensates some class members at the expense of others, with no justification for such differential treatment, it is flawed and should be rejected.

3.      The Seventh Circuit requires a district court to consider "the stage of the proceedings and amount of discovery completed at the time of settlement" in order to determine whether the settlement is "fair, reasonable and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). "This factor 'captures the degree of case development that class counsels have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." ' *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)).

Here, the docket reflects that no formal or informal discovery was conducted, and the settlement reached at the early stage of the proceedings suggests that none was conducted. The lack of discovery necessarily made it impossible for there to be "an adequate appreciation of the merits of the case before negotiating." *Id.* The failure to ascertain the merits prior to settlement cannot be cured by the 30-day period of "confirmatory discovery" under the Settlement Agreement. As one court explained, confirmatory discovery is an inadequate substitute for adversary discovery, which is meant to take place *prior* to settlement:

> In this case, no discovery occurred prior to negotiations. After a settlement was reached, confirmatory discovery was performed.... Confirmatory discovery, by its very nature, is not adversarial. In contrast, "pretrial negotiations and discovery must be sufficiently adversarial so that they are not 'designed to justify a settlement ... [but are] an aggressive effort to ferret out facts helpful to prosecution of the suit.'" *Martens v. Smith Barney, Inc.* 181 F.R.D. 243, 263 (S.D.N.Y.1998) (quoting *Saylor v. Lindsley*, 456 F.2d 896, 899 (2d Cir. 1972)). The absence of any adversarial discovery is a negative factor in persuading the Court of the wisdom of settlement, at this time, on these terms . . . .

5

*Moore v. Halliburton Co.*, 2004 WL 2092019, *7 (N.D.Tex. Sep. 9, 2004).

Here, the adversarial discovery that should have taken place *prior* to negotiation of the settlement never occurred; instead, class counsel engaged in a brief period of cooperative discovery – after the parties struck their deal – intended solely to justify the settlement. This factor weighs strongly against granting final approval.

4. The proposed claims form to offer class members a choice between "Option 1" and "Option 2" is not only confusing to class members, but is also misdirected and creates underlying problems.

There is no justification for forcing class members to unearth nearly six years of account statements, evaluate which period yielded the greatest amount of overdraft charges, when NCB could easily make that determination for each class member using the very same business records it intends to use to "verify" the claims once they are submitted, and deposit the appropriate amount directly into class members' accounts. The claims process in this settlement creates a paperwork nightmare relatively few class members will find worth the effort, only to be scrutinized by NCB before payout in any event.

Under both "Options," the proposed claims process improperly places the burden on the customer to make a claim instead of simply awarding all injured NCB customers restitution based on the bank's own records. The claims process will deter class members from submitting claims as it did the similar overdraft charge litigation against Wells Fargo which resulted in the payment of only 104 claims at $20 each, out of a gross "claims-made" settlement amount of $3,000,000. *See* Himmelstein Decl., Ex. D (Declaration of Daniel G. Lamb, Jr. re *Smith v. Wells Fargo Bank, N.A., et al.* Settlement), ¶¶ 12(c), 19.

5. The final approval hearing – scheduled *prior* to the close of the claims period – appears designed to avoid scrutiny of the functioning and fairness of the burdensome claims-made process which is at the very heart of the Objector's concerns. This sequencing ensures that the Court will be unaware of the claims rate and, hence, the effectiveness of the claims process, at the time of the final approval hearing. Such an approach impedes the Court's ability to evaluate the fairness of the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (reiterating that the "goal" of a final fairness hearing "is to adduce all information necessary for the judge to rule intelligently on whether the proposed settlement is fair, reasonable, and adequate.") (internal quotation marks and citation omitted).

This will deprive this Court of the ability to truly know – at the time of the final approval hearing – how many class members have actually availed themselves of the proposed benefits under this settlement and, conversely, how many class members found it too burdensome to complete and submit claim forms.

The settling parties' desire to hold the fairness hearing before the claims process is concluded is designed to camouflage a low response rate – a point which should raise a red flag with the Court. Under the current schedule, however, any

6

.

information submitted prior to the final approval hearing concerning the filing of claims will necessarily be tentative – and therefore inaccurate. The schedule improperly insulates the settling parties from judicial scrutiny of the success (or failure) of the claims process and, ultimately, of the adequacy of the proposed settlement.

