IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Kentucky Grilled Chicken Coupon* ) | |
| *Marketing & Sales Practices Litigation*, ) | |
| ) | No. 09 C 7670 |
| ) | MDL 2103 |
| THIS DOCUMENT RELATES TO ) | |
| ALL CLASS ACTIONS ) | |

FINAL APPROVAL OF CLASS ACTION SETTLEMENT

JAMES F. HOLDERMAN, Chief Judge:

On February 4, 2010, plaintiffs Christine Doering, James Asanuma, Veronica Mora, Kay Ready, and Daleen Brown (collectively "Plaintiffs"), on behalf of themselves and a purported nationwide class of over five million individuals, filed a "Master Consolidated Class Action Complaint" in this multidistrict class action lawsuit against defendants KFC Corporation ("KFC") and Yum! Brands, Inc. ("Yum!") (together "Defendants"). (Dkt. No. 18 ("Master Complaint").) In short, Plaintiffs allege that Defendants failed to honor a coupon offer for a free "Kentucky Grilled Chicken" ("KGC") meal in early May 2009. Plaintiffs' allegations regarding Defendants' May 2009 free product giveaway include claims for breach of contract (Count I), common law fraud (Count VI), and violations of the consumer protection statutes of Illinois, Michigan, and California (Counts II-V & VII).

On August 16, 2011, this court preliminarily approved the proposed settlement set forth in the parties' "Stipulation of Class Action Settlement, as Amended" (Dkt. No. 108-1 ("Settlement Agreement")), as well as the parties' plan for giving notice to potential class members. (Dkt. No. 102.) On October 25, 2011, class member Jill K. Cannata ("Cannata") timely filed her objections to the proposed settlement. (Dkt. No. 104 ("Cannata Objs.").)

1

Plaintiffs thereafter filed a "Motion & Memorandum in Support of Final Approval of Class Action Settlement, and Approval of Attorneys' Fees and Incentive Award," (Dkt. No. 108 ("Pl.'s Mot.")), in which Plaintiffs specifically addressed Cannata's objections. Plaintiffs also noted that they had received no other objections to the proposed settlement and only two requests for exclusion from the settlement class. (*Id.* at 2.)

On November 30, 2011, the court held a fairness hearing to assess the propriety of the proposed settlement under Federal Rule of Civil Procedure 23(e)(2). [No objectors appeared at the November 30, 2011 fairness hearing.] Counsel for Plaintiffs and Defendants were given the opportunity to address the court regarding the fairness, reasonableness, and adequacy of the proposed settlement, and to respond orally to Cannata's objections—including Cannata's "Supplemental Objections," (Dkt. No. 110 ("Supp. Objs.")), which were filed on November 27, 2011. Having considered in detail the provisions of the proposed settlement, the written objections thereto, and the arguments of counsel in support thereof, the court found on November 30, 2011, that the proposed settlement represents a fair, reasonable, and adequate resolution of the claims set forth in Plaintiffs' Master Consolidated Class Action Complaint. This written opinion and order supports and explains the court's November 30, 2011 holding.

I.  General Settlement Terms

The Settlement Class in this case, approved by separate court order issued simultaneously with this court order, consists of:

All persons who:

(a) downloaded an Original or PDF Coupon between May 5, 2009 at 9 a.m. central time and May 6, 2009 at 11:59 p.m. central time from Oprah.com or unthinkfc.com, and

2

      (b)    did not receive

            (i)    the KGC Free Meal pursuant to the Original Coupon, the PDF Coupon, or the Raincheck Coupon,

            (ii)    a "Chicken Check" or other compensation from KFC in response to a complaint concerning the Oprah Promotion, or

            (iii)    a free meal or other consideration at a restaurant unaffiliated with Defendants that agreed to accept the KGC Coupons.

(*See* "Final Approval of Class Certification" Order at 1-2.)[1]

    Pursuant to the terms of the Settlement Agreement, each Settlement Class member who was denied the opportunity to redeem an Original Coupon and who submits a valid claim by January 30, 2012, will receive the full face value ($3.99) of the unredeemed Original Coupon, with a limit of up to four coupons per household ($15.96). Settlement Class members who possess generic PDF coupons are eligible to receive $2.00 per PDF Coupon, and Settlement Class members who no longer possess the coupons they downloaded are eligible to receive $1.00 per coupon. In exchange, Settlement Class members agree to release Defendants and their affiliates from all known and unknown claims related to the KGC product giveaway.

