**1**

```
          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
                 EASTERN DIVISION

IN RE:  KENTUCKY GRILLED CHICKEN COUPON )
                                         )   No. 09 C 7670
MARKETING & SALES PRACTICES LITIGATION.  )   MDL 2103
                                         )
                                         )
                                         )   Chicago, Illinois
                                         )   November 30, 2011
                                         )   9:00 o'clock a.m.

         TRANSCRIPT OF PROCEEDINGS -
              Fairness Hearing
     BEFORE THE HONORABLE JAMES F. HOLDERMAN
```

APPEARANCES:

For Class Plaintiffs:   EDELSON McGUIRE, L.L.C.
                        BY:  MR. MICHAEL J. McMORROW
                        350 North LaSalle Street
                        Suite 1300
                        Chicago, Illinois  60654
                        (312) 589-6371

For the Defendants:     SIDLEY AUSTIN, L.L.P.
                        BY:  MR. THEODORE R. SCARBOROUGH, JR.
                             MS. ELIZABETH M. CHIARELLO
                        One South Dearborn Street
                        Chicago, Illinois  60603
                        (312) 853-7000

```
         COLLEEN M. CONWAY, CSR, RMR, CRR
                Official Court Reporter
       219 South Dearborn Street, Room 2524-A
              Chicago, Illinois  60604
                   (312) 435-5594
          colleen_conway@ilnd.uscourts.gov
```

1          (Proceedings heard in open court:)
2              THE CLERK: 09 C 7670, In Re: Kentucky Grilled
3    Chicken.
4              MR. McMORROW: Good morning, Your Honor.
5              Mike McMorrow on behalf of the plaintiffs in the
6    class.
7              THE COURT: Good morning.
8              MR. SCARBOROUGH: Good morning, Your Honor.
9              Robert Scarborough and Beth Chiarello on behalf of
10   the defendants.
11             THE COURT: Good morning.
12             The purpose, obviously, of today's hearing is for
13   counsel and any interested parties -- we have some other folks
14   in the courtroom this morning beyond counsel -- to assist me in
15   deciding whether the proposed Stipulation of Class Settlement,
16   as amended, which I will refer to as the "Settlement
17   Agreement," of the parties in this case is fair and reasonable
18   and adequate pursuant to Federal Rule of Civil Procedure 23(e).
19             I intend to just make some background remarks for the
20   record so that a summary of what has occurred is available in
21   one location and then I will allow any objectors who have
22   followed the procedures of the Court set forth in the
23   preliminary determination that I made to step forward and
24   comment, I will also allow any supporters of the Settlement to
25   comment, and then I will allow anything further from counsel

1  that counsel desires to present, and then I intend to make a
2  determination on the issue and also then supplement today's
3  oral determination with a written memorandum opinion detailing
4  my reasoning.
5       But I want to hear from everyone that desires to be
6  heard on this point so as to ensure that the Settlement that
7  has been reached between the class plaintiffs and the
8  defendants is fair, reasonable, and adequate.
9       So, by way of background, on August 16th, 2011, I
10 preliminarily approved certification of the class for
11 settlement purposes only, and that class included all persons
12 who (a) downloaded an Original or PDF coupon between May 5,
13 2009 at 9:00 a.m. Central time and May 6, 2009 at 11:59 p.m.
14 Central time from *Oprah.com* or *unthinkfc.com* -- well, I will
15 just spell it -- it's *unthinkfc*, u-n-t-h-i-n-k-f-c -- *.com* --
16 and (b) did not receive (i) the KGC Free Meal pursuant to the
17 Original coupon, the PDF coupon, or the Raincheck coupon, (ii)
18 a "Chicken Check" or other compensation from KFC in response to
19 a complaint concerning the Oprah promotion, or (iii) a free
20 meal or other consideration at a restaurant unaffiliated with
21 Defendants that agreed to accept the KGC coupons for the
22 Kentucky Grilled Chicken.
23      The terms "Original coupon," "PDF coupon," "Raincheck
24 coupon," "KGC Free Meal," "Chicken Check," "Oprah promotion,"
25 and "KGC coupons" are given the same meaning as set forth in

1   the Settlement Agreement and should be considered as such.

2   Also on August 16th, 2011, I approved the parties'
3   plan for notifying all potential class members of the proposed
4   Class Action Settlement and of today's hearing.  In accordance
5   with the approved notice, the parties -- through the
6   professional settlement administrator, Rust Consulting, Inc. --
7   published a Summary Notice of the proposed Settlement, which is
8   docket number 99-1, Exhibit A -- and we will refer to it as a
9   "Summary Notice" -- in a 2x5 page advertisement in *Parade*
10  magazine on September 11, 2011, which was then inserted in the
11  Sunday edition of nearly 600 daily newspapers nationwide.
12  *Parade* magazine is the Sunday insert that is read nationwide
13  and, consequently, was an appropriate vehicle for publication.