Objector respectfully renews his request that the Court postpone any decision on final approval until after completion of the claims process, and order the settling parties to file a report with the Court shortly after completion of the claims period specifically identifying how many class members have submitted claims and the total amount of such claims, as well as the number of class members who have excluded themselves (*i.e.*, opted out) of the settlement.

6.    Settlement Class Counsel will ask the Court for Attorney's fees of up to but not more than 25% of the settlement fund ($3 million) along with payment of reasonable costs and expenses. National City agrees not to oppose this request. Notice §19, p. 7. However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis.

7.    The way that the Settlement Agreement is structured, it is likely that the majority of the benefit will go to as yet unspecified IRC Section 501(c)(3) charitable organization which will be mutually agreed between National City and Settlement Class Counsel. Revised Settlement Agreement ¶32-34. What charitable organizations will be chosen, and how will that be determined? The Revised Settlement Agreement is silent on this issue and the actual mechanism described in the Revised Settlement Agreement leaves many open questions.

In addition, unclaimed funds should be paid to class members who made claims, not third parties. The American Law Institute ("ALI") recommends that unclaimed funds be paid to claimants, not *cy pres:*

§ 3.07 Cy Pres Settlements

> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

Principles of the Law of Aggregate Litigation § 3.07 (b), p. 220 (Proposed Final Draft 2009). Of course, in this case the extra money could easily be given to claimants for no additional costs by simply making the initial payments to claimants large enough so as to exhaust the fund. The ALI further reasons:

> [T]his Section generally favors cy pres awards only when direct distribution to class members is not feasible – either because class members cannot be reasonable identified or because distribution would involve such small amounts that, because of the administrative costs involve; such distributions would not be economically viable.

*Id.* cmt. (b), p. 221. Here it would clearly be economically feasible to make the distribution to claimants and they are easily identified – they made a claim. Even if giving this money to claimants would over compensate them (which it would not), the ALI draft finds that that would be preferable to giving the money to third parties:

> [A]ssuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions. This Section rejects the position urged by a few commentators that a cy pres remedy is preferable to further distributions to class members. Those commentators reason that further direct distributions would constitute a "windfall" to those class members. ... [T]his Section takes the view that in most circumstances distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* p. 222.

8.     Objector reserves the right to file supplemental Objections addressed to any subsequent Motion filed with the Court. Objector will rely on these written Objections, as well as the supplemental Objections to be filed. Objector does not plan to attend the fairness hearing, but rather will rely on his written Objections.

## **CONCLUSION**

The proposed settlement is not fair, adequate or reasonable because: (i) the parties have not presented any reliable estimate of class members' damages to warrant settlement at this inadequate amount; (ii) the proposed plan of allocation is inequitable and unfair, in that it will overcompensate many class members while leaving others undercompensated; (iii) the settlement was negotiated with insufficient discovery to enable class counsel to determine the settlement value of the class' claims; (iv) the proposed claims process is unnecessary and unduly burdensome to class members; (v) there exists too much financial disparity and conflicts of interest to certify the class; (vi) any "clear sailing" provision should be disregarded; and (vii) the *cy pres* distribution is not appropriate given the circumstances of this case. For all these reasons, the settlement is not deserving of final approval.

Attached hereto is confirmation that the Claim Form of Sam P. Cannata has been submitted.

Respectfully submitted,

Sam P. Cannata
9555 Vista Way, Ste. 200
Cleveland, Ohio 44125

(216) 214-0796  Telephone

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Tornes, et al v. Bank of America, N.A.*
S.D. Fla. Case No. 1:08-cv-23323-JLK

*Yourke, et al v. Bank of America, N.A.*
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D Cal. Case No. 3:09-2186

### <u>NOTICE OF SETTLEMENT</u>

Plaintiffs and Bank of America, N.A., through their respective undersigned counsel, hereby notify the Court that on or around January 27, 2011, they executed a Memorandum of Understanding evidencing an agreement in principle, under which Bank of America will pay the total sum of four hundred ten million and 00/100 dollars ($410,000,000.00) in exchange for a full and complete release of all claims brought against Bank of America in this multidistrict litigation. The proposed settlement will be memorialized in a complete written settlement agreement and related documents, which the parties will endeavor to file with the Court as part of a motion for preliminary approval within approximately 45 days. The parties proposed settlement is expressly subject to and conditioned upon the completion of the written agreement, and obtaining preliminary and final approval from this Court.