    The court has received no objections to these general settlement terms, and the court finds these terms to represent a fair, reasonable, and adequate resolution of Plaintiffs' claims, made at arm's length between the parties, and taking into account the benefits of continued litigation to Plaintiffs as compared with the benefits offered by the Settlement Agreement. Continued litigation of the claims at issue in Plaintiffs' Master Complaint and of Defendants'

---

[1] All capitalized terms given the same meaning as set forth in the Settlement Agreement.

affirmative defenses— including the potentially re-opened issue of class certification, additional discovery between the parties, summary judgment briefing, trial, and likely appeal—is certain to be expensive, time consuming, complex, and risky for both parties. Defendants' offer of face value damages in exchange for any unredeemed Original Coupons represents a substantial recovery by Plaintiffs on behalf of the Settlement Class. Moreover, in light of the legal and factual uncertainties faced by Plaintiffs and the Settlement Class, the limitation of four coupons per household and the reduced recovery for class members who possess no physical coupons (or only PDF Coupons) is both reasonable and fair.

II.     Notice Provisions

On August 16, 2011, the court approved the parties' plan for notifying all potential class members of the proposed class action settlement and of the November 30, 2011 fairness hearing. In accordance with the approved notice plan, the parties—through professional settlement administrator Rust Consulting, Inc.—published a summary notice of the proposed Settlement Agreement, (Dkt. No. 99-1, Ex. A ("Summary Notice")), in a 2/5 page advertisement in *Parade* magazine on September 11, 2011, which was then inserted in the Sunday edition of nearly 600 daily newspapers nationwide. (*See* Dkt. No. 108-12 ("Declaration of Kim Schmidt") ¶ 6.) The parties also engaged in an Internet advertising campaign from September 1, 2011 through September 30, 2011, through use of the 24/7 Real Media Network, resulting in approximately 18,000,765 "impressions" of the banner ads developed by Rust Consulting, Inc. to inform potential class members of the proposed Settlement Agreement. (*Id.* ¶ 5.) Additionally, from September 27, 2011 through October 26, 2011, the parties engaged in a "keyword campaign," in which certain searches performed through Google Advertising Partners and Bing Search

Marketing resulted in 3,221 "impressions" of text ads linking to the Settlement Website. (*Id.* ¶ 7.) The Settlement Website (www.couponmarketinglitigation.com) has made available to viewers the following information: (1) the Summary Notice approved by the court (in both English and Spanish); (2) the Detailed Notice approved by the court (Dkt. No. 99-1, Ex. B); (3) the Claim Form approved by the court (Dkt. No. 99-1, Ex. D); (4) the Settlement Agreement; and (5) the Preliminary Approval Order. (*Id.* ¶ 8.)

The court has received no objections to the notice provisions of the Settlement Agreement, and the court finds that the notice provisions comport with due process and governing law, insofar as the parties have provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute.").

III.   Additional Payment Provisions

In addition to the claims submitted by Settlement Class members, Defendants have also agreed to pay additional costs of settlement. Specifically,

> Defendants agree to pay up to $1.575 million ($1,575,000) (the "Available Amount") for (i) Valid Claims . . . submitted by Settlement Class members pursuant to Paragraph 5 of [the Settlement Agreement], (ii) notice to the Settlement Class, (iii) administrative costs of the settlement, (iv) Class Counsel's attorneys' fees and costs; and (v) incentive awards to Plaintiffs.

(Settlement Agreement ¶ 4.) In no event will payments made by Defendants exceed $1.575 million. (*Id.*) Accordingly, if the Available Amount minus payments for attorneys' fees, incentive awards, and the costs of notice and administration is less than the total amount of Valid Claims submitted, the amount paid to each Settlement Class member will be reduced by a *pro*

*rata* amount. (*Id.*; *see also* ¶ 5(f).) If the total amount of claims, attorneys' fees, incentive awards, and the costs of notice and administration is less than the Available Amount, KFC will make a cash donation equal to the remaining Available Funds as follows: Feeding America (50%); the Illinois Bar Foundation (25%); and the Chicago Bar Association (25%). (*Id.* ¶ 5(g).)

Cannata has objected to the amount of attorneys' fees requested, as well as the cy pres distribution outlined in the Settlement Agreement. The court addresses each of these objections below.