14  The parties also engaged in an internet advertising
15  campaign from September 1, 2011 through September 30, 2011,
16  through the use of the 24/7 Real Media Network, resulting in
17  approximately 18,765,000 "impressions" of the banner ads that
18  had been developed by Rust Consulting, Inc. to inform potential
19  class members of the proposed Settlement Agreement.

20  Additionally, from September 27, 2011 through October
21  26, 2011, the parties engaged in a "keyword campaign" in which
22  certain searches performed through Google Advertising Partners
23  and Bing Search Marketing resulted in 3,221 "impressions" of
24  text ads linking to the Settlement website.  The Settlement
25  website was *www.couponmarketinglitigation.com*, and that has

1   made available to viewers the following information: (1) the
2   Summary Notice approved by the Court, both in English and in
3   Spanish; (2) the Detailed Notice approved by the Court, which
4   is at docket entry 99-1, Exhibit B; (3) the Claim Form approved
5   by the Court, which is docket entry 99-1, Exhibit D; (4) the
6   Settlement Agreement; and (5) the Preliminary Approval Order.
7              Now, pursuant to the terms of the notices, all
8   objections to the proposed Settlement Agreement were due in
9   writing by October 26, 2011. Similarly, any individual
10  desiring to address the Court at today's hearing was required
11  to make his or her intention known by that same date.
12             Only one written objection was submitted in advance
13  of today's hearing, which was filed on October 25, 2011, by
14  Class Member Jill K. Cannata, C-a-n-n-a-t-a, through her
15  individually chosen counsel in Cleveland, Ohio, Mr. Sam
16  Cannata, same spelling as the plaintiff, and that's docket
17  entry number 104. Ms. Cannata stated in her objection that she
18  does not intend to attend today's fairness hearing. And the
19  Court is not aware of any class member desiring to address the
20  Court, but I will ask now of those here in the courtroom: Are
21  there any people desiring to address the Court this morning at
22  this hearing?
23             I see no one indicating in an affirmative manner. So
24  I will ask further by saying: If you would desire to address
25  the Court, please raise your hand.

1               All right.  There is no one in the courtroom raising
2    a hand.
3               So had there been anyone here, I would have asked the
4    objectors in attendance to step forward.  And, of course, the
5    notice required them to present a Notice of Intention to
6    Appear, but I have found over the years in addressing these
7    types of cases that, on occasion, individuals who desire to
8    attend the fairness hearing at the last moment make a decision
9    that they would desire to attend court, and I don't want to
10   deprive anyone of that opportunity.  However, there is no one
11   here expressing that interest.  Also, if there were class
12   members here who supported the Settlement, I would have allowed
13   them time to respond.
14              So let me just move forward, then, to Ms. Cannata's
15   written objection as well as the supplement that Ms. Cannata
16   filed on November 27, 2011, which is docket entry 110.
17              I have considered the facts and the arguments set
18   forth in the Plaintiffs' Motion & Memorandum in Support of
19   Final Approval of Class Action Settlement, and Approval of
20   Attorneys' Fees and Incentive Award, docket entry number 108,
21   and let me just ask, is there anything further that any
22   counsel, counsel for the class or counsel for the defendants,
23   desire to say at this time to me?
24              MR. McMORROW:  Your Honor, Mike McMorrow.
25              THE COURT:  Yes.

1    MR. McMORROW: As the Court's aware, we filed a --
2    what I like to think is a significant brief in support of the
3    Motion & Memorandum for Final Approval of the Class Action
4    Settlement and Approval of Attorneys' Fees and Incentive Award.
5    That addresses all the arguments raised by Ms. Cannata in her
6    objection.
7    THE COURT: Yes.
8    MR. McMORROW: And in her supplement, we obviously
9    haven't filed a written response to the supplement.
10   THE COURT: I have evaluated the supplement as well.
11   MR. McMORROW: Thank you, Your Honor.
12   So I would rest on the papers, Your Honor, unless the
13   Court has any specific questions for me.
14   THE COURT: All right. All right. Well, since you
15   have asked, let me turn to an issue. And, as I said, I will be
16   issuing a written opinion further explaining my reasoning. I
17   didn't want to take a lot of time this morning. I wanted to
18   basically give time to the class members if they desired to
19   respond.
20   But one of the concerns that I have is the magnitude
21   of the fees, and I know that that's always an issue that the
22   Court should carefully evaluate. And so let me just turn to
23   that point briefly. And I will hear from you on any point at
24   all.
25   If I find -- and from reviewing your papers, I am