Dated: February 4, 2011.

Respectfully Submitted,

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel: (305) 571-8550
Fax: (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, Florida 33134
Tel: 305-442-8666
Fax: 305-779-9596

/s/ Laurence J. Hutt
Laurence J. Hutt, Esquire
(*pro hac vice*)
Laurence.Hutt@aporter.com
Christopher S. Tarbell, Esquire
(*pro hac vice*)
Christopher.Tarbell@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213-243-4100
Facsimile: 213-243-4199

*Attorneys for Defendant*
*BANK OF AMERICA, N.A.*

-2-

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382


/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. DS 5343
dstellings@lchb.com
Roger Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, Florida 33137
brogow@rogowlaw.com

Trombley v National City Bank
No 1 10-CV-232

# National City Overdraft Settlement

**Home**     **FAQ's**     **Submit a Claim**     **Documents**     **Contact Us**     **Español**



Submit a Claim Online



Paper Claim Form

## Important Dates:

**June 27, 2011**

Deadline to request exclusion from the
Settlement

**June 27, 2011**

Deadline to object to the Settlement

**July 15, 2011**

Fairness Hearing

**August 26, 2011**

Deadline to submit a claim for benefits

## Submit a Claim

### Confirmation

Thank you Your claim has been successfully submitted Your Confirmation Code is.

**09B98F.** This Confirmation Code will also be sent to the e-mail address you provided Please keep this Code for
your records

Payments will be mailed to Settlement Class Members who submitted valid Claim Forms after the Court grants "final
approval" to the settlement and after any appeals are resolved If an appeal is lodged, resolution can take time
Please be patient It is your responsibility to update the Claims Administrator if you move or your contact
information changes (including e-mail address) If you have any questions, please visit www.NationalCityClass.com,
send an e-mail to info@NationalCityClass.com or call 1-866-960-5706

**Questions? 1-866-960-5706 or info@NationalCityClass.com**



© 2011 Epiq Systems Inc All rights reserved, | Privacy Policy | last updated March 25, 2011

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GEMELAS, et al., | ) | Case No. 1:08-cv-00236 |
| Plaintiffs, | ) | |
| vs. | ) | <u>CLASS ACTION</u> |
| THE DANNON COMPANY, INC., | ) | |
| Defendant. | ) | Judge Dan Aaron Polster |

## OBJECTION TO CLASS ACTION SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

Class members Robert Falkner, Wanda Cochran, Grace M. Cannata, Danette Loeffler, Michelle Ritchey, William (Buck) Price, Brad Henry and Sheila Lodwick[1] ("Objectors") hereby object to the proposed class action settlement and request for attorneys' fees. Objectors purchased Activia, Activia Light, DanActive and DanActive Light products during the class period.

### I.   NOTICE OF INTENT TO APPEAR

Objectors hereby give notice that they intend to appear and argue at the fairness hearing scheduled for June 23, 2010 at 12:00 p.m. in the United States District Court for the Northern District of Ohio.

### II.   THE PROPOSED SETTLEMENT DOES NOT CREATE A COMMON FUND

The Notice states that a $35 million "fund" is being created to pay the claims of

---

[1] Robert Falkner resides at 20826 Almar Rd. Shaker Heights, Ohio 44122; Sheila Lodwick resides at 13113 Spring Blossom Trail, Chesterland Ohio 44026; Wanda Cochran resides at 1044 Alta Vista Road, Louisville Kentucky 40205; Grace M Cannata resides at 23200 Bryden Rd. Beachwood Ohio 44122; Danette Loeffler resides at 15807 Valleyview Ave. Cleveland Ohio 44135; Michelle Ritchey lives at 4932 SW 19th St., Gainesville Florida 32608; Brad Henry resides at 6343 Spokane Ave, Chicago Ill. 60646, and William (Buck) Price resides at 4017 SW 28th Terrace Gainesville, Florida 32608.

class members in amounts between $15 and $100. Furthermore, the Notice advises of an additional $10 million cash fund that will be available if the claims filed exceed the $35 million amount. In fact, the use of the words "settlement fund" is not justified for either of these amounts, as the settlement does nothing more than require Defendant to give security for any and all claims submitted by members of the class in amounts between $15 to $100. If the claims rate in this case holds true to the historical average noted by numerous Federal courts, the amount paid to members of the class will be much less than either $45 million or $35 million in cash. See Sylvester v. CIGNA Corp., 39 F.Supp.2d 34, 52 (D. Me. 2005):

> Unfortunately, when this matter first came before the Court for preliminary approval in July, 2004, the Court was not independently aware (nor did any proponent of the settlement bring to the Court's attention) what the parties and the settlement administrator already knew – namely, that the 'claims made' settlements regularly yield response rates of 10% or less.