  A.  <u>Attorneys' Fees</u>

Cannata first objects that she has been unable to assess the reasonableness of the requested attorneys' fees, because no billing sheets have been provided to the Settlement Class for its review. (Cannat Objs. 6-7.) Cannata seeks an opportunity to review the requested attorneys' fees in conjunction with detailed billing sheets submitted by Class Counsel before the court approves any requested attorneys' fees. (*Id.* at 7.) The court rejects Cannata's request. Class Counsel undertook to represent Plaintiffs on a contingency fee basis in this litigation. (Pls.' Mot 19; *see also* Dkt. No. 108-2 ("Declaration of Michael J. McMorrow") ¶ 14.) Detailed billing records are therefore not required to assess the reasonableness of Plaintiffs' requested attorneys' fees.[2] Rather, "[t]he approach favored in the Seventh Circuit is to compute attorney's

---

[2] Although not required, Plaintiffs have argued in the alternative that their request for attorneys' fees is reasonable under the lodestar method and have submitted evidence demonstrating that the work performed by Class Counsel and the Plaintiffs' Steering Committee would have been billed at $554,348.50 based on the hourly rates for the attorneys and legal staff involved. (*See* Pls.' Mot. 22-25.) The court need not address this alternative argument, having accepted Plaintiffs' position that the "common benefit approach" to attorneys' fees is appropriately applied in this class action litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("the district judge has discretion to choose between the lodestar and percentage-of-fund approaches").

fees as a percentage of the benefit conferred upon the class." *Williams v. Gen. Elec. Capital Auto Lease*, No. 94 C 7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995) (Lefkow, J.) (citations omitted). Cannata also concedes in her supplemental objections that "Class Counsel may request a percentage of what the Class receives." (Supp. Objs. 5.) The court therefore proceeds to analyze the reasonableness of Plaintiffs' requested attorneys' fees as a percentage of the benefit conferred upon the Settlement Class in this case.

Cannata next objects to Plaintiffs' requested attorneys' fees as an unreasonable percentage of the common benefit received by the Settlement Class. Cannata argues that the common benefit to Settlement Class members is $1,218,000. To arrive at this number, Cannata begins with the $1,575,000 Available Amount to be paid by Defendants and subtracts $357,000 for the costs of notice and administration of the settlement.[3] Cannata then calculates that the requested attorneys' fees in the amount of $515,000 represent 42% of this "actual" benefit to Settlement Class members. (Cannata Objs. 7.) Finally, Cannata argues that this percentage is "grossly above the usual benchmark many courts begin with," although she cites no legal authority in support of this argument. (*Id.*) It is Cannata's position that "the attorney fee award should be a reasonable percentage of no more than $1,218,000.00 of benefits actually going to the Class," although Cannata does not suggest any specific percentage that she believes is reasonable. (Supp. Objs. 7.)

Plaintiffs, on the other hand, contend that the common benefit to Settlement Class members in this case is the total $1,575,000 Available Amount, and that the requested attorneys'

---

[3] Pursuant to the Settlement Agreement, "The Settlement Administrator shall be compensated from the Available Amounts up to a maximum of $357,000 for all notice and administration costs." (Settlement Agreement ¶ 10(a).)

fees in the amount of $515,000 represent only 32.7% of the common benefit to Settlement Class members. (Pls.' Mot. 32.) It is Plaintiffs' position that this percentage "is well within the market rate and facially reasonable." (*Id.* at 22.)

Cannata's argument that administrative costs should not be viewed as a "benefit" to the Settlement Class has some intuitive appeal, insofar as no Settlement Class member will actually receive any cash value from these payments. Cannata is also correct that, in the case before this court, the administrative costs of the settlement have the potential to "raid, and reduce in size, the total funds available for class compensation." (Supp. Objs. 6.) At first blush, such costs do not appear to be a "benefit" to the Settlement Class. Moreover, calculating attorneys' fees on the basis of administrative costs only exacerbates this situation. On the other hand, "it must also be recognized that the intended benefit of this type of litigation is not to be found in individual class member[s'] awards." *Williams*, 1995 WL 765266, at *10. Here, as in all class action settlements, the administrative costs of the settlement are necessary to achieve its overall success. For example, while the costs of notice certainly benefit Defendants from the standpoint of claim preclusion, they also benefit Settlement Class members by alerting individuals to their potential right to recover. Likewise, the costs of administering the settlement fund accrue to the Settlement Class members, as well, by creating a mechanism for recovery. These costs can therefore be viewed as benefitting the Settlement Class as a whole.