1    inclined to find -- that the 33.3% capped, as you have capped
2    it, is reasonable, my question becomes 33.3% of what?  Because
3    the available amount that you are using for the purposes of
4    calculating that 33.3%, or 33 1/3, capped at $515,000, is an
5    amount that actually includes the fees already, does it not?
6              MR. McMORROW:  Yes, Your Honor.  It's based on the
7    common fund approach, and the entirety of the fund that's made
8    available to the class is the normal amount that you base that
9    percentage on, and that includes, that includes the notice
10   costs.  And actually --
11             THE COURT:  Yes.
12             MR. McMORROW:  -- let me -- to just address one quick
13   point --
14             THE COURT:  Sure.
15             MR. McMORROW:  -- really it seems that the only point
16   that Ms. Cannata raises in her supplement to her objection is
17   -- other than the questions about Mr. Cannata, the attorney, is
18   that the costs of notice shouldn't be included in that fee.
19             And there are a couple of cases that we cite in the
20   brief about notice costs, at page 33 of the brief.  As a matter
21   of fact, those are a couple of cases where courts overruled
22   objections of Mr. Cannata on this point.
23             I'd also point out that there are other cases that
24   have made the same point, including a Ninth Circuit case,
25   *Staton versus Boeing* from 2003.  That's 327 F.3d 938, and at

1   page 975, where the Court also agreed that the cost of
2   providing notice is considered to be part of that benefit made
3   available to the class.
4       And so the amount made available to the class, it
5   doesn't -- it includes any costs that we would recover for
6   attorneys' fees, but those costs, they come out of the fund,
7   but they're not specified in the fund.  And so the 33 1/3
8   percent benchmark, which our request is slightly under, is just
9   the common form of recovery.
10      We talk about it at page 20 of the brief,
11  particularly in footnote 9.
12      THE COURT:  Yes.  Okay.  All right.  Well, let me
13  further evaluate that point.
14      All right.  Anything further you desire to say on
15  that particular point, since we have raised it, for discussion?
16      MR. McMORROW:  Well, also on that particular point,
17  Your Honor, the way the Seventh Circuit handles attorneys' fees
18  in class action suits and common fund cases is normally to try
19  to award the market price and --
20      THE COURT:  Yes.
21      MR. McMORROW:  You know, and the marketplace in a
22  class action suit is almost invariably a third, when you talk
23  about what would the attorney and the clients negotiate *ex ante*
24  as a reasonable fee.  And in this case, our agreements with our
25  clients specify that they agree that a reasonable fee would be

1  one third of any recovery.
2  　　　　And if I may, Your Honor, this is similar to, you
3  know, if there were any -- in any case where you're dealing
4  with consumer suits or suits by what I'll call non-corporations
5  or regular people, most of the arrangements are for a
6  contingency fee and the contingency fee is based on, you know,
7  is based on the recovery.  So, for example, in a medical
8  malpractice suit, the attorney would normally negotiate a fee.
9  And I don't know that that -- I should say I'm a little bit
10 talking out of school here because I don't have that much
11 familiarity with medical malpractice retainer agreements.  But
12 the recovery is generally costs of the suit and the third of
13 any recovery.
14 　　　　And so, this is the arrangement that was reached *ex
15 ante*, and that's what the Seventh Circuit looks for, is what
16 kind of an agreement would be reached *ex ante*.  And I think in
17 this case, there's no reason to think that the agreements that
18 were reached were anything different from what would normally
19 be reached.  And the Seventh Circuit's practice is to try and
20 predict what that would be.  And there are a number of cases in
21 section V.1. of the brief which talk about that process.
22 　　　　And for that reason, for that additional reason, I
23 think it's very reasonable to award us a fee of 32.7% of the
24 fund.
25 　　　　THE COURT:  Yes.  And I realize that the cap is 32.7%