There is nothing in the facts of this case that would indicate that the claims rate is going to be significantly higher than the historical average. This means that the amount of cash that will be claimed and paid to class members is certainly unknown at this time, and may well be much less than $35 million; indeed, the amount claimed may be **less than** the $10 million in attorneys' fees to be requested.

The $45 million in potential cash is clearly not a "fund" for the following reasons:

1. The last $10 million of said "fund" will never be paid unless claims exceed $35 million (which in all likelihood they will not).

2. As to the $35 million "fund", no monies will ever be paid except those that are actually claimed through written claim forms received from class members. As to this "cash fund", any unclaimed amount of the **cash** will revert back to the Defendant. The charitable donations are not cash (but likely unused product of the Defendant), and they are not being paid to the class members.

If it were truly a cash fund, the entire $35 million would be distributed among the class members who filed claims.

The settlement could, and should, be amended to provide some minimum guaranteed payment, or "floor", that the Defendant will have to pay regardless of the claims rate. If the claims submitted do not reach the floor, then the difference between the amounts claimed and the amount of the floor can be distributed in cash *pro rata* to those who have filed claims; or, that amount of **cash** could be distributed to appropriate charities in the form of a *cy pres*, as was done in the case of <u>Moulton v. U.S. Steel Corp.</u>, 581 F.3d 344 (6th Cir. 2009). Objectors suggest that this floor be set at the amount of at least $25 million. This would cause the Defendant to make a known payment amount (actual payment in cash) in consideration for release of the class' claims; it would also constitute an actual cash fund out of which a percentage attorney fee could be awarded.

### III.    IF THE PERCENTAGE OF FUND METHOD IS UTILIZED BY THIS COURT, ATTORNEYS' FEES SHOULD NOT EXCEED 25% OF THE AMOUNT ACTUALY RECEIVED BY THE CLASS.

This is a "claims made" settlement, so the only "fund" that can result is the amount of cash that is actually paid to class members who file claims. Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorneys' fees. They do not simply use the amount made available to the class when calculating a percentage attorneys' fee, but they wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. See <u>e.g.</u>, <u>In re Compact Disc Minimum Advertised Price Litig.</u>, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay awarded of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

In re Compact disc Minimum Advertised Price Antitrust Litig., 292 F. Supp.2d 184 189-90 (D. Me. 2003) (Hornby, D.J.).

The procedure urged by class counsel has been universally rejected by federal courts, and was termed a "fiction" and "pure fantasy" by the Northern District of California. In Yeagley v. Wells Fargo & Co., 2008 U.S. Dist. LEXIS 5040 (N.D. al. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorneys' fees:

> Class counsel contend that the Court must consider the amount Wells Fargo could have paid under the settlement in determining the common fund for the purpose of attorney's fees. They argue that under the Ninth Circuit's decision in Williams v. MGM-Pathe Communications Co., 129 F.3d 1026 (9th Cir. 1997), the court must find that since 3.8 million class members could have made a claim for a free tri-merged credit report, the value of the recovery, that is, the common fund, is at least $114 million … Williams does not require this court to adopt the fiction that the settlement is worth $114 million … Williams, in contrast, was a settlement of a securities-fraud class action for $4.5 million in cash …

> Class counsel's $114 million figure is pure fantasy. Counsel does not offer a shred of evidence that suggests that the parties reasonably believed that Wells Fargo would actually pay anything near that

> 4

> amount, and the Court finds that they did not … To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the

needs of the class.  In this case, for example, the one percent claim
rate demonstrates that the brochure did not effectively educate the
claim members about the importance of credit reports and monitoring
their credit … Common sense dictates that a reasonable fee in a class
action settlement is a fee that takes into account the actual results
obtained.

Id. at *20-28.  The court in <u>Yeagley</u> went on to award class counsel a fee of $325,000, or

25% of the value of claimed settlement benefits plus attorneys' fees, a figure that was

Approximately one-third of class counsel's claimed lodestar.  <u>See also</u> <u>Managing Class</u>

<u>Action Litigation: A Pocket Guide for Judges</u>, Federal Judicial Center 2005.