Neither Plaintiffs nor Cannata cite any case law directly on point in support of their respective positions. In the recent case of *In re: Aqua Dots Products Liability Litigation*, cited by Cannata, the Seventh Circuit did suggest that counsel should avoid the high transaction costs of class action litigation in general—including the costs of notice and attorneys' fees—when

8

recovery can be had through other means. 654 F.3d 748, 752 (7th Cir. 2011).[4] The Seventh Circuit did not, however, address the question of whether it is appropriate to base attorneys' fees on the administrative costs of class action litigation. In other cases cited by Cannata, the requested attorneys' fees were unquestionably larger than the actual payments made to the settlement class—even without the inclusion of administrative costs. *See, e.g., In re: HP Printer Litigation*, No. 5:05-cv-3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (rejecting attorneys' fees in the amount of $2.3 million when "the ultimate value of the settlement to the class is roughly $1.5 million"); *Create-A-Card, Inc. v. Intuit, Inc.*, No. C07-06452 WHA, 2009 WL 3073920, at *2-3 (N.D. Cal. Sept. 22, 2009) (rejecting attorneys' fees in the amount of $550,000 when "the total recovery will be approximately $491,357.68"). That is not the case in this litigation, where the claims being paid out to Settlement Class members could potentially be as much as $678,000.[5] On the flipside, this case is distinguishable from *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) (Wilkerson, M.J.), cited by Plaintiffs, where the plaintiffs sought attorneys' fees worth only 4.7% of the total value of the settlement. Also distinguishable is the case of *Hartless v. Clorox*

---

[4] In *Aqua Dots*, the proposed class action plaintiffs sought a refund for allegedly defective products they had purchased. At the same time, however, the defendants had already offered to the general public a recall and refund program for the same products. In affirming the district court's denial of class certification, the Seventh Circuit held that the proposed class representatives did not fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4), because they sought "relief that duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class." *Aqua Dots*, 654 F.3d at 752. In this case, by contrast, there is no suggestion that the Raincheck Coupons initially offered by Defendants are still available to any potential class members.

[5] Based on administrative and notice costs in the amount of $357,000, incentive fees in the amount of $25,000, and attorneys' fees in the amount of $515,000.

*Co.*, where the court recognized the appropriateness of basing attorneys' fees on the "entire settlement fund," including notice and administration costs, in cases "where attorneys' fees are paid separately from the claim fund." 273 F.R.D. 630, 645 (S.D. Cal. 2011). Here, by contrast, the requested attorneys' fees have the potential to directly impact the funds available for payment of claims submitted by the Settlement Class.

In the case of *Taubenfeld v. Aon Corp.*, the Seventh Circuit recognized the appropriateness of relying on "analogous class action settlements" to determine the reasonableness of attorneys' fees, noting with approval the district court's reliance on "a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund." 415 F.3d 597, 600 (7th Cir. 2005); *see also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (requiring the district court to "determine a reasonable attorneys' fee for Counsel to be paid out of the common fund"). Unfortunately, in neither opinion does the Seventh Circuit clearly explain the exact nature of the "settlement fund" or "common fund" at issue, nor its component parts.[6] It is nevertheless this court's understanding that the common-fund doctrine applies to the entire sum recovered by class counsel for purposes

---

[6] Although the opinion in *Sutton* refers to both the "gross settlement amount" and the "net settlement amount . . . a figure that excluded expenses," the court did not distinguish between these two figures in its use of the term "common fund." *Sutton*, 504 F.3d at 690-91. Other cases from the Seventh Circuit describe a "common fund" only as "[a] fund that has been established for the benefit of the plaintiffs," without further elaboration. *Cook*, 142 F.3d at 1011 (noting that attorneys are expected to "petition the court for compensation" from the common fund); *see also Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988) (same). The Supreme Court has likewise consistently recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, however, it is clear that the attorneys' fees at issue were assessed against a fund consisting only of money representing the defendant's "liability to the class as a whole." *Boeing*, 444 U.S. at 475.

10

of settling a class action lawsuit. *See Skelton*, 860 F.2d at 252 ("In this type of case, the defendant deposits a specified amount with the court for the benefit of the class in exchange for release of its liability. The attorneys' fee award is then taken as a share of the fund . . . ."). Because the costs of class action litigation necessarily include the costs of notice, administration of the settlement fund, incentive awards, and attorneys' fees, and because the settling defendants in these types of lawsuits have agreed to pay these costs "in exchange for release of [their] liability," the court finds that such costs are reasonably viewed as having been paid "for the benefit of the class." *Id.*