1  of the fund, but the concern I have is the fund, it includes
2  the fees, and should there be a reduction, should it be a
3  calculation that is the recovery with the fees deducted and
4  that fee determination being made as 33% or 33 1/3% of that
5  amount.
6          MR. McMORROW:  Well, I don't know that there's any --
7  I'm not aware of any authority to support that, that kind of
8  calculation, Your Honor, and --
9          THE COURT:  Okay.
10         MR. McMORROW:  And I think it would be -- you know, I
11 think it would be a little odd to take the fees out and then
12 compare the fees to the rest of the fund without the fees,
13 because, in any event, no matter what the percentage in any
14 common fund that you were looking at, once you take the
15 attorneys' fees out of that fund, then you're obviously
16 changing that -- you know, you're drastically changing those
17 percentages.  And that's part of the reason why you think of
18 this as -- you know, why you look at the entire fund, and that
19 fund is the entire amount that the defendants made available
20 for the payment of claims and the notice costs and the
21 attorneys' fees.
22         And I'd also like to point out that in this case,
23 unlike the -- there are several -- many common fund cases where
24 the amount of the fund, where there's a portion of it that
25 reverts to the defendant.  In this case, there is no portion of

1   the fund that reverts to the defendant.  And because of the
2   entire amount that's not claimed by class members, by
3   attorneys' fees, and by notice costs and incentive awards will
4   go to the three *cy pres* recipients that are specified in the
5   amended Settlement Agreement.
6            THE COURT:  Yes.  Okay.  All right.  Separate and
7   apart from the fee situation, then, the fee determination that
8   I must make, anything further with regard to any points on the
9   Settlement itself?
10           MR. McMORROW:  On Ms. Cannata's supplement?  Well,
11  like I said, Your Honor, we -- Ms. Cannata filed her objection
12  on October 26th, I believe, and we responded --
13           THE COURT:  I thought it was the 25th, but that's all
14  right.
15           MR. McMORROW:  I'm sorry.  The 25th.
16           THE COURT:  Yes.
17           MR. McMORROW:  And we responded to those points in
18  the brief in support of final approval.
19           And I'd note that in the supplement, I'd note that in
20  the supplement, the only points that are discussed are --
21           THE COURT:  That was filed on the 27th of November,
22  yes.
23           MR. McMORROW:  Yes, the one filed -- docket number
24  110.
25           THE COURT:  Uh-huh, yes.

1  MR. McMORROW: The only points that are contested in
2  there are the questions about the allegations about class
3  counsel himself and then the rest of the brief is simply about
4  the inclusion of the post-Settlement Notice costs, which I have
5  already addressed, and I don't think there's anything else that
6  I need to address in that, from that supplement.
7  THE COURT: Okay.
8  MR. McMORROW: I would point out -- well, I, you
9  know, won't even point this out, Your Honor.
10  THE COURT: No, that's all right. Go ahead.
11  MR. McMORROW: No, I was just going to say, we
12  reached out -- these supplemental objections, those were filed
13  on Sunday night. And --
14  THE COURT: Right.
15  MR. McMORROW: -- on Monday, we reached out to Mr.
16  Cannata about the supplement, but it was on a point regarding
17  Mr. Cannata as what we consider to be a professional objector.
18  And so I don't know if the Court wants to hear too
19  much about that. But we did not hear a further response from
20  him.
21  THE COURT: Yes. Since neither Mr. Cannata, the
22  attorney, nor Ms. Cannata, the class member objector, is here,
23  perhaps we shouldn't go further on that point. So thank you.
24  MR. McMORROW: And if the Court has any other further
25  questions, I'd be happy to attempt to answer them.

1        THE COURT: Okay. And I appreciate that. And I
2 appreciate your responses to the questions that I have already
3 asked.
4        Let me then turn to defense counsel. Is there
5 anything further you desire to present this morning at this
6 hearing?
7        MR. SCARBOROUGH: We have nothing further, Your
8 Honor.
9        THE COURT: All right. I will, as I said, issue my
10 rulings with regard to the fee question itself as well as
11 further address the objections, but I will inform counsel and
12 any class members who happen to be here who have already
13 indicated they don't desire to comment in favor or against the
14 Settlement that I believe that the Settlement here was reached
15 at arm's length, negotiated between counsel who are excellent
16 professionals and zealously represented their respective
17 clients.
18        I personally attended settlement conferences with
19 counsel, made remarks off the record, however, because they
20 were settlement conferences, made remarks regarding proposals
21 that had been advanced, and counsel were responsive and
22 sensitive to the fairness that needed to be reached in
23 connection with this case. And so I believe that nothing has
24 occurred since the preliminary approval that causes me to
25 believe that this Settlement is not fair, reasonable, and