The Supreme Court in <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472 (1980),

distinguished its holding in that case from settlements like the one currently before

this Court.

The District Court explicitly ordered that "plaintiffs in behalf of
all members of the plaintiff class … shall recover as their damages
herein from the defendants the principal sum of $3,289,359 together
with interest …"  **Nothing in the court's order made Boeing's
liability for this amount contingent upon the presentation of
individual claims.**  Thus, we need not decide whether a class-
action judgment that simply requires the defendant to give
security against all potential claims would support a recovery
of attorneys' fees under the common-fund doctrine.

<u>Boeing</u>, 444 U.S. at 479 n. 5 (emphasis added).

This settlement is identical to the one the Supreme Court expressly exempted

from its holding in footnote 5 in Boeing.  Here, Defendant has agreed to give security

against claims filed by class members, up to a maximum of $45 million, but experience

shows that much less than that is likely to be claimed.

The Sixth Circuit has refused to calculate attorneys' fees on a percentage of the

final methodology where no true common fund is created.  <u>See</u> <u>Geier v. Sundquist</u>, 372

F.3d 784, 789 (6th cir. 2004).  Where a court is purporting to award attorneys' fees under

a common fund method, the first inquiry is whether a common fund has been created, and whether attorneys' fees will be taken from that fund.  <u>Geier</u>, 372 F.3 at 790.  In this case, the answer to both of those questions is no.

This case is clearly distinguishable from cases in which any remainder of unclaimed **cash** is paid to a *cy pres* recipient, in **cash**, with the result that no amount of the settlement **cash** reverts to the defendant.  <u>See</u>, <u>e.g.</u>, <u>Moulton v. U.S. Steel Corp.</u>, <u>supra</u> (unclaimed settlement funds paid to public schools).  Here, any amount of the **cash** that is not paid to the class through the claims process will revert back into the pocket of Defendant.

Ideally, the Court should defer ruling on class counsel's attorneys' fees until the claims deadline, or October 1, 2010.  This delay of  approximately 3 ½ months after the fairness hearing will be well worth the wait, as it will permit the Court to make an accurate fee award based upon the amount that the class actually receives, rather than the fiction of the "ceiling" agreed to by Defendant, and will insure that class counsel's fee is no more than a reasonable 25% of the total amount paid out by Defendant.

6

**IV.**	**ANY FEE AWARDED PRIOR TO KNOWING THE SIZE OF THE "FUND" PAID TO THE CLASS MUST BE LIMITED TO A LODESTAR CALCULATION.**

As there is no "settlement fund" that can be accurately quantified prior to knowing the claims data, any fee awarded at this time should be limited to a lodestar calculation.  And based on the very recent United States Supreme Court case, <u>Perdue v. Kenny A. ex rel. Winn</u>, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010), the Court should be reluctant to award any multiplier of the lodestar unless a judgment is made that

the hourly rates applied are inadequate.  Although this recent decision related to a
statutory fee award under 42 U.S.C. §1988, <u>Perdue</u> has been interpreted and
applied more generally to apply to a class action settlement of this type.  In fact, in this
very district, <u>Perdue</u> has been applied by U.S. District Court Judge James Gwin to apply
to a "claims made" settlement similar to this case:

> As the Supreme Court has recently cautioned, however, courts should
> hesitate to employ a multiplier, especially when the factors supporting
> a multiplier have already been considered in the underlying lodestar
> calculation.  <u>Perdue v. Kenny A. ex rel. Winn</u>, --- U.s. ---, 2010 WL
> 1558980, at *8 (April 21, 2010).  Although decided in the context of
> statutory fee shifting under 42 U.S.C. Section 1988, <u>Perdue</u> nevertheless
> provides persuasive caution that multipliers must be reserved for 'rare'
> and 'exceptional' circumstances.  <u>Id.</u>  Although this Court does not
> read <u>Perdue</u> to prohibit the use of multipliers in class actions, the
> case does suggest that enhancements are atypical and should not
> duplicate the same considerations affecting the lodestar rate.

> <u>Shannon Van Horn et al. v. Nationwide Property & Casualty Ins. Co., et al.</u>, Case
> No. 1:08-605 (N.D. Ohio, 2010), Docket No. 308, p. 10.