In this case, as in *Taubenfeld*, Plaintiffs have outlined in detail the strengths of their case, the risk of non-payment undertaken by Class Counsel, and the normal rate of compensation for similar class action litigation. *Taubenfeld*, 415 F.3d at 600 (citing *In re Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir.2001) (" Synthroid I ")) (*see also* Pls.' Mot 11-14, 18-22). As a general matter, the court is persuaded that the requested attorneys' fees in this case represent a reasonable approximation of the market price for the legal services offered by Class Counsel. The court finds that Plaintiffs' contingent agreement with Class Counsel for fees worth "one-third of the total recovery plus reimbursement of all costs and expenses with interest," (Declaration of Michael J. McMorrow ¶ 14), is reasonable in light of the significant risk of non-payment to Class Counsel and Class Counsel's having brokered a settlement with the potential to afford complete relief to thousands of Settlement Class members. The fact that Plaintiffs have actually requested only 32.7% of the settlement fund, for purposes of satisfying the agreed upon cap of $515,000 on attorneys' fees and expenses in this case, further supports the reasonableness of Plaintiffs' request.

The court rejects Cannata's contention that the amount of funds actually available to the Settlement Class "fail[s] to provide any meaningful benefit" to the individual members of the Settlement Class. (Cannata's Objs. 7-9.) Having approved attorneys' fees and costs in the amount of $515,000, the Available Amount remaining for payment of Settlement Class members' claims is $678,000. This figure is enough to provide (1) full relief ($3.99) for approximately 169,925 Settlement Class members who retained an Original Coupon for more than two years and did not receive the benefit of a KGC Free Meal; (2) partial relief ($2.00) for 339,000 Settlement Class members who retained a PDF Coupon for more than two years and did not receive the benefit of a KGC Free Meal; (3) full relief ($1.00) for 678,000 Settlement Class members who did not retain any coupons, but nevertheless did not receive a KGC Free Meal; or infinite combinations of the above classes of claimants. While it is true that Plaintiffs initially alleged that more than 5.7 million coupons have yet to be redeemed, (Master Complaint ¶ 70), the court finds it highly unlikely that more than 1 million claimants will assert a right to the available claim funds—in large part because the customers who were most motivated to receive a KGC Free Meal had an opportunity to do so through the Raincheck Coupon offer. This case is distinguishable from *Mirfasihi v. Fleet Mortgage Corporation*, cited by Cannata, where the settlement denied "any relief to an entire class." 356 F.3d 781, 785 (7th Cir. 2004). Rather, the Settlement Agreement in this case is structured to ensure that all potential class members receive at least a *pro rata* share of the available settlement funds. As such, the Settlement Agreement represents a meaningful benefit to the Settlement Class members.

B. Cy Pres Distribution

Cannata also argues that the cy pres distribution set forth in the Settlement Agreement

does not fulfill the purposes of the underlying class action and has not been put to the "next best use." (Cannata Objs. 9.) The court disagrees. "In the class action context the reason for appealing to cy pres is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement . . . to the class members." *Mirfasihi*, 356 F.3d at 784. Feeding America, an organization consisting of a nationwide network of member food banks, is devoted to combating hunger. The distribution of remaining settlement funds to Feeding America fulfills the punitive purpose of Plaintiffs' underlying class action claims , which are based on Defendants' alleged failure to distribute free meals as promised, by applying Defendants' payments directly to the cause of providing free meals to those who are hungry. The Illinois Bar Foundation and the Chicago Bar Foundation both improve access to the courts for low-income litigants and work to advance the judicial system as a whole. None of these entities have any affiliation with Plaintiffs or Defendants, and each is an appropriate recipient of the cy pres distribution proposed by the parties.

  C. <u>Incentive Awards</u>

Finally, the Settlement Agreement proposes, and Plaintiffs have requested, an incentive award in the aggregate amount of $25,000. The court has received no objections to this award and finds it to be reasonable in light of Plaintiffs' efforts in this litigation and the average incentive awards in other consumer class action litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding an average aggregate award of $29,055.20 and average individual award of $6,358.80).

CONCLUSION

13

For the reasons set forth above, objector Jill K. Cannata's objections to the Settlement Agreement (Dkt. No. 104) are overruled and "Plaintiffs "Motion & Memorandum in Support of Final Approval of Class Action Settlement, and Approval of Attorneys' Fees and Incentive Award" (Dkt. No. 108) is granted. The court approves the Settlement Agreement in total, finding it to be fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). The court approves Plaintiffs' request for attorneys' fees and expenses in amount of $515,000 and an incentive award in the aggregate amount of $25,000.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: November 30, 2011