1 adequate pursuant to Federal Rule of Civil Procedure 23(e).
2 And so, consequently, I do find that.
3     As I said, I will issue a further written order.  I
4 will do that either today or, at the latest, tomorrow.
5     Let's assume that I give myself a one-day extension
6 of time and don't get that out till Friday.  Let me ask counsel
7 how soon could you submit through the *proposed_order* e-mail
8 system, under the e-mail
9 *proposed_order_Holderman@ilnd.uscourts.gov*, the Final Judgment
10 Order consistent with the determinations that are made?
11     MR. McMORROW:  Well, Your Honor, we submitted a
12 Proposed Final Order in connection with the Preliminary
13 Approval --
14     THE COURT:  Yes.
15     MR. McMORROW:  -- motion, and there was a Word
16 version of the Final Approval Order that we provided on August
17 16th.
18     THE COURT:  Right.
19     MR. McMORROW:  And so we can resubmit that order with
20 any changes that Your Honor would like.  I thought it would be
21 presumptuous or, actually, some people thought it would be
22 presumptuous to submit an order prior to today's hearing --
23     THE COURT:  Well --
24     MR. McMORROW:  -- saying that the objections are
25 overruled.

1    THE COURT: I understand, and --
2    MR. McMORROW: I could provide a revised order today.
3    THE COURT: Yes. Well, why don't you wait until I
4  issue the full opinion articulating the reasons behind it and
5  then finalize this determination that I need to make with
6  regard to the attorneys' fees.
7    And so my question is if I get that out to you by no
8  later than Friday, how soon could you get the Proposed Order in
9  so --
10   MR. McMORROW: Monday.
11   THE COURT: -- judgment could be entered? Monday?
12  All right. So that would be Monday, December 5th, at the
13  latest. All right.
14   MR. McMORROW: Oh, one other minor thing, Your Honor.
15   THE COURT: Sure.
16   MR. McMORROW: There were two class members that
17  opted out, Mr. Brown and Mr. Klar.
18   THE COURT: Yes.
19   MR. McMORROW: I think -- I'd like to make sure that
20  the final judgment specifies that they're opted out and not
21  bound by the Settlement.
22   THE COURT: And I appreciate your doing that. And I
23  believe to adequately have the Final Judgment Order remove them
24  from the class and make it clear that they have opted out, so
25  they can refer to that document and say, "We opted out," or, "I

1  opted out," I think that would be appropriate as well.  So I
2  appreciate your including that in the Proposed Order that you
3  are going to be submitting.
4         Well, on a personal note, I have to say that I truly
5  believe that both sides were represented consistent with the
6  highest standards of the profession.  Both the defense counsel
7  and plaintiffs' counsel did an excellent job in representing
8  their clients in this case.
9         To some extent, I am sad to see the case come to an
10 end because I do enjoy working with outstanding counsel like
11 you folks and observing and participating, as a Court is
12 allowed to do, in the decision-making process that you folks
13 went through in reaching this settlement in this case.  It
14 really is, in my opinion, a model of what the profession should
15 be and what the profession should do on behalf of people who
16 have claims of this nature so as to have them resolved in a
17 just, fair, and reasonable way that these have been resolved so
18 that there is adequate compensation taking into account all the
19 risks of moving forward with the litigation.
20        So, anything further from counsel?
21 MR. McMORROW:  I'd just like to thank the Court for
22 its time and for its attention in this matter and for its kind
23 words towards counsel.
24 MR. SCARBOROUGH:  Absolutely, we would join in that.
25 We do appreciate your time over the summer, Your Honor.  That

1   was particularly helpful.  Thank you again.
2              THE COURT:  Well, it was my pleasure, and I
3   appreciate it.
4              So, having addressed all the matters in this case,
5   then, the *In Re: Kentucky Grilled Chicken Coupon Marketing &*
6   *Sales Practices Litigation*, which in this court is Case No. 09
7   C 7670, and in connection with the Multi-District Litigation
8   panel, MDL 2103, all matters having been resolved, we will
9   stand in recess and we will complete the litigation process
10  through the Final Judgment Order that will be entered shortly
11  after the Proposed Judgment Order is submitted and reviewed by
12  the Court.
13             So I will issue that written opinion, as I have
14  mentioned more than once, and I thank you all.
15             MR. McMORROW:  Thank you very much, Your Honor.
16             MR. SCARBOROUGH:  Thank you very much, Judge.
17             THE COURT:  Thank you.  We will stand in recess.
18       (Proceedings concluded.)
19
20
21
22
23
24
25

| | |
|---|---|
| 1 | C E R T I F I C A T E |

I, Colleen M. Conway, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the HONORABLE JAMES F. HOLDERMAN, Chief Judge of said Court, at Chicago, Illinois, on November 30, 2011.

| | | |
|---|---|---|
| | _/s/ Colleen M. Conway, CSR,RMR,CRR_ | _12/19/11_ |
| | Official Court Reporter<br>United States District Court<br>Northern District of Illinois<br>Eastern Division | Date |

**Colleen M. Conway, Official Court Reporter**