In that case, which was a claims-made class action settlement, Judge Gwin awarded a
lodestar multiplier of approximately 1.2.  Any multiplier awarded in this case should not
exceed 1.2.

7

## V.    THE TERMS OF THE PROPOSED SETTLEMENT ARE INADEQUATE AND WORTH MUCH LESS THAN REPRESENTED IN THE NOTICE.

The proposed settlement is inadequate and misleading for the following reasons:

A.    The class consists of **past** purchasers who have either overpaid for the
product, or been falsely induced to purchase the product in the first place.  Those class
members have been financially damaged, and have a clear claim for money damages.

The prospective (injunctive) relief will in no way compensate for those damages. The prospective relief benefits only an unknown class of future purchasers. Given that the health claims as to "immunity" etc. are now called into question, it is possible, if not likely, that many of the class members will no longer purchase these products. Therefore, this prospective relief should not be included in any calculation of benefits being provided to the actual settlement class.

B.      The injunctive relief itself is inadequate, as it is limited to only three years. Given the important nature of these allegations, why should the Defendant be released from these obligations after some artificial, three-year period of time? The injunctions should be permanent.

C.      As virtually no one keeps their grocery receipts for items like yogurt, there will be very few, if any, $100 claims. In effect, the maximum claim will be $30. Even for that $30, you must file a claim form and swear to the truthfulness thereof. Accordingly, nowhere near $35 million is going to be claimed from this "fund". Of course, the $35 million is not a "settlement fund" at all; it is only a guarantee to pay claims up to that amount.

D.      The "extra" $10 million will likely never be paid, because the claims will likely not exceed $35 million.

E.      Presuming that the charitable donations will be valued at the retail price, these donations will be worth much less than the cash they are replacing. The Complaint in this case seems to indicate a mark-up in the 30%-40% range and, in fact, the "cost of production" will be even less than that. In addition, money donated to a charity can be used for more efficiently and for more benefit (because of its liquidity) than donation of a

physical product like yogurt.  Objectors suggest that any charity would be more interested in receiving 25 cents on the dollar in cash as compared to 100 cents at retail price for perishable yogurt.  In fact, it is highly doubtful if a charity could sell the donated yogurt for 25 cents on the dollar.  Accordingly, the charitable donations, which do not even go to the class members, are worth no more than 25% of the cash payments that it replaces.  In other words, if $20 million in physical product is donated to charities, that product represents an equivalent cash value of no more than $5 million.

## VI.    RESERVATION OF RIGHT TO SUPPLEMENT OBJECTIONS.

As the fee petition has not even been filed as of the objection deadline, objectors reserve the right to supplement these Objections as to attorneys' fees until such time as the Motion for Fees is filed.

WHEREFORE, the Objectors request the following relief from the Court:

A.  That the Court sustain each and every of these Objections;

B.  That the Court wait to award attorneys' fees until such time as

the Court can be told what amount was actually paid in cash to the class; or that the Court award attorneys' fees based only on the lodestar method, and not the percentage of fund method;

C.  That the Court apply no multiple to the  lodestar submitted by class counsel;

D.  That the Court require a minimum cash payment of $25 million to the class;

E.  That the three-year injunction be made permanent; and

F.   That any donations of yogurt product to charities be valued at no more than 25% of the cash value they are replacing.

Respectfully submitted,

  /s/ Edward F. Siegel                          
Edward F. Siegel (Ohio Bar 0012912)
27600 Chagrin Blvd., Suite 340
Cleveland OH 44122
(216) 831-3424
(216) 831-6584 fax
efsiegel@efs-law.com

EDWARD W. COCHRAN (0032942)
20030 Marchmont Road
Shaker Heights, Ohio   44122
216.751.5546 Voice
216.751.6630 Fax
edwardcochran@wowway.com

Sam P. Cannata
9555 Vista Way Ste. 200
Garfield Hts., Ohio 44125
Voice:          (216)   587-0900
E-mail:scannata@snider-cannata.com

Attorneys for Objectors Robert Falkner, Wanda Cochran, Danette Loeffler, Grace M. Cannata, Michelle Ritchey, William (Buck) Price, Brad Henry and Sheila Lodwick

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed with the Court's electronic system on this 24th day of May, 2010 and was by such system filed on all other counsel of record.

By:  /s/ Edward F. Siegel